**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PATRICK COLLINS, INC. *Plaintiff*, v. DOES 1 – 79, *Defendants.* | CIVIL ACTION No.: 1:12-cv-10532 |

**OPPOSITION TO MOTION TO QUASH SUBPOENA**

**1.    Introduction**

Plaintiff filed a complaint against John Does who traded the *identical file* of Plaintiff's copyrighted work without authorization through BitTorrent file-swapping protocol. All John Does reside in Massachusetts.

John Doe 13 and 25 filed very similar Motions to Quash Subpoena. The Motions reason that subpoenas should be quashed, essentially for mis-joinder and improper litigation conduct of the Plaintiff's attorney. These motions are nearly identical. It seems they were made for a different case, in a different district, filed by *very* different plaintiff attorneys.

For reasons stated below, motion should be denied.

**2.    Nature of BitTorrent Protocol**

Because the technological declaration accompanying the Complaint already describes the BitTorrent protocol in detail, Plaintiff will only highlight the important aspects of this technology relevant to this opposition. First, participation in the BitTorrent protocol is intentional and requires various deliberate actions. See Decl. of John Nicolini and exhibits. Second, each

participant has a vested interest in sharing files with others in order to maximize their download capacity. See id. (With BitTorrent those who get your file tap into their upload capacity to give the file to others at the same time. Those that provide the most to other get the best treatment in return. ('Give and ye shall receive')) (excerpt from BitTorrent, Inc.'s own website). Third, when an unauthorized copy of a copyrighted work is the content file in question, each peer (i.e. member of a swarm) in a P2P network sharing that unauthorized copy has acted and acts in cooperation with the other peers by providing an infringing reproduction of at least a portion of a copyrighted work. This is done in anticipation of other peers doing likewise with respect to that work and/or other works. Id. Thus, each member of the swarm downloads and uploads the shared content with the common goal and understanding of continuing the availability of the downloaded content, even if such content may be unauthorized copies of copyrighted works. See id.

### 3.   Motion to Quash Should be Denied

#### A. DOE 13 AND 25 LACKS STANDING TO CHALLENGE SUBPOENA TO THIRD PARTIES

As a threshold matter, Doe 13 and 25 lack standing to challenge subpoena to third parties. See Fed. R. Civ. P. 45(c)(3)(B); Liberty Media Holdings v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7B5BC9C05, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011); United States Bank Nat'l Ass'n v. James, 264 F.R.D. 17, 18-19 (D. Me. 2010) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." (citing Windsor v. Martindale, 175 F.R.D. 665, 668 (D. Colo. 1997))); Armor Screen Corp. v. Storm Catcher, Inc., 2008 WL 5049277, at *2 (S.D. Fla. Nov.

25, 2008). As this Court noted in Liberty Media Holdings, a party has no standing to challenge a subpoena issued to third parties unless it could assert some privilege to the requested document. See 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), 13 n. 3 (noting that defendants could not viably assert privacy interest in subscriber information as they are already disclosed to the ISPs).

As for the argument that Doe 13 and 25 can proceed anonymously, the same argument which was previously rejected in Liberty Media Holdings, LLC, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011) at 20 - 23.[1] Therefore, Doe 13 and 25's motions fail due to lack of standing. See Liberty Media Holdings, LLC, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 13.

### B. EARLY DISCOVERY FOR THE PURPOSES OF OBTAINING DOE'S IDENTITIES IS WARRANTED

Even assuming that Doe 13 and 25 have standing to challenge the subpoena, early discovery for the purposes of obtaining doe defendants' identities is warranted.

First, however, Plaintiff notes that many of Doe 13 and 25's issues were already raised by unnumbered Does in Liberty Media Holdings, LLC and rejected by this Court. Doe 13 and 25 fail to discuss or even mention the Liberty Media Holdings, LLC case. Doe 13 and 25 make no efforts to distinguish this case from Liberty Media Holdings, LLC at all, nor is there ground to distinguish, where this Court denied motion to quash and permission to proceed anonymously.

---

[1] Importantly, the Court held that the potential embarrassment to Does 1-38 of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously. As the Superior Court of Massachusetts stated, "mere embarrassment [is] not sufficient to override the strong public interest in disclosure." Roe, 2011 Mass. Super. LEXIS 82, 2011 WL 2342737, at *1. Thus, the potential embarrassment or social stigma that Does 1-38 may face once their identities are released in connection with this lawsuit is not grounds for allowing them to proceed anonymously.

### C. DOE 13 AND 25'S ALLEGATIONS OF BAD FAITH AGAINST THE PLAINTIFF ARE FALSE AND UNFOUNDED

In the motion, Doe 13 and 25 alleges bad faith against the Plaintiff and argues that the Court should consider the allegations in ruling on Doe 13 and 25's motions to quash or to sever.

Plaintiff is proceeding and plans on continuing in these litigations in the following manner: (1) Evidence of infringement is gathered and then grouped by locality and time; (2) Lawsuit is filed and early discovery is sought to obtain identity of the IP address subscribers, i.e. – probable infringers (particular concern is the limited amount of time these account information is held by the ISPs. Too long a delay means evidence of IP address assignment may be lost forever); (3) Subscribers are notified of the subpoena and claim against them; (4) Some move to fight the subpoena, some concede liability and agree to settle, some explain why they are not the infringers, and some defendants even send notices of bankruptcy; (5) Plaintiff examines the various asserted defenses and determines their credibility and dismiss defendants who have credible explanations; (6) To those defendants who do not respond and defendants without credible explanations, Plaintiff will name and serve; (7) Defendants will likely put forth various defenses, many of which will overlap; (8) Once individual defendants are named and defenses are brought forth, judicial economy can be further served by grouping defendants with like-defenses. Even in the worst case scenario of each defendant requiring their own case, due to uniqueness of each defense, court is back to square one and is no worse off than severing all defendants at the very beginning and requiring Plaintiff to proceed individually. In fact, severing later in the case promotes judicial economy because in the early stages of these copyright litigations, all factual and legal issues with regards to early discovery, motion

to quash, and motion to sever are substantially identical for all defendants.[2] Cf. In re Adult Film Copyright Infringement Litigation, 1:11-cv-07564 (S.D.N.Y. Mar. 13, 2012) (consolidating various copyright infringement cases together for discovery and other pre-trial purposes because actions involve common questions of law and fact).

Plaintiff also notes that low rate of actual litigation in copyright or intellectual property litigations are not unusual. See Table C-4. U.S. District Courts – Civil Cases Terminated, by Nature of Suit and Action Taken, During the 12-Month Period Ending June 30, 2011, available at http://1.usa.gov/JbPvS4, at 40.[3] Page 40 of the table shows that *only* 1.8 percent of copyright cases reached trial. Id. Out of the 2,014 cases terminated, 629 terminated with no court actions and 1,112 cases terminated before pretrial. Id. That means 86.4 percent of those copyright cases ended prior to pretrial. See id. It is also noteworthy that low rate of litigation and pretrial termination are true for other intellectual property litigation, i.e. – patent and trademark. See id. 82.2 percent of patent litigations ended before pretrial and only 3.2 percent reached trial. See id. 87.5 percent of trademark litigations ended before pretrial and only 1.3 percent reached trial. See id. It then follows that most attorneys engage in some form of settlement

---

[2] Grouping related cases together is in keeping with the spirit of local rule 40.1(G), requiring related civil cases to be assigned to the same judge. See Local Rule 40.1 (G))

[3] Plaintiff notes that these statistics are for cases ending prior to those cited by Doe 31 and 25 as sign of bad faith on the part of the Plaintiff. See Doe 31 and 25's Mot. at 4 fn. 5. Therefore, these statistics are not affected by Plaintiff's cases.

negotiations before trial.[4]

Importantly, Doe 13 and 25's accusation that Plaintiff is only seeking to use this litigation to coerce settlement is unfounded and based on speculation. Cf. Liberty Media Holdings, LLC, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 17 & n. 7 (holding that allegation that Liberty Media Holdings was seeking identity merely to coerce settlement was purely speculative and not grounds for proceeding anonymously). Defendants wrongly associate Plaintiff's Counsel with other counsel in cases involving copyright infringement.

**4.    Motion to Sever Should be Denied**

Doe 13 and 25 raise issue of joinder as the major part of their motions to quash[5] and also moves in the alternative to sever. For reasons stated below, joinder is proper and Doe 13 and 25's motions to sever should be denied.

### A.    REQUIREMENTS OF RULE 20 HAVE BEEN SATISFIED

Permissive joinder is governed by Federal Rule of Civil Procedure 20, which provides that: "Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact

---

[4] In addition, FRCP 16 and virtually every set of local rules and every scheduling order require the parties to engage in some form of settlement negotiations. See FRCP 16(a)(5); FRCP 16(c)(2)(I); see, e.g., CR 16(a) (W.D.Wa.) ("Counsel should identify any appropriate ADR procedure, and suggest at what stage of the case it should be employed"). Also note that the Alternative Dispute Resolution Act of 1998, codified at 28 U.S.C. §651, authorized and required each United States district court to "devise and implement its own alternative dispute resolution program, by local rule . . ., to encourage and promote the use of alternative dispute resolution in its district." 28 U.S.C. §651(b). Congress found that ADR led to "greater satisfaction of the parties" and "greater efficiency in achieving settlements." Alternative Dispute Resolution Act of 1998 (Sec. 2).

[5] As this court noted in Liberty Media Holdings, LLC, issue of joinder is irrelevant to motion to quash. 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), n. 5.

common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Many courts have determined that all "logically related" events underlying a legal cause of action are generally considered as comprising a transaction or occurrence. See Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974). The Court may sever improperly joined parties at any time. However, "the impulse is toward the broadest possible scope of action consistent with fairness to the parties and joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). As one of the drafters of the Federal Rules of Civil Procedure, Professor and Judge Charles E. Clark, noted, "if there is any reason why bringing in another party or another claim might get matters settled faster, or more justly, then join them." 5 Charles A. Wright, Joinder of Claims and Parties Under Modern Pleading Rules, 36 Minn. L. Rev. 580, 632 (1952); see also James Wm. Moore et al., Moore's Federal Practice, § 20.02[1][a] (3d ed.) ("[J]oinder is based not on arcane historic formulations of legal relationships, but on common sense, fact-based considerations. . . . Many federal joinder rules permit addition of claims or parties based on transactional relatedness."); 6A Charles Alan Wright et al., Federal Practice & Procedure: Civil 2d § 1652 (1990) ("Like the compulsory counterclaim rule, the goal of the permissive joinder of parties rule–also centered on the 'transaction or occurrence'–is to prevent multiple lawsuits."); Robert G. Bone, Mapping the Boundaries of a Dispute: Conceptions of Ideal Lawsuit Structure from the Field Code to the Federal Rules, 89 Colum. L. Rev. 1, 80 (1989) ("The federal rules drafters . . . defined party structure primarily in terms of trial convenience, not in terms of right, and relied to a large extent on trial judge discretion to shape optimal lawsuit structure for each dispute.").

There is little question that there is a common question of law or fact

among the defendant in this action. See Complaint ¶¶ 5-14. Plaintiff alleges that each defendant illegally used BitTorrent protocol to illegally upload and download Plaintiff's copyrighted work. See id. Plaintiff also alleges that each defendant's action constituted violation of copyright laws. In fact, it appears that even Doe 13 and 25 do not truly contest the existence of common question of law or fact (focusing more on transaction prong of the permissive joinder rule, efficient case management, and alleging fraudulent joinder).

The issue of joinder next turns to whether this case arises out of "same transaction, occurrence, or series of transactions or occurrences" Fed. R. Civ. P. 20(a)(2)(A). "This essentially requires claims asserted against joined parties to be 'logically related.'" Call of the Wild Movie, LLC v. Does 1-1,062, 770 F.Supp.2d 332, 342 (D.D.C. 2011) (citing Disparte v. Corporate Exec. Bd., 223 F.R.D. 7, 12 (D.D.C. 2004); see also Mosley v. Gen. Motors Corp., 497 F.2d at 1333. Furthermore, Supreme Court has "held that 'transaction is a word of flexible meaning which may comprehend a series of occurrences if they have logical connection." Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 (1974) (citing Moore v. New York Cotton Exch., 270 U.S. 593, 610 (1926)).

Here, Plaintiff alleged that defendants have entered the exact same swarm over a period of three months and reproduced and distributed Plaintiff's copyrighted work using the exact same file as identified by the hash mark of the reproduced and distributed files. See Complaint ¶¶ 1-14. Doe 13 and 25 argue that Plaintiff's allegations are insufficient to constitute series of related occurrences because Plaintiff cannot assert that defendants actually transferred pieces of the copyrighted work with each other, only that probability suggests that such is the case.

Doe 13 and 25's arguments completely disregards the nature of BitTorrent protocol. As stated in paragraph 5 of the Complaint, the infringing

activities of the doe defendants are logically related because:

> All Defendants identified in Exhibit A (i) have traded exactly the same file of the copyrighted work as shown by the identical hash mark; (ii) have traded (simultaneously uploaded and downloaded) the exact same file as is the nature of torrent software; and (iii) the alleged events occurred within a limited period of time.

Complaint ¶ 5; see also Liberty Media Holdings, LLC, U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 18 (holding that allegation of BitTorrent as a collective enterprise satisfies "same transaction or occurrence" requirement); Voltage Pictures, LLC v. Does 1-5000, 2011 U.S. Dist. LEXIS 50787, at *35-*39 (D.D.C. May 12, 2011) (distinguishing BitTorrent protocol from traditional peer to peer network); Call of the Wild Movie, LLC, 770 F.Supp.2d at 343 (holding that defendants using BitTorrent protocol were logically related and properly joined). Digital Sin, 2012 U.S. Dist. LEXIS 10803, 15 (S.D.N.Y. Jan. 30, 2012) (Court declining to sever the case at stage of litigation when discovery is underway to learn indentifying facts necessary to permit service upon Doe defendants, "it is difficult to see how the sharing and downloading activity alleged in the Complaint -- a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file -- could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).")(emphasis added).

In determining whether the actions of doe defendants in a same swarm are logically related, the Court should look at the nature of the swarm. As the excerpt from BitTorrent, Inc.'s own website succinctly states, BitTorrent protocol's mentality is that of "Give and ye shall receive!" See Declaration of John Nicolini. Every participant of the swarm downloading the movie presumably acts with the same motivation: to obtain a free copy of the copyrighted work. Every participant also understands that in order to make

the BitTorrent system work and to have it be viable as a file sharing mechanism where free copies of various copyrighted works are available, they must do unto others as they would have others do to them, i.e. – redistribute copies of the movies they have downloaded. Even if there is not an actual exchange of files between initial participants of the swarm and later participants, they all commit the same infringing activity: they illegally download and then redistribute that download to others. This is done with the purpose of keeping the swarm alive, so that copies of copyrighted works continue to be available for free downloads.

Decentralized nature of BitTorrent protocol and vested interest of each member of the swarm in contributing in a concerted effort to illegally reproduce and distribute copyrighted work creates the logical relationship between the series of activities by the members of the swarm and these doe defendants. Coupled with Supreme Court's strong encouragement of permissive joinder, United Mine Workers of Am., 383 U.S. at 724, the concerted actions of these doe defendants constitute logically related series of transactions. See also Liberty Media Holdings, LLC, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 17-21.

### B.   JOINDER WOULD PROMOTE JUDICIAL ECONOMY

Joinder, at this stage of the proceedings, promotes judicial economy. During the early stages of these types of copyright enforcement cases, the substantive issues to be dealt with are motions for early discovery, motions to quash, and motions to sever. These motions raise substantially the same issue for all these doe defendants. In fact, sometimes doe defendants file exactly the same motions using templates. It is obvious that judicial economy is served by consolidating these cases as much as possible so that the Court does not have to rehear the same motions over and over again. Cf. In re

Adult Film Copyright Infringement Litigation, 1:11-cv-07564 (S.D.N.Y. Mar. 13, 2012).

Doe 13 and 25 argue that joinder creates more management problems than it promotes efficiency because each Defendant may have different factual and legal defenses that the Court would have to resolve within the context of one case. Doe 13 and 25's approach to joinder is too inflexible and narrow. Joinder is not an all or nothing proposition throughout the litigation. As long as joinder promotes judicial economy, as it does during early stages of litigation, it makes sense to maintain joinder of the doe defendants. Once individual doe defendants are named and bring forth various factual and legal defenses, judicial economy will be further served by grouping like-defenses together. Some defendants may pursue purely legal defenses and surely it would make sense to group defendants pursuing the same legal claim to promote economy and consistency. Even if every single named defendants end up pursuing different defenses and severance is required for all defendants, joinder during early stages of litigation promotes judicial economy over severing all defendants from the very beginning.

Also counseling in favor of joinder is the "interest of convenience" and "just, speedy, and inexpensive determination of the action." See Lane v. Tschetter, No. 05-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007). Severance in these types of copyright cases would become "significant obstacles in [Plaintiff's] efforts to protect [its] copyrights from illegal file-sharers and this would only needlessly delay [Plaintiff's] cases." Call of the Wild Movie, LLC, 770 F.Supp.2d at 344. Plaintiff would be forced to file separate lawsuits, pay separate filing fees, and issue separate subpoenas to ISPs for each individual infringer, all of which would work as substantial obstacle in enforcement of Plaintiff's copyright and would not "be in the

'interest of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.'" Id. (citing Lane, 2007 WL 2007493, at *7). Therefore, judicial economy favors maintaining joinder of these doe defendants until individual defendant's defenses become distinct enough to favor severance.

### C. JOINDER WOULD NOT PREJUDICE OR HARM THE DEFENDANTS

Joinder also does not prejudice or harm the defendants. See Call of the Wild Movie, LLC, 770 F.Supp.2d at 344. "To the contrary, joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants." Id. (citing London-Sire Records, Inc. v. Doe 1, 542 F.Supp.2d 153, 161 (D.Mass. 2008)). "Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised." London-Sire Records, Inc., 542 F.Supp.2d at 161.

Doe 13 and 25 continue to rail against joinder, raising concerns of coercive settlement and alleging improper motives on the part of the Plaintiff. Again, Does wrong associate this Plaintiff's Counsel with other counsel. Doe 13 and 25's allegations of bad faith have already been discussed in some detail above.

As for the purely speculative assertion that joinder may coerce unjust settlement from innocent defendants, one must keep in mind Plaintiff's basis for the lawsuit. Plaintiff is suing owners of IP addresses from which infringing activities were found. After learning the identities of doe defendants, Plaintiff sends letters alerting them of Plaintiff's claims. When defendants settle after receiving these letters, a logical inference is that defendants are settling

because they are guilty of copyright infringement and are now faced with evidence of their illegal activity. It is not as if Plaintiff plucked these defendants out of thin air. The complaint is based on evidence of infringement gathered by experts.

**5. Implications beyond this case.**

Plaintiff's counsel is compelled to note that this case and cases like this involving unauthorized trading of digital files will have implications beyond well-formed speculations. For example, with 3D printers, there is a likelihood that within a couple dozen years from now, many homes will have the technology with the ability to manufacture products *without* the need of going to the store nor ordering products online. Essentially, all that is needed is the hardware to manufacture the product, and a digital file(s) to instruct the hardware.[6] The digital files will fall under copyright protections, and without securing protections now, many other industries and livelihoods will be harmed. This is one example of many that are being impacted by this type of litigation.

Severely restricting the ability of this Copyright Holder and others to effectively enforce it's rights, to stave of diminulation of works, will have the consequence of having little to no copyright protections, leading to massive piracy of works not just owned by Plaintiff. Indeed, widespread piracy was

---

[6] See TED Talks, Lisa Harouni: A Primer on 3D printing (January, 2012), available at http://bit.ly/Kd0dtB (last visited May 9, 2012).

the impetus to the Statute of Anne, mankind's first copyright statute.[7]

## 6.     Conclusion

As stated above, Doe 13 and 25's motions to quash should be denied because Doe 13 and 25 do not have standing to challenge a subpoena to a third party. Even if standing was proper, early discovery to ascertain the identities of doe defendants are necessary and reasonable. Furthermore, contrary to Doe 13 and 25's assertions, Plaintiff is not litigating in bad faith. Plaintiff has sufficient basis to allege copyright infringement against the doe defendants and is now in the process of naming doe defendants in these types of copyright litigations.

Doe 13 and 25's motions to sever should also be denied. Plaintiff's claim raises same questions of law and fact. Also, defendants' infringing activities arise out of a series of logically related transactions. Furthermore, judicial economy is served by joinder at early stages of these litigations and defendants are not prejudiced by the joinder.

Therefore, Plaintiff respectfully requests that the Court deny Doe 13 and 25's motions to quash and motion sever.

*     *     *

---

[7] Prof. Walter J. Derenerg, <u>Study No. 3. The Meaning of "Meaning of Writings in the Copyright Clause of the Constitution"</u>. (November 1956). George S. Grossman, <u>Omnibus Copyright Revision Legislative History</u> 61, 68 (2001). ("In 1694 the Licensing Act under which the Company then operated, expired and there ensued, from 1695 until 1709, a period in which no copyright protection existed. Pirating during this period became common and publishers joined with authors in petitioning Parliament for protection. Finally, in 1709, the Statute of Anne was passed. The first copyright statute anywhere to be found, its purpose clause explained that books and other writings had been published without the consent of authors or proprietors to their detriment and that of their families.")

Respectfully submitted on June 5, 2012,

> FOR THE PLAINTIFF:
>
> *[signature: Marvin Cable]*
>
> Marvin Cable, Esq.
> BBO#:   680968
> LAW OFFICES OF MARVIN CABLE
> P.O. Box 1630
> Northampton, MA 01061
> P:  (413) 268-6500
> F:  (413) 268-6500
> E:  law@marvincable.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

*[signature: Marvin Cable]*
Marvin Cable, Esq.