# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PATRICK COLLINS, INC. | ) | |
| | ) | CA. 1:12-cv-10532 |
| v. | ) | |
| | ) | |
| DOES 1 – 79, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DOE 21'S CONSOLIDATED MOTION & MEMORANDUM TO QUASH SUBPOENA PURSUANT TO FED. R. CIV. P. 45 OR IN THE ALTERNATIVE TO SEVER PURSUANT TO FED. R. CIV. P. 21

## I. INTRODUCTION

Copyright infringement is a legitimate basis for suit, and if many people engage in copyright infringement, many people may be sued. However, the general safeguards developed by federal courts to ensure defendants get a fair chance to present their defenses always apply and, have a special importance in a case such as this.[1] Unfortunately, the Plaintiff flouts these procedures time and again.

Plaintiff's established business model is to use mass copyright litigation to extract settlements from individuals, regardless of guilt. To date, Plaintiff has filed no fewer than 160 similar cases in 27 different jurisdictions against a combined total of 10,473+ defendants—none of whom to date, Plaintiff has served. Despite these changes in counsel and venue, Plaintiff's bad faith remains constant.

In pursuit of its claim, Plaintiff filed for expedited discovery prior to a Rule 26(f) conference. Good cause for granting such discovery exists where "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). *See also, London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 158 (D. Mass. 2008). Due to the *ex parte* nature of Plaintiff's motion, Plaintiff faced no opposition to fully expound on the prejudices that John Doe 21 faces as a result of Plaintiff's expedited discovery.

---

[1] *See, e.g.*, U.S. Magistrate Judge Gary R. Brown's recent Order. *In re: Bittorennt Adult Film Copyright Infringement Cases*, 11-cv-03995-DRH-GRB, ECF No. 39 (E.D.N.Y  Filed May 1, 2012).

In this particular context, the Court must balance "the need to provide injured parties with an [sic] forum in which they may seek redress for grievances" against those of ISP subscribers "without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

> "There is real risk that defendants might be falsely identified and forced to defend themselves against unwarranted allegations. In such cases, there is a risk not only of public embarrassment for the misidentified subscriber, but also that the innocent subscriber may be coerced into an unjust settlement with the plaintiff to prevent the public filing of unfounded allegations."

*Patrick Collins, Inc. v. Doe*, No. 12-cv-02964, 2012 U.S. Dist. LEXIS 77486, *3 (S.D.N.Y. June 1, 2012). See also, *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 163 & nn.10-11, 179 (D. Mass. 2008) (holding that the court must consider "the expectation of privacy held by the Doe defendants, as well as other innocent users who may be dragged into the case (for example, because they shared an IP address with an alleged infringer."); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004).

> "Put another way, Article 1, section 8 of the Constitution authorizes Congress to enact copyright laws "to promote the Progress of Science and useful Arts." If all the concerns about these mass Doe lawsuits are true, it appears that the copyright laws are being used as part of a massive collection scheme and not to promote useful arts."

*On the Cheap, LLC v. Does 1-5011*, No. 10-cv-4472-BZ, 2011 U.S. Dist. LEXIS 99831, *12 n.6 (N.D. Cal. Sept. 6, 2011).

Plaintiff's established record of ill conduct indicates that it is now using this Court as nothing more than an inexpensive means to gain John Doe 21's personal information to coerce payment.

## II. TECHNICAL BACKGROUND

### A. Internet Protocol Addresses.

#### 1. Definition.

Any subscriber of an Internet Service Provider ("ISP"), such as John Doe 21, who connects their computer to the Internet via the ISP is assigned an Internet Protocol (IP) address. *U.S. v. Heckenkamp*, 482 F.3d 1142, 1144 (9th Cir. 2007) ("an IP address is comprised of four integers less than 256 separated by periods"). In addition to the subscriber's IP address, the ISP's network is also assigned its own IP address. *LVRC Holdings v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009).

Typically, subscribers are assigned a dynamic IP address. That is, their ISP assigns a different IP address each time the subscriber logs on to their computer.

**2. Purpose.**

The purpose of an IP address is to route traffic efficiently through the network. It does not identify the computer being used nor the user. IP addresses only "specify the locations of the source and destination nodes in the topology of the routing system."[2]

**3. Identification.**

To be clear, it is an account that is identified as being used to commit the infringing activity, *not* the subscriber of the account. Trying to use an IP address as a window through which the Plaintiff can see the identity of an actual infringer is futile. What Plaintiff sees instead is a router or wireless access point—not who did it. Nor is an IP address alone a reasonable basis to believe that a subscriber has infringed. A subscriber can be misidentified in multiple ways as an infringer without participating in any infringing behavior, including:

1. Some members of a swarm simply and automatically pass on routing information to other clients, and never possess even a bit of the movie file;[3]

2. A client requesting a download can substitute another IP address for its own to a Bittorrent tracker;[4]

3. A user can misreport its IP address when uploading a torrent file. A user in the network path between the user monitoring IP address traffic and the Bittorrent tracker can implicate another IP address;[5]

4. Malware on a computer can host and distribute copyrighted content without knowledge or consent;[6]

---

[2] "IP Address" http://en.wikipedia.org/wiki/IP_address (Last visited April 18, 2012); *Nicolini Declaration,* ECF No. 1-2, p. 15 ("an Internet Protocol address [] identifies the internet connection[.]")

[3] Sengupta, S. et al., *Peer-to-Peer Streaming Capacity,* IEEE Transactions on Information Theory, Vol. 57, Issue 8, pp. 5072-5087, at 5073 (Prof. Helmut Bolcski, ed., 2011) ("A [BitTorrent] user may be the source, or a receiver, or a helper *that serves only as a relay.*") (emphasis added).

[4] Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks—or—Why My Printer Received a DMCA Takedown Notice*, 3 (2008), http://dmca.cs.washington.edu/uwcse_dmca_tr.pdf *See also,* "IP address spoofing" http://en.wikipedia.org/wiki/IP_address_spoofing (Last visited May 9, 2012) (the term IP address "spoofing" refers to the creation of a forged IP address with the purpose of concealing the user's identity or impersonating another computing system.).

[5] Piatek at 4.

[6] *Id.*

5. There are reliability issues with using IP addresses and timestamps to identify the correct party;[7]

6. If a subscriber has dynamic IP addressing through its website host, it is sharing an IP address with several other subscribers;[8] or

7. Anyone with wireless capability can use a subscriber's wifi network to access the Internet, giving the impression that it is the subscriber who is infringing.[9]

Lastly, Rule 15(c)(3) permits an amended complaint to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake. It does not permit relation back where, as here, there is a lack of knowledge of the proper party to begin with. *Wilson v. U.S.*, 23 F.3d 559, 563 (1st Cir. 1994); *Miller v. Mancuso*, 388 Fed. Appx. 389, 391 (5th Cir. 2010). For these reasons alone, there are serious issues around the credibility of the evidence proffered by the Plaintiff in support of its subpoena request.

### III. LITIGATION RECORD

In determining whether to permit such discovery as Plaintiff seeks, the Court must perform this evaluation in light of the "entirety of the record … and [examine] the reasonableness of the request in light of all the surrounding circumstances." *Wilcox Indus. Corp. v. Hansen*, No. 11-cv-00551, 2012 U.S. Dist. LEXIS 4880, *6 (D.N.H. Jan. 17, 2012). *See also, Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.,* 765 F. Supp. 2d 87, 88-89 (D. Mass. 2011); *McMann v. Doe,* 460 F. Supp. 2d 259, 265 (D. Mass. 2006). John Doe 21 presents the following circumstances:

Plaintiff's business model is to use mass copyright litigation to extract settlements from individuals, regardless of guilt, relying in large part upon reaching agreements with minimal

---

[7] *Id.* ("When IP addresses are assigned dynamically, reassignment of an IP address from an infringing user to an innocent user can cause the behavior of the infringing user to be attributed to the innocent user. Because the monitoring client (copyright holder) records information from the tracker of the Bittorrent client, the information can quickly become inaccurate and will not implicate the correct user.")

[8] "Web hosting service" http://en.wikipedia.org/wiki/Web_hosting_service (Last visited May 9, 2012).

[9] Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York). *See* Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/

investment of time and effort. In total, Plaintiff has filed suit against 10,473+ individuals but served none.[10]

Plaintiff's suits are identical in their terms. In all, Plaintiff sought, and was granted, expedited discovery allowing the Plaintiff to subpoena information from ISPs to identify the defendants. Once it receives subscriber information from the ISPs, Plaintiff sends each subscriber a settlement demand letter. This letter informs the subscriber that a lawsuit for infringement of a copyrighted pornographic work has been filed against him, and that Plaintiff intends to name him in the lawsuit unless a settlement is reached. The letter also cites the possibility of statutory damages of up to $150,000 available to a successful plaintiff, whether or not this number is accurate. The defendant is then offered the chance to settle for substantially less than the maximum statutory penalty—$3,500. The letters also have an increasing settlement amount if the defendant delays before settling.

Plaintiff's discovery request says nothing about making settlement demands to Defendants, and states unequivocally that, upon receipt of ISP subscriber information, Plaintiff will name and serve the Defendants in this action. Complaint, ECF No. 1, p. 3. In practice, Plaintiff only *considers* naming and serving a Defendant after it has: 1) contacted the ISP subscriber; 2) attempted to settle with the subscriber; 3) elicited evidence of a defense from the subscriber; 4) evaluated the credibility of that evidence; and 5) found it wanting.

Other courts note Plaintiff's true goal is nothing more than to obtain information for coercing and exacting settlements from defendants like John Doe 21 cowed by the statutory liability, embarrassment associated with pornography and costs of litigation. *Patrick Collins, Inc. v. Doe*, No. 12-cv-02964, 2012 U.S. Dist. LEXIS 77486, *3-4 (S.D.N.Y. June 1, 2012). Likewise, CEG, of whom Plaintiff is a client, demonstrates no interest in litigation.[11]

> "Simply put, subscribing to services from CEG … is the best way to deal with copyright infringements online without the need for lawsuits."

*CEG Blog*, http//www.copyrightenforcementgroup.blogspot.com

### IV. ARGUMENT

---

[10]  This number reflects the number of defendants in Plaintiff's federal actions. It does not take into account the unknown number of defendants whom Plaintiff has sued in state court for copyright infringement.

[11]  "Plaintiff in this case is a client of CEG" — not the filing attorney. *Nicolini Declaration*, ECF No. 1-2, p.1 CEG in turn, provides its services—including legal counsel—at no cost to the Plaintiff. (www.ceg-intl.com/ monetization.html) ("Our fully customizable Monetization service solution is available at no cost to content owners."). That is CEG (and ostensibly its counsel) is only paid when settlements are obtained or cases won. Presumptively, this financial interest in the outcome of the litigation was revealed to the Court.

**A.  John Doe 21 is a Defendant and can Proceed Anonymously.**

**1.  John Doe 21 Has Standing to Quash.**

The legal fiction that John Doe 21 is not a party who can proceed anonymously was refuted the moment Plaintiff filed its Complaint. A plaintiff filing a complaint declares that a sufficient controversy exists between the parties to justify adjudication. Fed. R. Civ. P. 3. An individual becomes a defendant when sufficiently identified in the complaint, whether by an actual or fictitious name. The Complaint sufficiently identifies John Doe 21 through his "unique IP address" he was assigned at the time of alleged infringement. Memorandum, ECF No. 7, p.5.

> "The court notes that it cannot ignore the inconsistency of the plaintiff's position that the Doe defendant lacks standing to pursue a motion to [quash] because it has not been named or served, but at the same time refer throughout the … complaint to the "Defendant" who the plaintiff expressly identifies in the … complaint as the person with the Internet Protocol address [68.48.96.173]. … For all intents and purposes, the plaintiff has filed a complaint naming Doe [41] IP Address [71.192.247.16] as a defendant. The plaintiff's contention otherwise does not make it so."

*Millenium TGA, Inc. v. Doe*, No. 10-cv-05603, 2011 U.S. Dist. LEXIS 94746, *3-4 (N.D. Ill. Aug. 24, 2011) (*citing, Lake v. Neal*, 585 F.3d 1059 (7th Cir. 2009) ("[I]f it walks like a duck, swims like a duck, and quacks like a duck, it's a duck.").

Indeed, if John Doe 21 were not sufficiently identified, the Court would be obligated to dismiss the action. *Kemper Ins. Cos. v. Federal Express Corp.*, 115 F. Supp. 2d 116, 126 (D. Mass. 2000). In this case, John Doe 21 is individually and sufficiently identified through the IP addresses provided in the exhibit to the Complaint.

> "The status of parties, whether formal or otherwise, *does not depend upon the names by which they are designated*, but upon their relation to the controversy involved, its effect upon their interests, and whether judgment is sought against them. When, as here, the cause of action is against them, and substantial relief sought against them, they are real parties in interest."

*Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 30 n.3 (3rd Cir. Pa. 1985) (*citing, Grosso v. Butte Elec. Ry. Co.*, 217 F. 422, 423 (D. Mont. 1914). To prevent John Doe 21 from challenging the subpoena begs the question as to whether the proceedings[12] are truly adversarial or little more than an attempt to use expedited discovery to wrest quick settlements, regardless of innocence. *On the Cheap,*

---

[12] Plaintiff seeks to impose joint and several liability upon the Defendants, though at present it asserts none are a party to this action. However, a nonparty cannot be bound by a case in which he or one in privity with him is not a party unless the party is represented in the action and the representation is full and adequate. *Hansberry v. Lee,* 311 U.S. 32 (1940).

*LLC v. Does 1-5011*, No. 10-cv-004472-BZ, 2011 U.S. Dist. LEXIS 99831 (N.D. Cal. 2011). *See also, VPR Internationale v. Does 1-1017*, No. 11-cv-02068-HAB-DGB, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. 2011); *Bessette v. Avco Fin. Serv.*, 279 B.R. 442, 454 (D.R.I. 2002) ("This Court cannot sanction the further progression of an adversarial proceeding where there is no opposing party.").

### 2. John Doe 21 can Proceed Anonymously.

In similar matters, there has been no question as to the status of Does as Defendants. *Patrick Collins Inc. v. Does*, No. 10-cv-04468-LB, 2011 U.S. Dist. LEXIS 89833, *2 (N.D. Cal. Aug. 12, 2011) (Order granting provisional permission for Doe Defendants to proceed anonymously.) (*citing*, *Liberty Media Holdings, LLC v. Does 1-62*, 2011 U.S. Dist. LEXIS 51526, *6 (S.D. Cal. May 12, 2011). *See also, Arista Records LLC v. Doe*, 2008 U.S. Dist. LEXIS 34407 (D.D.C. April 28, 2008) (Does have standing to quash subpoenas to third parties.)

More so, federal courts grant an exception to the general rule that a suit may not be maintained unless the defendant has been made a party by service of process in situations where the otherwise unavailable identity of the defendant will eventually be made known through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). As the court in *Simmons* observed, the Defendant may be designated by a fictitious name, such as John Doe 21, if his true name is unknown to the Plaintiff and the Plaintiff *intends* to substitute the real name of the Defendant once his true name is ascertained. *Simmons v. District of Columbia*, 750 F. Supp. 2d 43, 45 (D.D.C. 2011). Plaintiff has yet to name any of the 10,473+ other defendants it has filed suit against—perhaps because it never intends to.

Plaintiff's established practice is to file suit, subpoena identities, repeatedly move to extend the service deadline, and then voluntarily dismiss once the court presses Plaintiff to further the litigation beyond discovery. Under these circumstances, the continued abuse of discovery is not warranted. A nonparty to an action cannot be subpoenaed to produce documents pursuant to Rule 45(b) if there is no legal proceeding contemplated. *Taylor v. Litton Medical Products, Inc.*, 19 Fed. R. Serv. 2d 1190, 1191-92 (D. Mass. 1975).

> "One reason for the restrictive interpretation is the potential for abuse of the subpoena. The subpoena invokes the power of the Court and, therefore, has the capacity to disrupt the lives of [John Doe 21]. A procedure which allowed parties to send out subpoenas *duces tecum* at will could result in a form of one-sided discovery."

*Id.*

Named fictitiously or not, even before being served with process, John Doe need only identify himself as the unnamed party to be entitled to defend a claim against him. Such identification does not

change the relationship between the parties nor the nature of the case. *Fordham v. Doe*, No. 11-cv-00032, 2011 U.S. Dist. LEXIS 121389, *10 (E.D. N.C. Oct. 20, 2011) (*citing, Dean v. Barber*, 951 F.2d 1210, 1215-16, (11th Cir. 1992) (District courts have created a limited exception to fictitious party pleading when the plaintiff's description of the defendant is so specific as to be "at the very worst, surplusage."); *Fede v. Clara Maass Hosp.*, 221 NJ Super 329, 336 (1987) ("the specific identification of the fictitiously-designated defendant does not result in a new party or a new cause of action.").

## B. Plaintiff's Request for Expedited Discovery Fails the *Momenta* Factors.

The inquiry for the court is whether the movant has established good cause for expedited discovery. *Wheeler v. HXI, LLC*, No. 10-cv-00145, 2010 U.S. Dist. LEXIS 90328, *4 (D.N.H. July 28, 2010) (*citing, McMann v. Doe*, 460 F. Supp. 2d 259, 265 (D. Mass. 2006)). When determining whether to permit expedited discovery, the court considers factors such as "the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." *Momenta Pharms., Inc. v. Teva Pharms. Indus.*, 765 F. Supp. 2d 87, 89 (D. Mass. 2011) (*quoting, McMann* at 265).

### 1. Purpose.

While Plaintiff says why it seeks the discovery identified in its motion, the reasons it gives do not relate to its anticipated motion for preliminary injunctive relief nor do they support its contention that the discovery sought will identify the actual infringer. The discovery Plaintiff seeks is more relevant to determining whether it actually has a claim at all against John Doe 21—which it should have determined before filing suit. In practice, the discovery sought is more an effort to collect information Plaintiff can use outside the litigation context to force settlements and less an effort to collect information necessary for securing injunctive relief or prosecuting its claims.

> "This Court shares the growing concern about unscrupulous tactics used by certain plaintiffs, particularly in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded."

*Patrick Collins, Inc. v. Doe*, No. 12-cv-02964, 2012 U.S. Dist. LEXIS 77486, *2 (S.D.N.Y. June 1, 2012).

### 2. Irreparable Harm.

According to Plaintiff, John Doe 21 is currently subjecting it to irreparable harm by engaging in the unlawful distribution of Plaintiff's copyrighted film. Plaintiff cannot demonstrate irreparable harm because any actual infringement by John Doe 21 is compensable by money damages and Plaintiff has not filed a motion for preliminary injunctive relief. *Momenta* at 88-89. ("[T]he fact that there [is] no pending preliminary injunction motion weigh[s] against allowing [a] plaintiff's motion for expedited discovery."). Likewise, Plaintiff's discovery request will not protect its ability to litigate its claims. Plaintiff does not know the proper party to bring its claims against or that the requested discovery will provide that information. *Patrick Collins, Inc. v. Doe*, No. 12-cv-02964, 2012 U.S. Dist. LEXIS 77486, *2-3 (S.D.N.Y. June 1, 2012) ("the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous"). Accordingly, the court has no basis for ruling that absent expedited discovery, Plaintiff faces irreparable harm or can bring a claim against John Doe 21.

**3.  Likelihood of Success on the Merits.**

Plaintiff is aware the subscriber is not always the proper defendant and that it may not even have a claim against John Doe 21, let alone succeed on the merits. *Patrick Collins, Inc. v. Doe*, No. 12-cv-02964, 2012 U.S. Dist. LEXIS 77486, *2-3 (S.D.N.Y. June 1, 2012).

**4.  Burden on John Doe 21.**

Though the discovery sought is directed towards a third-party ISP, it is John Doe 21 who feels the burden. Plaintiff argues that its request is not unduly burdensome because it is narrowly focused and the information it seeks is "not subject to privacy." Yet without a pending motion for preliminary injunctive relief, Plaintiff's discovery request lacks a frame of reference, which makes it difficult, at best, to determine the degree to which it is directed toward an acceptable purpose. *Cf. Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.,* No. 98-cv-02782, 1998 U.S. Dist. LEXIS 10511 (E.D. Pa. July 15, 1998) (evaluating the relevance of discovery in terms of "the issues to be addressed at the preliminary injunction hearing"). *See also, London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 158 (D. Mass. 2008) ("[T]he plaintiffs' subpoena may invade the anonymity of many non-infringing internet users—anonymity that deserves protection by the Court."). Given Plaintiff's established record of litigation conduct, it is reasonable to conclude that it is now using this Court to gain John Doe 21's personal information to coerce payment.

**5.  Degree of Prematurity.**

Plaintiff argues that it needs the information it seeks in order to file a motion for preliminary injunctive relief that, if granted, would help end the ongoing harm it is suffering as a result of John Doe 21's alleged conduct, and to determine if it even has a claim against John Doe 21. Complaint, ECF No. 1, pp. 9-10; Memorandum, ECF No. 7. Here, as the motion for expedited discovery was filed within days of the complaint, it could not have been filed much further in advance of the typical discovery process. Accordingly, the prematurity factor cannot be said to favor Plaintiff. *Cf. Semitool,* 208 F.R.D. at 276 (finding good cause for expedited discovery where complaint was filed on January 16, 2002, plaintiff moved for expedited discovery on March 15, and proposed to propound discovery three weeks earlier than normal); *Entm't Tech. Corp. v. Walt Disney Imagineering,* No. 3-cv-03546, 2003 U.S. Dist. LEXIS 19832 (E.D. Pa. Oct. 2, 2003) (denying motion for expedited discovery, but determining that discovery request was not "made too far in advance of the start of formal discovery" when filed more than two months after the complaint).

For these reasons fails the *Momenta* factors, and the subpoena for expedited discovery should be quashed.

**C.  Plaintiff Cannot, in Good Faith, Claim the Requested Discovery will Identify the Actual Infringer.**

On March 26, 2012, Plaintiff sought leave to take "limited discovery" citing data provided by CEG as the basis for the request. *See e.g.,* Memorandum, ECF No. 7. In doing so, Plaintiff misrepresented 1) "the information obtained by Plaintiff's investigator is specific enough to identify the particular individuals responsible for infringing Plaintiff's copyright." (*id.* at p. 5); and 2) "the defendants cannot be identified until the requested information is subpoenaed from the defendants' ISPs." (*Id.* at p. 7).

Exceptions to the rule against expedited discovery are disfavored. *Gillespie v. Civiletti*, 629 F. 2d 637, 642 (9th Cir. 1980)). *See also, Kemper Ins. Cos. v. Federal Express Corp.*, 115 F. Supp. 2d 116, 125 (D. Mass. 2000) ("Fictitious parties must eventually be dismissed, if discovery yields no identities."); *Tillson v. Odyssey Cruises*, No. 8-cv-10997-DPW, 2011 U.S. Dist. LEXIS 7911, *1 n.1 (D. Mass. Jan. 27, 2011).

The Court should not grant the Plaintiff early discovery to determine John Doe 21's identity because it is clear that the requested discovery will not uncover the identity of the actual infringer. *Kemper Ins. Cos. v. Federal Express Corp.*, 115 F. Supp. 2d 116, 125 (D. Mass. 2000) (*citing, Schiff*

*v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982) ("If it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice.")).

Plaintiff notes, the identity of the Defendants is central to its case. Memorandum, ECF No. 7, p.6. As Plaintiff is already aware though, the subscriber information revealed by the requested ISP discovery:

> "[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time."

*Patrick Collins, Inc. v. Doe*, No. 12-cv-02964, 2012 U.S. Dist. LEXIS 77486, *2-3 (S.D.N.Y. June 1, 2012); *In re Ingenuity 13 LLC*, No. 11-mc-0084-JAM-DAD, ECF No. 24 (E.D. Cal. March 21, 2012) ("[T]he only information known to petitioner is the identified IP addresses. … However, that information alone would not reveal who actually downloaded petitioner's work, since the subscriber's Internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's Internet connection without authorization.").[13]

As an "extraordinary remedy," expedited discovery may not be granted where the requested discovery will not give Plaintiff sufficient information to name any—let alone all—of the actual infringers in this case. Indeed, the fact that none of the 10, 473+ defendants in any of Plaintiff's mass copyright cases have ever been served belies any effort by Plaintiff to allege that the discovery *will* lead to identification of the actual infringer or service on John Doe 21.

Furthermore, Rule 15(c)(3) permits an amended complaint to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where, as here, there is a lack of knowledge of the proper party to begin with. *Wilson v. U.S.*, 23 F.3d 559, 563 (1st Cir. 1994). *See also, Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993) (no relation back when plaintiff initially had no knowledge of defendant's identity); *Bennett v. N.C. DOT*, No. 5-cv-00764, 2007 U.S.

---

[13] *See also, Pacific Century Intern. Ltd. v. Does 1-101*, 2011 U.S. Dist. LEXIS 124518, *2 (N.D. Cal. Oct. 27, 2011); *AF Holdings LLC v. Does 1-96*, 2011 WL 5864174, at *4; *Digital Sin, Inc. v. Does 1-5698*, No. C 11-04397 LB, 2011 WL 5362068, at *4 (N.D. Cal. Nov. 4, 2011).

Dist. LEXIS 86725, *11-13 (M.D.N.C. Nov. 26, 2007); *Burgin v. La Pointe Mach. Tool Co.*, 161 F.R.D. 44, 47 (D.S.C. 1995).

In this case, there is no "mistake concerning the identity of the proper party," as required by Rule 15(c)(3). Rather, Plaintiff admittedly lacks knowledge of the correct identity of the proper party. In other words, Plaintiff fully intended to sue John Doe 21, it did so, and John Doe 21, admittedly, may turn out to be the wrong party. "We have no doubt that Rule 15(c) is not designed to remedy such mistakes." *Wilson* at 563.

**D.  Plaintiff Seeks Pre-Suit Discovery for an Improper Purpose.**

Discovery is appropriate if the information sought is necessary or relevant, which means that it is "reasonably calculated to lead to the discovery of admissible evidence." *See, e.g., Williams v. Blagojevich*, 2008 U.S. Dist. LEXIS 643, *3 (N.D. Ill. Jan. 2, 2008) ("The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules. (citations omitted)). When evaluating relevancy, "a court is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978).

At its heart, the expedited discovery sought represents an effort by the Plaintiff to engage in pre-suit discovery for the sole purpose of determining whether a cause of action exists and, if so, against whom the action should be instituted. Plaintiff has not moved to amend the Complaint to name any parties. Nor has Plaintiff explained why John Doe 21's phone number and email address are necessary to identify him as a "potential" defendant. *Patrick Collins, Inc. v. Doe*, No. 12-cv-02964, 2012 U.S. Dist. LEXIS 77486, *5 (S.D.N.Y. June 1, 2012) (noting "defendants, whose telephone numbers have been disclosed, are at particular risk of receiving coercive phone calls threatening public filings that link them to alleged illegal copying and distribution of pornographic films, if a settlement fee is not forthcoming")

Lastly, Plaintiff seeks the MAC address of John Doe 21. A MAC (media access control) address is a unique numeric code that is permanently assigned to each unit of most types of networking hardware. This request is to determine John Doe 21's actual liability or responsibility rather than potentiality for liability. This is not the proper purpose of a Rule 26(f) motion and is certainly not the intended use of a Rule 45 subpoena. *See generally, Hard Drive Productions, Inc. v. Does 1-130*, No. 11-cv-03826, 2011 U.S. Dist. LEXIS 132449, *2-3 (N.D. Cal. Nov. 16, 2011).

**E.  Plaintiff's Request for Discovery Disregards John Doe 21's Privacy Rights.**

Plaintiff further contends that Internet subscribers like John Doe 21 do not have an expectation of privacy in their subscriber information "because they have already conveyed such information to their Internet Service Providers." Memorandum, ECF No. 7, p.8.

If John Doe 21 truly has no privacy interest in his information being disclosed, then this Court need not have granted the subpoena in the first place. The Plaintiff could have just called each ISP and simply obtained the subscriber information without any resistance.

> "Whatever privacy interest that a customer may have in the contact information associated with an IP address is minimal at best. … Still, however minimal or "exceedingly small" the Doe Defendants' interests here are, parties need only have "some personal right or privilege in the information sought" to have standing to challenge a subpoena to a third party. Accordingly, it appears that the Doe Defendants have standing to contest the subpoenas, and their motions to quash will not be denied on that basis."

*Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 48420, *25-26 (D. Md. Apr. 4, 2012) (*citing*, *Robertson v. Cartinhour*, 2010 U.S. Dist. LEXIS 16058, 2010 WL 716221, *1 (D. Md. Feb. 23, 2010)).

> "Just as police cannot invade the privacy of a home without some concrete evidence of wrongdoing inside, plaintiffs should not be able to use the Court to invade others' anonymity on mere allegation. By requiring plaintiffs to make out a prima facie case of infringement, the standard requires plaintiffs to adduce evidence showing that their complaint and subpoena are more than a mere fishing expedition."

*London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 175 (D. Mass. 2008).

> A [party] should be permitted to proceed anonymously in cases where a substantial privacy interest is involved. The most compelling situations involve matters which are highly sensitive, such as social stigmatization … or where the injury litigated against would occur as a result of the disclosure of the [party's] identity. That the [party] may suffer some embarrassment or economic harm is not enough. There must be a strong social interest in concealing the identity of the [party].

*John Doe v. Blue Cross & Blue Shield*, 794 F. Supp. 72, 74 (D.R.I. 1992) (citations omitted).

Other courts recognize an allegation that an individual illegally downloaded adult entertainment goes to matters of a sensitive and highly personal nature, including one's sexuality. *Patrick Collins, Inc. v. Doe*, No. 12-cv-00094, 2012 U.S. Dist. LEXIS 47689, *2-3 (D. Md. Apr. 4, 2012) (*citing, Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000); *Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 36232, *6 n.3 (D. Ariz. Mar. 19, 2012). *See also, John Doe* at 73 ("Matters of sexual identity and sexual preference are exceedingly personal.") *Digital*

*Sin, Inc. v. Does 1-5698*, No. 11-cv-04397-LB, 2011 U.S. Dist. LEXIS 128033, *10-11 (N.D. Cal. Nov. 4, 2011).

The privacy interests of innocent third parties as well as the nature of the accusation, weighs heavily against the Plaintiff's access to the requested information absent a showing that the John Doe 21 is the actual infringer. *Patrick Collins, Inc. v. Doe*, No. 12-cv-00095, 2012 U.S. Dist. LEXIS 48420, *11 n.3 (D. Md. Apr. 4, 2012). *See also, United States v. Sampson*, 297 F. Supp. 2d 342, 345 (D. Mass. 2003); *Gardner v. Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990).

**F.  Plaintiff has Improperly Joined John Doe 21 with Others Based on Disparate Alleged Acts.**

While "joinder of claims, parties and remedy is strongly encouraged," Fed. R. Civ. P. 20 sets forth specific standards for permissive joinder. *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). Under Rule 20, parties may be joined in a single lawsuit where the claims against them arise from a single transaction or a series of closely related transactions. Fed. R. Civ. P. 20(a).

Though an action may not be dismissed for misjoinder, the Court may drop a party at any time. Fed. R. Civ. P. 21; *Patrick Collins, Inc. v. Does*, 2012 U.S. Dist. LEXIS 47687 (D. Md. Apr. 4, 2012); *Hard Drive Productions, Inc v. Does 1-30*, No. 11-cv-00345, 2011 U.S. Dist. LEXIS 119333, *5 (E.D. Va. Oct. 17, 2011). In doing so, the Court may consider various factors to determine whether joinder comports with the fundamental principles of fairness, including the possibility of prejudice to John Doe 21 and the motives of the Plaintiff in seeking joinder. *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 (4th Cir. Md. 2007) (*citing*, *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. S.C. 2001). John Doe 21 has established Plaintiff's pattern of litigation abuse and shown that Plaintiff has specific motives in seeking joinder.

**1.  Joinder is Inappropriate and Severance is Warranted.**

Multiple courts hold that "the mere allegation that defendants have used the same peer-to-peer network to infringe a copyrighted work is insufficient to meet the standards for joinder set forth in Rule 20." *Berlin Media Art e.k. v. Doe*, No. 11-cv-03770-JSC, 2012 U.S. Dist. LEXIS 7888, *7-8 (N.D. Cal. Jan. 24, 2012) (*citing, Diabolic Video Productions, Inc. v. Does 1-2099*, No. 10-cv-05865-PSG, 2011 U.S. Dist. LEXIS 58351, *3 (N.D. Cal. May, 31, 2011)); *Patrick Collins, Inc. v. Does*, 2012 U.S. Dist. LEXIS 47687 (D. Md. Apr. 4, 2012)**.**

Alleging that John Doe 21 may have used a BitTorrent "swarm" does not itself prove that John Doe 21 is the actual infringer or engaged in "concerted activity." *Boy Racer v. Does*, No. 11-

cv-02834-LHK, 2011 U.S. Dist. LEXIS 86746, *8 (N.D. Cal. Aug. 5, 2011). Although Plaintiff argues that the John Doe 21's IP address' presence in the same BitTorrent swarm satisfies the standard for joinder, this allegation is insufficient to show that John Doe 21 engaged in concerted activity in a single transaction or closely related transactions with any of the other Defendants, and warrants dismissal for improper joinder.

Some courts defer the question of joinder and severance until after discovery. A consequence of this Court postponing the issue of joinder in this action, to a day that in all likelihood will never come, only serves to aid Plaintiff's improper use of the Court. "While Plaintiff[] [is] certainly entitled to vindicate [its] rights, [it] must play by the Federal Rules in doing so." *Sony BMG Music Entm't v. Does 1-5*, No. 7-cv-02434-SJO (C.D. Cal. Aug. 2, 2007).

> "'[I]f Plaintiffs' Complaint does in fact violate the joinder requirements, Plaintiffs should not be permitted to proceed with their lawsuit until after the procedural defect in the name of potential efficiency. … [Additionally,] [i]n all likelihood, if the joinder decision were to be postponed, the Court would never have an opportunity to rule on the propriety of Plaintiffs' joinder of the Doe Defendants. See *Sony BMG Music Entm't v. Does 1-5*, No. CV 07-2434 SJO(JCx) (C.D.Cal. Aug. 29, 2007).'"

*Patrick Collins, Inc. v. Does*, No. 12-cv-00087, 2012 U.S. Dist. LEXIS 47687, *6 (D. Md. Apr. 4, 2012) (*citing, Arista Records, LLC v. Does 1-11*, No. 7-cv-02828, 2008 U.S. Dist. LEXIS 90183, *17 (N.D. Ohio Nov. 3, 2008). Consequently, the Court's decision to address joinder at this point is critical to ensuring compliance with the Federal Rules of Civil Procedure. *See, Boy Racer Inc. v. Does 1-60*, No. 11-cv-01738-SI, 2011 U.S. Dist. LEXIS 92994, *4 n.1 (N.D. Cal. Aug. 19, 2011).

Even if Plaintiff's assertion were accurate, the potential for coercing unjust settlements from innocent Defendants trumps Plaintiff's interest in maintaining low litigation costs. *K-Beech, Inc. v. Does 1-41*, No. 11-cv-00046, 2012 U.S. Dist. LEXIS 31803, *15 (S.D. Tex. Mar. 8, 2012).

> "If the defendants are improperly joined, making the case procedurally defective, Collins should have to cure that defect before the case proceeds. Otherwise, Collins receives a windfall, mis-joining defendants and securing all the necessary personal information for settlement without paying more than a one-time filing fee."

*Patrick Collins, Inc. v. Does 1-44*, No. 12-cv-00020, 2012 U.S. Dist. LEXIS 47686 (D. Md. Apr. 4, 2012).

## 2. Merits of Plaintiff's Permissive Joinder Argument.

Even if John Doe 21 were the actual infringer, Plaintiff does not allege here that all members of this swarm were joined in this case. *See, e.g. Third Degree Films, Inc. v. Does 1-131*, No. 12-

cv-00108-PHX-JAT, 2012 U.S. Dist. LEXIS 26617 (D. Ariz. Feb. 29, 2012); *Third Degree Films v. Does 1-53*, No. 12-cv-00349, 2012 U.S. Dist. LEXIS 48417, *7 (D. Md. April 4, 2012) (Both courts finding Rule 20 not satisfied even though Defendants were alleged to be part of a particular swarm, identified by a particular hash, and all forum residents). *See also, K-Beech, Inc. v. Does 1-41*, No. 11-cv-00046, 2012 U.S. Dist. LEXIS 31803, *10-11 (S.D. Tex. Mar. 8, 2012). Instead, Plaintiff has joined only the IP addresses that were traceable to Massachusetts. Finding that a single swarm is not the same transaction or occurrence or a series of related transactions or occurrences, one court stated,

> "Here, the Doe Defendants' alleged participation in the same swarm spanned approximately a four-month period from May 2011 to August 2011. ... The Court cannot conclude that a Doe Defendant who allegedly downloaded a portion of the Motion Picture on May 11, 2011, a Doe Defendant who allegedly did the same on August 10, 2011, and over three thousand Doe Defendants who allegedly did the same in the interim, were engaged in the single transaction or series of closely-related transactions recognized under Rule 20."

*SBO Pictures v. Does 1-3036*, No. 11-cv-04220-SC, 2011 U.S. Dist. LEXIS 137361, *3 (N.D. Cal. Nov. 30, 2011). *See also, Patrick Collins, Inc. v. Doe*, No. 12-cv-00095, 2012 U.S. Dist. LEXIS 48420, *6 (D. Md. Apr. 4, 2012) (*citing, SBO Pictures*).

Similarly, another court concluded that,

> "Third Degree Films fails to demonstrate that joinder is appropriate. Third Degree Films argues that the Doe defendants are properly joined [because] the Doe defendants downloaded and shared the exact same file (i.e., were part of the same swarm) and the nature of BitTorrent technology requires concerted action with regard to each swarm. ... But, without more, permissive joinder is inappropriate, particularly given that 3,577 Doe defendants downloaded the protected work at various dates and times ranging from November 11, 2010 to June 1, 2011."

*Third Degree Films v. Does 1-3577*, No. 11-cv-02768-LB, 2011 U.S. Dist. LEXIS 128030, *3 (N.D. Cal. Nov. 4, 2011). *See also, Patrick Collins, Inc. v. Doe*, No. 12-cv-00095, 2012 U.S. Dist. LEXIS 48420, *18 (D. Md. Apr. 4, 2012) (*citing, Third Degree*).

A user participating in the same swarm is not the same transaction or occurrence or series of transactions or occurrences. A particular swarm, including the swarm at issue in this case, can last for many months. During those months, the initial participants may never overlap with later participants. Additionally, because pieces and copies of the protected work many be coming from various sources within the swarm, individual users might never use the same sources. Finally, in Plaintiff's effort to ensure this Court's jurisdiction, Plaintiff has included only Massachusetts IP addresses from this particular swarm. This is not a basis for allowing permissive joinder. *See, e.g., Third Degree Films,*

*Inc. v. Does 1-131*, No. 12-cv-00108-PHX-JAT, 2012 U.S. Dist. LEXIS 26617, *14-15 (D. Ariz. Feb. 29, 2012) (finding no logic to segregating the forum-based members of the swarm from the non-forum based members, except Plaintiff's convenience.)

In rejecting the same argument the Southern District of Texas reasoned:

"[E]ven if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole."

*K-Beech, Inc. v. Does 1-41*, No. 11-cv-00046, 2012 U.S. Dist. LEXIS 31803, *11 (S.D. Tex. Mar. 8, 2012).

Here, Plaintiff has failed to allege that its claims against John Doe 21 or any of the other 79 Defendants arise from "a single transaction or a series of closely related transactions." Instead, Plaintiff provides a list of all 79 Defendants, identified by IP addresses, and the date and time they each appeared in the swarm over a period of three months. Complaint, ECF No. 1-1. Plaintiff also alleges that John Doe 21 entered the same exact BitTorrent swarm as the other Defendants and reproduced and distributed the film to multiple third parties. Complaint, ECF No. 1. Plaintiff can not truthfully allege that John Doe 21 actually transferred pieces of the copyrighted work to or from any of the other Defendants.[14] *See, K-Beech, Inc. v. John Does 1-85,* No. 11-cv-00469-JAG, 2011 U.S. Dist. LEXIS 124581, *3-7 (E.D. Va. Oct. 5, 2011); *Boy Racer Inc. v. Does 1-60*, No. 11-cv-01738-SI, 2011 U.S. Dist. LEXIS 92994, *4 (N.D. Cal. Aug. 19, 2011) (finding misjoinder because "Plaintiff [did] not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant"). Rather, Plaintiff can only argue that *probability* suggests these Defendants received pieces of the work from each other.

---

[14] *K-Beech* at *4-5 (finding "the mere allegation that defendants used [BitTorrent] to copy and reproduce the Work … on different days and times, over a three month period" insufficient to support joinder); *Raw Films, Ltd. v. Does 1-32*, 2011 U.S.Dist. LEXIS 114996, *2-7 (E.D. Va. Oct. 5, 2011); *Patrick Collins, Inc. v. Does 1-58*, U.S. Dist. LEXIS 120235, *2-7 (E.D. Va. Oct. 5, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, 2011 U.S. Dist. LEXIS 119333, *6-10 (E.D. Va. Oct. 17, 2011); *Hard Drive Productions, Inc. v. Does 1-188*, 11-cv-01566-JCS, 2011 U.S. Dist. LEXIS, at *7-14 (N.D. Cal. Aug. 23, 2011) (collecting cases); *AF Holdings LLC v. Does 1-97*, 2011 U.S. Dist. LEXIS 78636, *4 (N.D. Cal. July 20, 2011) (holding that even though BitTorrent protocols differ from previous peer-to-peer platforms, joinder is improper); *Millennium TGA, Inc. v. Does 1-21*, 2011 U.S. Dist. LEXIS 53465, *6-7 (N.D. Cal. May 12, 2011); *Diabolic Video Prods. v. Does 1-2099*, 2011 U.S. Dist. LEXIS 58351, *9 (N.D. Cal. May 31, 2011); *Pac. Century Int'l, Ltd. v. Does 1-101*, 2011 U.S. Dist. LEXIS 73837, *7-14 (N.D. Cal. Jul. 8, 2011); *IO Group, Inc. v. Does 1-435*, 2011 U.S. Dist. LEXIS 14123, *3-6 (N.D. Cal. Feb. 3, 2011) (collecting cases).

Plaintiff's probability argument is illogical for two reasons: 1) John Doe 21 and each other Defendant appeared in the swarm on a different date and time, hours, days, weeks or months apart from one another; and 2) BitTorrent's appeal stems from the speed with which peers can download complete files. It is unlikely that one Defendant would remain in the swarm long enough to have direct contact with another Defendant who entered hours or months later. Merely alleging copyright infringement without any indication of concerted action fails to satisfy the "arising out of the ... same series of transactions or occurrences" requirement. *Cinetel Films v. Does 1-1052*, No. 11-cv-02438-JFM, 2012 U.S. Dist. LEXIS 47701, *18 (D. Md. Apr. 4, 2012). Therefore, the Court cannot find that "a single transaction or series of closely related transactions" connects John Doe 21 with any of the 79 Defendants and makes joinder proper.

Alternatively, even if this Court permitted joinder of the Massachusetts-based Defendants, applying the other discretionary factors, joinder in this case remains inappropriate. The question of joinder of the parties is within the discretion of the trial court. *On The Cheap, LLC v. Does 1-5011*, No. 10-cv-04472-BZ, 2011 U.S. Dist. LEXIS 99831, *2 (N.D. Cal. Sept. 6, 2011). Factors that the Court should consider include whether joinder would confuse and complicate this issues rather than making the management of the case more efficient. *Id.* Further, "the Court is required to 'examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side.'" *Id.* (*quoting, Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000)).

Joinder also fails to promote trial convenience and expedition of the ultimate determination of the substantive issues in this case. *See, On The Cheap, LLC v. Does 1-5011*, No. 10-cv-04472-BZ, 2011 U.S. Dist. LEXIS 99831, *2 (N.D. Cal. Sept. 6, 2011). Allowing the case to proceed against 79 Defendants creates more management problems than it promotes efficiency. Each Defendant may have different factual and legal defenses that the Court would have to resolve within the context of one case.

Lastly, Plaintiff has failed to prosecute any of its other 10,473+ defendants beyond discovery. Other courts, including this one, have recognized the absence of a "'real intention in good faith to prosecute the action against the ... defendant'" as a ground for finding fraudulent joinder even where there is some basis for the claims asserted. *Arriaga v. New Eng. Gas Co.*, 483 F. Supp. 2d 177, 185 (D.R.I. 2007) (citations omitted).

Because Plaintiff is unable to allege that John Doe 21 is the actual infringer or acted in concert with any of the Defendants, joinder is improper and warrants severance of John Doe 21 from the action without prejudice to Plaintiff.

## V. CONCLUSION

Because discovery would draw numerous innocent Internet users into the litigation, the burden on innocent users outweighed Plaintiff's need for discovery. Further, this first round of discovery will only lead to additional rounds of discovery if the owner of the IP addresses was not the infringer, which cuts against finding good cause for the first round of discovery. Finally, this invasive discovery can and does lead to abusive settlement practices.

Accordingly, because Plaintiff has not shown that the requested discovery is at all likely to uncover the identity of the actual infringer and that it has no intention of litigating the matter, its application for leave to take expedited discovery from John Doe 21 must be quashed or in the alternative, John Doe 21 should be severed.

Dated: June 6, 2012

Respectfully,

_____
Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

Jason E. Sweet