UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICK COLLINS, INC.<br><br>*Plaintiff*,<br><br>v.<br><br>DOES 1 – 79,<br><br>*Defendants*. | Civil Action No.: 1:12-cv-10532<br><br>**Opposition to Doe 58's<br>Motion to Quash** |

 A Motion to Quash was submitted by Doe 58 ("Doe"), claiming that he received a letter from Comcast notifying him about the subpoena served upon Comcast. Doe therefore wishes for the information not to be submitted to Plaintiff. He reasons, in essence, that the information sought is confidential, intended to maliciously coerce settlement, and is irrelevant to hold someone legally responsible for copyright infringement.

 While the Plaintiff recognizes the concerns of Doe 58, they are without merit to sustain this motion to quash: (1) Doe lacks standing to challenge the subpoena; (2) there is no recognized privacy interest in Doe's subscriber information, as he already has conveyed such information to Comcast and the terms of service explicitly provide notice of disclosure for instances at bar; (3) this Counsel for Plaintiff does not harass, nor intends to harass Doe defendants; Counsel intends to enforce Plaintiff's copyright with grace and tact;(4) the inference that the subscriber of an IP address is the one who downloaded the infringing material, is not in bad faith, nor a wrong place to start discovery; (5) Claiming that one's wifi-router was unsecured may be a valid defenses to this suit, but such a

defense is not at issue at this stage of the proceedings; and, (6) Plaintiff needs subpoenaed information to proceed.

**1. Doe Number 58 Lacks Standing to Challenge the Subpoena.**

A party to a lawsuit lacks standing to object to a subpoena served on a non-party, unless the party objects to the subpoena on the grounds of privilege, proprietary interest or privacy interest in the subpoenaed matter. *See* Fed. R. Civ. P. 45(c)(3)(B*). See also Robertson v. Cartinhour*; 2010 U.S. District LEXIS 16058 (D. Md. 2010) (Day, MJ) (unreported); *West Coast Prods., Inc. v. Does 1 - 5829*, 275 F.R.D. 9, 16 (D.D.C. 2011) (holding that procedural objections to subpoenas issued to the defendants' ISPs must be raised by the ISPs themselves, rather than the defendants); *United States Bank Nat'l Ass'n v. James*, 264 F.R.D. 17, 18-19 (D. Me. 2010) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." (citing *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997))); *Liberty Media Holdings v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7 B5BC9C05*, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011) (noting that defendants could not viably assert privacy interest in subscriber information as they are already disclosed to the ISPs). Therefore, Doe 58's motion to quash fails due to lack of standing.

**2. There is no privacy interest in the contact information sought by the subpoena.**

As is relevant here, Rule 45(c)(3)(iii) provides that a court may quash a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed.R.Civ.P. 45(c)(3)(iii). Pursuant to Rule 45(d)(2), when subpoenaed

information is withheld based on a claim of privilege, the claim of privilege must "describe the nature of the withheld [information] in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed.R.Civ.P. 45(d)(2).

Assuming Doe has standing, the exception for claims of privilege does not apply here, as the moving defendant did *not* viably assert any claim of privilege relating to the requested information. Internet subscribers do not have a proprietary interest or an expectation of privacy in their subscriber information because they have already conveyed such information to their Internet Service Providers ("ISPs"). *See Guest v. Leis,* 255 F. 3d 325 (6th Cir. 2001); *United States v. Simons,* 206 F.3d 392 (4th Cir., 2000); *see also First Time Videos, LLC v. Does 1-500*, No. 10 C 6254, 2011 WL 3498227, at *5 (N.D. Ill. Aug. 9, 2011) ("[i]nternet subscribers do not have a reasonable expectation of privacy in their subscriber information - including name, address, phone number, and email address - as they have already conveyed such information to theirs ISPs."); *Third Degree Films, Inc. v. Does 1 - 2010*, Civil No. 4:11 MC 2, 2011 WL 4759283, at *3 (N.D. Ind. Oct. 6, 2011) (citing *First Time Videos*, 2011 WL 3498227, at *4), (holding that because "[i]nternet subscribers share their information to set up their internet accounts," the subscribers "cannot proceed to assert a privacy interest over the same information they chose to disclose.")

The only information sought through the Subpoena at issue is the Doe defendant's contact information. This information has already been shared by the Doe Defendants with their respective ISPs.

Further, the Doe defendant exposed his IP address to the public by sharing the Motion Picture at issue. The torrent software exposes the IP address of the infringer, as explained in the **Complaint** and the **Decl. of Jon Nicolini**.

Courts have held that Internet subscribers do not have an expectation of privacy in their subscriber information - including names, addresses, phone numbers, and e-mail address - as they already have conveyed such information to their ISPs. *See e.g.*, *Liberty Media Holdings v. Swarm Sharing Hash File*, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011); *Guest v. Leis*, 255 F.3d 325, 335-36 (6th Cir.2001) ("Individuals generally lose a reasonable expectation of privacy in their information once they reveal it to third parties."); *U.S. v. Hambrick*, Civ. No. 99-4793, 2000 WL 1062039, at *4 (4th Cir. Aug. 3, 2000) (a person does not have a privacy interest in the account information given to the ISP in order to establish an email account); *U.S. v. Kennedy*, 81 F.Supp.2d 1103, 1110 (D.Kan.2000) (defendant's Fourth Amendment rights were not violated when an ISP turned over his subscriber information, as there is no expectation of privacy in information provided to third parties). *First Time Videos, LLC v. Does 1-18*, No. 4:11-cv-69-SEB-WGH, 2011 U.S. Dist. LEXIS 103881, 2011 WL 4079177, at *1 (S.D. Ind. Sept. 13, 2011); *Achte/Neunte Boll Kino Beteiligungs GmbH & Co. KG v. Doe*, 736 F. Supp. 2d 212 (D.D.C. 2010) (collecting cases, including U.S. v. Kennedy, Civ. No. 99-4793, 2000 WL 1062039, at *4 (4th Cir. Aug. 3, 2000)).

Therefore, assuming Doe has standing, Doe's motion to quash fails because it does not provide sufficient facts regarding subpoenaed information being privileged or otherwise protected matter, and does not provide an exception or waiver that would apply to satisfy Rule 45(c)(3)(iii).

### *3. Settlement of cases is normal; and, Plaintiff intends to proceed with litigation with great respect to the Law and Courts.*

Here are Plaintiff's general plans for this litigation: (1) Evidence of infringement is gathered and then grouped by locality and time; (2) Lawsuit is filed and early discovery is

sought to obtain identity of the IP address subscribers, i.e. – probable infringers (particular concern is the limited amount of time these account information is held by the ISPs. Too long a delay means evidence of IP address assignment may be lost forever); (3) Subscribers are notified of the subpoena and claim against them; (4) Some move to fight the subpoena, some concede liability and agree to settle, some explain why they are not the infringers, and some defendants even send notices of bankruptcy; (5) Plaintiff examines the various asserted defenses and determines their credibility and dismiss defendants who have credible explanations; (6) To those defendants who do not respond and defendants without credible explanations, Plaintiff will name and serve; (7) Defendants will likely put forth various defenses, many of which will overlap; (8) Once individual defendants are named and defenses are brought forth, judicial economy can be further served by grouping defendants with like-defenses. Even in the worst case scenario of each defendant requiring their own case, due to uniqueness of each defense, court is back to square one and is no worse off than severing all defendants at the very beginning and requiring Plaintiff to proceed individually. In fact, severing later in the case promotes judicial economy because in the early stages of these copyright litigations, all factual and legal issues with regards to early discovery, motion to quash, and motion to sever are substantially identical for all defendants.[1] *Cf. In re Adult Film Copyright Infringement Litigation*, 1:11-cv-07564 (S.D.N.Y. Mar. 13, 2012) (consolidating various copyright infringement cases together for discovery and other pre-trial purposes because actions involve common questions of law and fact).

Plaintiff also notes that low rate of actual litigation in copyright or intellectual property litigations are not unusual. *See Table C-4.* U.S. District Courts – Civil Cases Terminated,

---

[1] Grouping related cases together is in keeping with the spirit of local rule 40.1(G), requiring related civil cases to be assigned to the same judge.  *See* Local Rule 40.1 (G))

by Nature of Suit and Action Taken, During the 12-Month Period Ending June 30, 2011, available at *http://1.usa.gov/JbPvS4*, at 40. Page 40 of the table shows that *only* 1.8 percent of copyright cases reached trial. *Id*. Out of the 2,014 cases terminated, 629 terminated with no court actions and 1,112 cases terminated before pretrial. *Id*. That means 86.4 percent of those copyright cases ended prior to pretrial. *See id*. It is also noteworthy that low rate of litigation and pretrial termination are true for other intellectual property litigation, i.e. – patent and trademark. *See id*. 82.2 percent of patent litigations ended before pretrial and only 3.2 percent reached trial. *See id*. 87.5 percent of trademark litigations ended before pretrial and only 1.3 percent reached trial. *See id*. It then follows that most attorneys engage in some form of settlement negotiations before trial.[2]

Importantly, Doe's accusation that Plaintiff is only seeking to use this litigation to coerce settlement is unfounded and based on speculation. *Cf. Liberty Media Holdings, LLC*, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 17 & n. 7 (holding that allegation that Liberty Media Holdings was seeking identity merely to coerce settlement was purely speculative and not grounds for proceeding anonymously). The low rate of litigation and early termination is a fact common to copyright and intellectual property litigation. Therefore, Doe's allegations of bad faith against Plaintiff are false and unfounded.

---

[2] In addition, FRCP 16 and virtually every set of local rules and every scheduling order require the parties to engage in some form of settlement negotiations. See FRCP 16(a)(5); FRCP 16(c)(2)(I); *see, e.g.*, CR 16(a) (W.D.Wa.) ("Counsel should identify any appropriate ADR procedure, and suggest at what stage of the case it should be employed"). Also note that the Alternative Dispute Resolution Act of 1998, codified at 28 U.S.C. §651, authorized and required each United States district court to "devise and implement its own alternative dispute resolution program, by local rule . . ., to encourage and promote the use of alternative dispute resolution in its district." 28 U.S.C. §651(b). Congress found that ADR led to "greater satisfaction of the parties" and "greater efficiency in achieving settlements." Alternative Dispute Resolution Act of 1998 (Sec. 2).

### *4. The IP address is relevant to the infringer's identity.*

It is true that Plaintiff only knows the IP address where the infringement occurred and the sought subscriber information will only reveal the identity of the subscriber of that IP address. The inference drawn from that information, however, i.e. – that the subscriber of the IP address is the one who downloaded the infringing material, is not in bad faith. In fact, the same type of inference was drawn by the Fifth Circuit in upholding probable cause for a search warrant. *See United States v. Perez*, 484 F.3d 735, 740 & fn. 2 (5th Cir. 2007). In *Perez*, law enforcement obtained a search warrant based on affidavit that there was child pornography transmitted to a particular IP address and that IP address was assigned to the defendant. *See id*. at 740. Defendant in *Perez* argued "that the association of an IP address with a physical address does not give rise to probable cause to search that address." *Id*. The *Perez* Defendant went on to argue "that if he 'used an unsecure wireless connection, then neighbors would have been able to easily use [Perez's] internet access to make the transmissions.'" *Id*. Fifth Circuit rejected the argument, holding that "though it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it remained likely that the source of the transmissions was inside that residence." *See id*. Fifth Circuit went on to hold that there was a fair probability that the owner of the IP address was responsible for the download. *See* 484 F.3d at 740 & n. 2 (citing *United States v. Grant*, 218 F.3d 72, 73 (1st Cir. 2000)). It is not bad faith to infer, especially in this early stage of litigation, that owner of the IP address was the person responsible for downloads occurring at that IP address. *See Perez*, 484 F.3d at 740 & n. 2.

The issue is not whether infringement stemming from an IP address alone gives Plaintiff proof beyond doubt, but whether it gives Plaintiff a good faith basis to believe that the owner of the IP address committed the infringement.  As the *Perez* Court held, evidence of download at an IP address is sufficient evidence to support the suspicion

against the owner of that IP address. *See id*; *see also United States v. Vosburgh*, 602 F.3d 512 (3d Cir. Pa. 2010) ("We agree with the reasoning in Perez. As many courts have recognized, IP addresses are *fairly* "unique" identifiers. *See e.g.*, *United States v. Forrester*, 512 F.3d 500, 510 n.5 (9th Cir. 2008) (stating that "every computer or server connected to the Internet has a unique IP address"); *Perrine*, 518 F.3d at 1199 n.2 (noting that an IP address "is unique to a specific computer"); *Peterson v. Nat'l Telecomm. & Inform. Admin.*, 478 F.3d 626, 629 (4th Cir. 2007) (explaining that "[e]ach computer connected to the Internet is assigned a unique numerical [IP] address"); *White Buffalo Ventures, LLC v. Univ. of Texas at Austin*, 420 F.3d 366, 370 n.6 (5th Cir. 2005) (describing an IP address as "a unique 32-bit numeric address" that essentially "identifies a single computer")) (emphasis added: *fairly*).

### *5. Denial of liability is not relevant at this stage of the proceedings.*

While Doe's denial of liability may have merit, the merits of this case are not relevant to the issue of whether the subpoena is valid and enforceable. In other words, they may have valid defenses to this suit, but such defenses are not at issue at this stage of the proceedings. *See Fonovisa, Inc. v. Does 1-9*, Civ. No. 07-1515, 2008 U.S. Dist. LEXIS 27170, 2008 WL 919701, at *8 (W.D. Pa. Apr. 3, 2008) (if the entity whose identifying information was sought by a subpoena served on an ISP "believes that it has been improperly identified by the ISP, [the entity] may raise, at the appropriate time, any and all defenses, and may seek discovery in support of its defenses.")

### *6. Plaintiff needs information to proceed*

The case cannot proceed without identifying the defendants, and the defendants cannot be identified until the requested information is subpoenaed from the defendants'

ISPs. As numerous prior courts have agreed, early discovery is the only way to gain the information necessary to move the case forward. *See e.g. London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d at 179 (D. Mass. 2008) ("Without the names and address [of the John Doe defendants], the plaintiff cannot serve process and the litigation can never progress."); *Sony Music Enter. Inc. v. Does 1–40,* 326 F.Supp.2d at 566 (S.D.N.Y. 2004).

Plaintiff is aware of no alternative method of identifying the defendants other than by serving a subpoena on their ISPs. Thus, Plaintiff's only recourse is to serve a subpoena to the ISPs who have the required information.

**CONCLUSION**

Based on the above-stated reasons, Plaintiff respectfully requests this Court to deny the Motion to Quash the Subpoena submitted by Doe Number 58.

\* \* \*

Respectfully submitted on June 19, 2012,

> FOR THE PLAINTIFF:
>
> */s/ Marvin Cable*
>
> Marvin Cable, Esq.
> BBO#: 680968
> LAW OFFICES OF MARVIN CABLE
> P.O. Box 1630
> Northampton, MA 01061
> P: +1 (413) 268-6500
> F: +1 (413) 268-6500
> E: law@marvincable.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

*/s/ Marvin Cable*

Marvin Cable, Esq.