**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **PATRICK COLLINS, INC.** *Plaintiff,* v. **DOES 1 – 79**, *Defendants.* | Civil Action No.: 1:12-cv-10532 **Opposition to Doe 12's Motion to Sever, Quash and/or Dismiss** |

A Motion to Quash was submitted by Doe 12 ("Doe"), claiming that he received a letter from Comcast notifying him about the subpoena served upon Comcast. Doe therefore wishes for the information not to be submitted to Plaintiff, for the Xourt to sever the other defendants, and dismiss Doe from the action. He reasons, in essence, that there is misjoinder, that there is no common transaction nor occurrence amongst Does, that there are too many different stories amongst the Doe to properly adjudicate each case, and that there are deficiencies in the Plaintiff's reasoning that internet subscribers correlate to the infringers of copyright.

While the Plaintiff recognizes the concerns of Doe 12, they are without merit to sustain this motion to quash: (1) Doe lacks standing to challenge the subpoena; (2) does are properly joined;(3) the inference that the subscriber of an IP address is the one who downloaded the infringing material, is not in bad faith, nor a wrong place to start discovery; (4) Claiming that one's wifi-router was unsecured may be a valid defenses to this suit, but such a defense is not at issue at this stage of the proceedings; and, (5) Plaintiff needs subpoenaed information to proceed.

### *1. Doe Number 12 Lacks Standing to Challenge the Subpoena.*

A party to a lawsuit lacks standing to object to a subpoena served on a non-party, unless the party objects to the subpoena on the grounds of privilege, proprietary interest or privacy interest in the subpoenaed matter. *See* Fed. R. Civ. P. 45(c)(3)(B*). See also Robertson v. Cartinhour*, 2010 U.S. District LEXIS 16058 (D. Md. 2010) (Day, MJ) (unreported); *West Coast Prods., Inc. v. Does 1 - 5829*, 275 F.R.D. 9, 16 (D.D.C. 2011) (holding that procedural objections to subpoenas issued to the defendants' ISPs must be raised by the ISPs themselves, rather than the defendants); *United States Bank Nat'l Ass'n v. James*, 264 F.R.D. 17, 18-19 (D. Me. 2010) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." (citing *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997))); *Liberty Media Holdings v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7 B5BC9C05*, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011) (noting that defendants could not viably assert privacy interest in subscriber information as they are already disclosed to the ISPs). Therefore, Doe 12's motion to quash fails due to lack of standing.

### *2. Does have been properly joined.*

Doe raises issue of joinder as part of its argument for motion to quash[1] and also moves in the alternative to sever. For reasons stated below, joinder is proper and Doe's motion to sever should be denied.

    **2.1    REQUIREMENTS OF RULE 20 HAVE BEEN SATISFIED**

Permissive joinder is governed by Federal Rule of Civil Procedure 20, which provides

---

[1] As this court noted in *Liberty Media Holdings, LLC*, issue of joinder is irrelevant to motion to quash. 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), n. 5.

that: "Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Many courts have determined that all "logically related" events underlying a legal cause of action are generally considered as comprising a transaction or occurrence. *See Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). The Court may sever improperly joined parties at any time. However, "the impulse is toward the broadest possible scope of action consistent with fairness to the parties and joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). As one of the drafters of the Federal Rules of Civil Procedure, Professor and Judge Charles E. Clark, noted, "if there is any reason why bringing in another party or another claim might get matters settled faster, or more justly, then join them." 5 Charles A. Wright, *Joinder of Claims and Parties Under Modern Pleading Rules*, 36 Minn. L. Rev. 580, 632 (1952); *see also* James Wm. Moore et al., *Moore's Federal Practice*, § 20.02[1][a] (3d ed.) ("[J]oinder is based not on arcane historic formulations of legal relationships, but on common sense, fact-based considerations. . . . Many federal joinder rules permit addition of claims or parties based on transactional relatedness."); 6A Charles Alan Wright et al., *Federal Practice & Procedure: Civil 2d* § 1652 (1990) ("Like the compulsory counterclaim rule, the goal of the permissive joinder of parties rule–also centered on the 'transaction or occurrence'–is to prevent multiple lawsuits."); Robert G. Bone, *Mapping the Boundaries of a Dispute: Conceptions of Ideal Lawsuit Structure from the Field Code to the Federal Rules*, 89 Colum. L. Rev. 1, 80 (1989) ("The federal rules drafters . . . defined party structure primarily in terms of trial convenience, not in terms of

right, and relied to a large extent on trial judge discretion to shape optimal lawsuit structure for each dispute.").

There is little question that there is a common question of law or fact among the defendant in this action. *See* **Complaint**. Plaintiff alleges that each defendant illegally used BitTorrent protocol to illegally upload and download Plaintiff's copyrighted work. *See id*. Plaintiff also alleges that each defendant's action constituted violation of copyright laws. *See id*. In fact, it appears that even Doe does not contest the existence of common question of law or fact. (focusing on transaction prong of the permissive joinder rule, efficient case management, and implying fraudulent joinder).

The issue of joinder next turns to whether this case arises out of "same transaction, occurrence, or series of transactions or occurrences" Fed. R. Civ. P. 20(a)(2)(A). "This essentially requires claims asserted against joined parties to be 'logically related.'" *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F.Supp.2d 332, 342 (D.D.C. 2011) (citing *Disparte v. Corporate Exec. Bd.,* 223 F.R.D. 7, 12 (D.D.C. 2004); *see also Mosley v. Gen. Motors Corp.,* 497 F.2d at 1333. Furthermore, Supreme Court has "held that 'transaction is a word of flexible meaning which may comprehend a series of occurrences if they have logical connection." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 (1974) (citing *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926)).

Here, Plaintiff alleged that defendants have entered the exact same swarm over a period of three months and reproduced and distributed Plaintiff's copyrighted work using the exact same file as identified by the hash mark of the reproduced and distributed files. *See* **Complaint**. Doe argues that Plaintiff's allegations are insufficient to constitute series of related occurrences because Plaintiff cannot assert that defendants actually transferred pieces of the copyrighted work with each other, only that probability suggests that such is the case.

Doe's argument completely disregards the nature of BitTorrent protocol. As stated in paragraph 5 of the Complaint, the infringing activities of the doe defendants are logically related because:

> All Defendants identified in Exhibit A (i) have traded exactly the same file of the copyrighted work as shown by the identical hash mark; (ii) have traded (simultaneously uploaded and downloaded) the exact same file as is the nature of torrent software; and (iii) the alleged events occurred within a limited period of time.

*Complaint* ¶ 5; *see also Liberty Media Holdings, LLC*, U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 18 (holding that allegation of BitTorrent as a collective enterprise satisfies "same transaction or occurrence" requirement); *Voltage Pictures, LLC v. Does 1-5000*, 2011 U.S. Dist. LEXIS 50787, at \*35-\*39 (D.D.C. May 12, 2011) (distinguishing BitTorrent protocol from traditional peer to peer network); *Call of the Wild Movie, LLC*, 770 F.Supp.2d at 343 (holding that defendants using BitTorrent protocol were logically related and properly joined). *Digital Sin*, 2012 U.S. Dist. LEXIS 10803, 15 (S.D.N.Y. Jan. 30, 2012) (Court declining to sever the case at stage of litigation when discovery is underway to learn identifying facts necessary to permit service upon Doe defendants, "it is difficult to see how the sharing and downloading activity alleged in the Complaint – a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file – could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).") (emphasis added).

In determining whether the actions of doe defendants in a same swarm are logically related, the Court should look at the nature of the swarm. As the excerpt from BitTorrent, Inc.'s own website succinctly states, BitTorrent protocol's mentality is that of "Give and ye shall receive!" *See* **Declaration of John Nicolini**. Every participant of the swarm downloading the movie presumably acts with the same motivation: to obtain a free copy of

the copyrighted work. Every participant also understands that in order to make the BitTorrent system work and to have it be viable as a file sharing mechanism where free copies of various copyrighted works are available, they must do unto others as they would have others do to them, i.e. – redistribute copies of the movies they have downloaded. Even if there is not an actual exchange of files between initial participants of the swarm and later participants, they all commit the same infringing activity: they illegally download and then redistribute that download to others. This is done with the purpose of keeping the swarm alive, so that copies of copyrighted works continue to be available for free downloads.

Decentralized nature of BitTorrent protocol and vested interest of each member of the swarm in contributing in a concerted effort to illegally reproduce and distribute copyrighted work creates the logical relationship between the series of activities by the members of the swarm and these doe defendants. Coupled with Supreme Court's strong encouragement of permissive joinder, *United Mine Workers of Am.*, 383 U.S. at 724, the concerted actions of these doe defendants constitute logically related series of transactions. *See also Liberty Media Holdings, LLC*, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 17-21.

### 2.2. JOINDER WOULD PROMOTE JUDICIAL ECONOMY

Contrary to Doe's assertions, joinder, at this stage of the proceedings, promotes judicial economy. During the early stages of these types of copyright enforcement cases, the substantive issues to be dealt with are motions for early discovery, motions to quash, and motions to sever. These motions raise substantially the same issue for all these doe defendants. In fact, sometimes doe defendants file exactly the same motions using templates. It is obvious that judicial economy is served by consolidating these cases as much as possible so that the Court does not have to rehear the same motions over and

over again. *Cf. In re Adult Film Copyright Infringement Litigation*, 1:11-cv-07564 (S.D.N.Y. Mar. 13, 2012).

Doe argues that joinder "creates more management problems than it promotes efficiency" because each Defendant may have different factual and legal defenses that the Court would have to resolve within the context of one case. Doe's approach to joinder is too inflexible and narrow. Joinder is not an all or nothing proposition throughout the litigation. As long as joinder promotes judicial economy, as it does during early stages of litigation, it makes sense to maintain joinder of the doe defendants. Once individual doe defendants are named and bring forth various factual and legal defenses, judicial economy will be further served by grouping like-defenses together. Some defendants may pursue purely legal defenses and surely it would make sense to group defendants pursuing the same legal claim to promote economy and consistency. Even if every single named defendants end up pursuing different defenses and severance is required for all defendants, joinder during early stages of litigation promotes judicial economy over severing all defendants from the very beginning.

Also counseling in favor of joinder is the "interest of convenience" and "just, speedy, and inexpensive determination of the action." *See Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007). Severance in these types of copyright cases would become "significant obstacles in [Plaintiff's] efforts to protect [its] copyrights from illegal file-sharers and this would only needlessly delay [Plaintiff's] cases." *Call of the Wild Movie, LLC*, 770 F.Supp.2d at 344. Plaintiff would be forced to file separate lawsuits, pay separate filing fees, and issue separate subpoenas to ISPs for each individual infringer, all of which would work as substantial obstacle in enforcement of Plaintiff's copyright and would not "be in the 'interest of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.'" *Id.* (citing *Lane*, 2007 WL 2007493,

at *7). Therefore, judicial economy favors maintaining joinder of these doe defendants until individual defendant's defenses become distinct enough to favor severance.

### 2.3 JOINDER WOULD NOT PREJUDICE OR HARM THE DEFENDANTS

Joinder also does not prejudice or harm the defendants. *See Call of the Wild Movie, LLC*, 770 F.Supp.2d at 344. "To the contrary, joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants." *Id*. (citing *London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d 153, 161 (D.Mass. 2008)). "Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised." *London-Sire Records, Inc.*, 542 F.Supp.2d at 161.

### *3. The IP address is relevant to the infringer's identity.*

It is true that Plaintiff only knows the IP address where the infringement occurred and the sought subscriber information will only reveal the identity of the subscriber of that IP address. The inference drawn from that information, however, i.e. – that the subscriber of the IP address is the one who downloaded the infringing material, is not in bad faith. In fact, the same type of inference was drawn by the Fifth Circuit in upholding probable cause for a search warrant. *See United States v. Perez*, 484 F.3d 735, 740 & fn. 2 (5th Cir. 2007). In *Perez*, law enforcement obtained a search warrant based on affidavit that there was child pornography transmitted to a particular IP address and that IP address was assigned to the defendant. *See id*. at 740. Defendant in *Perez* argued "that the association of an IP address with a physical address does not give rise to probable cause to search that address." *Id*. The *Perez* Defendant went on to argue "that if he 'used an unsecure wireless

connection, then neighbors would have been able to easily use [Perez's] internet access to make the transmissions.'" *Id*. Fifth Circuit rejected the argument, holding that "though it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it remained likely that the source of the transmissions was inside that residence." *See id*. Fifth Circuit went on to hold that there was a fair probability that the owner of the IP address was responsible for the download. *See* 484 F.3d at 740 & n. 2 (citing *United States v. Grant*, 218 F.3d 72, 73 (1st Cir. 2000)). It is not bad faith to infer, especially in this early stage of litigation, that owner of the IP address was the person responsible for downloads occurring at that IP address. *See Perez*, 484 F.3d at 740 & n. 2.

The issue is not whether infringement stemming from an IP address alone gives Plaintiff proof beyond doubt, but whether it gives Plaintiff a good faith basis to believe that the owner of the IP address committed the infringement. As the *Perez* Court held, evidence of download at an IP address is sufficient evidence to support the suspicion against the owner of that IP address. *See id*; *see also United States v. Vosburgh*, 602 F.3d 512 (3d Cir. Pa. 2010) ("We agree with the reasoning in Perez. As many courts have recognized, IP addresses are *fairly* "unique" identifiers. *See e.g.*, *United States v. Forrester*, 512 F.3d 500, 510 n.5 (9th Cir. 2008) (stating that "every computer or server connected to the Internet has a unique IP address"); *Perrine*, 518 F.3d at 1199 n.2 (noting that an IP address "is unique to a specific computer"); *Peterson v. Nat'l Telecomm. & Inform. Admin.*, 478 F.3d 626, 629 (4th Cir. 2007) (explaining that "[e]ach computer connected to the Internet is assigned a unique numerical [IP] address"); *White Buffalo Ventures, LLC v. Univ. of Texas at Austin*, 420 F.3d 366, 370 n.6 (5th Cir. 2005) (describing an IP address as "a unique 32-bit numeric address" that essentially "identifies a single computer")) (emphasis added: *fairly*).

### *4. Denial of liability is not relevant at this stage of the proceedings.*

While Doe's denial of liability may have merit, the merits of this case are not relevant to the issue of whether the subpoena is valid and enforceable. In other words, they may have valid defenses to this suit, but such defenses are not at issue at this stage of the proceedings. *See Fonovisa, Inc. v. Does 1-9*, Civ. No. 07-1515, 2008 U.S. Dist. LEXIS 27170, 2008 WL 919701, at *8 (W.D. Pa. Apr. 3, 2008) (if the entity whose identifying information was sought by a subpoena served on an ISP "believes that it has been improperly identified by the ISP, [the entity] may raise, at the appropriate time, any and all defenses, and may seek discovery in support of its defenses.")

### *5. Plaintiff needs information to proceed*

The case cannot proceed without identifying the defendants, and the defendants cannot be identified until the requested information is subpoenaed from the defendants' ISPs. As numerous prior courts have agreed, early discovery is the only way to gain the information necessary to move the case forward. *See e.g. London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d at 179 (D. Mass. 2008) ("Without the names and address [of the John Doe defendants], the plaintiff cannot serve process and the litigation can never progress."); *Sony Music Enter. Inc. v. Does 1–40*, 326 F.Supp.2d at 566 (S.D.N.Y. 2004).

Plaintiff is aware of no alternative method of identifying the defendants other than by serving a subpoena on their ISPs. Thus, Plaintiff's only recourse is to serve a subpoena to the ISPs who have the required information.

### **CONCLUSION**

Based on the above-stated reasons, Plaintiff respectfully requests this Court to deny the motion submitted by Doe 12.

*     *     *

Respectfully submitted on June 19, 2012,

                                        FOR THE PLAINTIFF:

                                        */s/ Marvin Cable*

                                        Marvin Cable, Esq.
                                        BBO#: 680968
                                        LAW OFFICES OF MARVIN CABLE
                                        P.O. Box 1630
                                        Northampton, MA 01061
                                        P: +1 (413) 268-6500
                                        F: +1 (413) 268-6500
                                        E: law@marvincable.com

## CERTIFICATE OF SERVICE

     I hereby certify that on June 19, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

                                        */s/ Marvin Cable*
                                        Marvin Cable, Esq.