# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**PATRICK COLLINS, INC.**

*Plaintiff,*

v.

**DOES 1 – 79**,

*Defendants.*

CIVIL ACTION No.: 1:12-cv-10532

**Opposition to Doe 21's Motion to Quash or Sever**

Plaintiff filed a complaint against John Does who traded the identical file of Plaintiff's copyrighted work without authorization through BitTorrent file-swapping protocol. All John Does reside in Massachusetts.

John Doe 21 filed Motions to Quash Subpoena or in the Alternative to Sever (hereinafter "Doe 21's Mot."). For reasons stated below, both motions should be denied.

## 1. Nature of BitTorrent Protocol

Because the technological declaration accompanying the Complaint already describes the BitTorrent protocol in detail, Plaintiff will only highlight the important aspects of this technology relevant to this opposition. First, participation in the BitTorrent protocol is intentional and requires various deliberate actions. See Decl. of John Nicolini and exhibits. Second, each participant has a vested interest in sharing files with others in order to maximize their download capacity. See id. (With BitTorrent those who get your file tap into their upload capacity to give the file to others at the same time. Those that provide the most to other get the best treatment in return. ('Give and ye shall receive')) (excerpt from BitTorrent, Inc.'s own website). Third, when an

unauthorized copy of a copyrighted work is the content file in question, each peer (i.e. member of a swarm) in a P2P network sharing that unauthorized copy has acted and acts in cooperation with the other peers by providing an infringing reproduction of at least a portion of a copyrighted work. This is done in anticipation of other peers doing likewise with respect to that work and/or other works. Id. Thus, each member of the swarm downloads and uploads the shared content with the common goal and understanding of continuing the availability of the downloaded content, even if such content may be unauthorized copies of copyrighted works. See id.

## 2. Motion to Quash Should be Denied

### 2.1 Does lacks standing to challenge subpoena to third parties

As a threshold matter, Doe 21 lacks standing to challenge subpoena to third parties. See Fed. R. Civ. P. 45(c)(3)(B); Liberty Media Holdings v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7 B5BC9C05, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011); United States Bank Nat'l Ass'n v. James, 264 F.R.D. 17, 18-19 (D. Me. 2010) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." (citing Windsor v. Martindale, 175 F.R.D. 665, 668 (D. Colo. 1997))); Armor Screen Corp. v. Storm Catcher, Inc., 2008 WL 5049277, at *2 (S.D. Fla. Nov. 25, 2008). As this Court noted in Liberty Media Holdings, a party has no standing to challenge a subpoena issued to third parties unless it could assert some privilege to the requested document.   See 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), 13 n. 3 (noting that defendants could not viably assert privacy interest in subscriber information as they are already disclosed to the ISPs).

In its motion, Doe 21 asserts that there is proper standing because doe defendants are still parties and because Doe 21 can proceed anonymously. See Doe 21's Mot. at 6-8.

Neither is relevant for the determination of standing to quash a subpoena issued to third parties. See United States Bank Nat'l Ass'n, 264 F.R.D. at 18-19. Even parties, in order to challenge subpoenas issued to third parties, must have some claim of privilege over the subpoenaed information. See id. As for the argument that Doe 21 can proceed anonymously, the same argument which was previously rejected in Liberty Media Holdings, LLC, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011) at 20 - 23.[1]  Therefore, Doe 21's motion to quash fails due to lack of standing. See Liberty Media Holdings, LLC, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 13.

### 2.2 Early discovery for the purposes of obtaining Doe's identities is warranted.

Even assuming that Doe 21 has standing to challenge the subpoena, early discovery for the purposes of obtaining doe defendants' identities is warranted.

First, however, Plaintiff notes that much of Doe 21's issues were already raised by unnumbered Does in Liberty Media Holdings, LLC and rejected by this Court. It is curious that Doe 21 fails to discuss or even mention the Liberty Media Holdings, LLC case. Doe 21 makes no efforts to distinguish this case from Liberty Media Holdings, LLC at all, nor is there ground to distinguish, where this Court denied motion to quash and permission to proceed anonymously.

Doe 21's first argument is that there is no good cause for early discovery. See Doe 21's Mot. at 8-10. Doe 21 cites in support, Momenta Pharms., Inc. v. Teva Pharms. Indus., 765 F. Supp. 2d 87 (D. Mass. 2011), which applied the factors examined by this Court in McMann v. Doe, 460 F.Supp.2d 259 (D.Mass. 2006). McMann case involved

---

[1]  Importantly, the Court held that the potential embarrassment to Does 1-38 of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously. As the Superior Court of Massachusetts stated, "mere embarrassment [is] not sufficient to override the strong public interest in disclosure." Roe, 2011 Mass. Super. LEXIS 82, 2011 WL 2342737, at *1. Thus, the potential embarrassment or social stigma that Does 1-38 may face once their identities are released in connection with this lawsuit is not grounds for allowing them to proceed anonymously.

allegation of defamation against a doe defendant.    See McMann, 460 F.Supp.2d at 263.

Although McMann court ultimately dismissed the case based on subject matter

jurisdiction, or in the alternative, failure to state a claim for which relief can be granted,

see id. at 270, applying the same factors discussed by Doe 21, McMann court held that

early discovery would have been proper, see id. at 265. McMann court noted that "[i]n

this case, the discovery [of doe defendant's identity] is essential. Without the ability to

issue a subpoena, John Doe's true name would remain unknown, this suit could not

proceed, and Plaintiff McMann could receive no remedy." Id. The same principle

applies in this case. Without being able to ascertain the identity of the infringer,

Plaintiff's suit could not proceed. Although Doe 21 argues that there is no irreparable

harm because monetary damages are available, see Doe 21's Mot. at 8, if denied

discovery of doe defendants' identity, there will be no monetary damages because suit

could not proceed, see McMann, 460 F.Supp.2d at 265.

 Doe 21 also argues that early discovery violates Doe 21's privacy rights.    See Doe

21's Mot. at 13-14. Doe 21 argues both that there is privacy interest in subscriber

information, see id. at 12-13, and that allegations of illegally downloading adult film

"goes to matters of a sensitive and highly personal nature, including one's sexuality," id.

at 13.

 As for the first argument, this Court has already rejected claim of privacy interest

in subscriber information as mentioned supra n. 5. The second argument confuses the

nature of the sought information, i.e. subscriber information, with the nature of the

lawsuit. If the mere allegedly embarrassing nature of the lawsuit is sufficient to quash

subpoenas, it is tantamount to giving infringers carte blanche to commit infringement

and hide behind the shield of anonymity because they allege that the nature of the

infringed copyrighted work is embarrassing.[2]

Doe 21 also argues that discovery will not lead to actual infringers, alleges bad faith on the part of the Plaintiff, and argues that doe defendants are improperly joined. Each argument will be addressed below.

### 2.3 Doe's allegations of bad faith against the Plaintiff are false and unfounded.

Throughout the motion, Doe 21 repeatedly alleges bad faith against the Plaintiff and argues that the Court should consider the allegations in ruling on Doe 21's motion to quash or to sever. See e.g. Doe 21's Mot. at 4-5, 10-12.   Doe 21's allegation comes in two flavors: (1) Plaintiff cannot assert in good faith that they are suing and seeking to identify actual infringers and (2) Plaintiff never intends to litigate the matter. See id.

First allegation is the somewhat familiar refrain that the IP address alone is insufficient identify the actual infringer, as it only identifies the account holder or subscriber of that IP address. See id. at 10-12. Doe 21 further alleges that to infer that the subscriber of the infringing IP address is the actual infringer is in bad faith. See id.

---

[2]  Doe 41 cites Doe v. Blue Cross & Blue Shield of Rhode Island, 794 F.Supp. 72 (D.R.I. 1992), in support of the position that the subpoenaed information should be denied from the Plaintiffs and Doe 41 should be permitted to proceed anonymously.   There are several problems with this analogy.   First, in Blue Cross & Blue Shield of Rhode Island, it was the plaintiff who sought to proceed anonymously. See 794 F.Supp. at 72. There, the court found no significant harm to the defendant to permit the plaintiff to proceed anonymously. See id. at 75. Here, Doe 41 is seeking to bar the Plaintiff from finding out Doe 41's identity. Without that information, Plaintiff could not name nor serve Doe 41 and litigation could not proceed. In essence, Doe 41 is asking this court to dismiss Plaintiff's case. This is in stark contrast to Blue Cross & Blue Shield of Rhode Island, where court found no significant harm to the opposing party. See 794 F.Supp. at 75.

Furthermore, the nature of the interest involved is different. See id. at 72-73 (discussing right to proceed anonymously by transsexual litigants). Blue Cross & Blue Shield of Rhode Island involved request of a transsexual plaintiff to proceed anonymously. See id. Court granted the request, reasoning that "[w]hen those sexual practices fall outside the realm of 'conventional' practices which are generally accepted without controversy, ridicule or derision, that interest is enhanced exponentially." Id. at 74.

Such reasoning does not extend to pornographic films. See Jason Mick, Study: One Third of Internet is Crammed with Porn (June 17, 2010), available at http://bit.ly/IVcBhs (last visited May 9, 2012). "Recent studies have shown that nearly all young men and a significant percentage of young women indulge in porn." Id.   A new study found "approximately 37 percent of the pages online to contain pornographic content." Id. It can hardly be said that pornographic films are outside the realm of conventional practices.

It is true that Plaintiff only knows the IP address where the infringement occurred and the sought subscriber information will only reveal the identity of the subscriber of that IP address. The inference drawn from that information, however, i.e. – that the subscriber of the IP address is the one who downloaded the infringing material, is not in bad faith. In fact, the same type of inference was drawn by the Fifth Circuit in upholding probable cause for a search warrant. See United States v. Perez, 484 F.3d 735, 740 & fn. 2 (5th Cir. 2007). In Perez, law enforcement obtained a search warrant based on affidavit that there was child pornography transmitted to a particular IP address and that IP address was assigned to the defendant. See id. at 740. Defendant in Perez argued "that the association of an IP address with a physical address does not give rise to probable cause to search that address." Id. The Perez Defendant went on to argue "that if he 'used an unsecure wireless connection, then neighbors would have been able to easily use [Perez's] internet access to make the transmissions.'" Id. Fifth Circuit rejected the argument, holding that "though it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it remained likely that the source of the transmissions was inside that residence." See id. Fifth Circuit went on to hold that there was a fair probability that the owner of the IP address was responsible for the download.   See 484 F.3d at 740 & n. 2 (citing United States v. Grant, 218 F.3d 72, 73 (1st Cir. 2000)). It is not bad faith to infer, especially in this early stage of litigation, that owner of the IP address was the person responsible for downloads occurring at that IP address. See Perez, 484 F.3d at 740 & n. 2.

The issue is not whether infringement stemming from an IP address alone gives Plaintiff proof beyond doubt, but whether it gives Plaintiff a good faith basis to believe that the owner of the IP address committed the infringement.   As the Perez Court held, evidence of download at an IP address is sufficient evidence to support the suspicion against the owner of that IP address. See id; see also United States v.

<u>Vosburgh</u>, 602 F.3d 512 (3d Cir. Pa. 2010) ("We agree with the reasoning in Perez. As many courts have recognized, IP addresses are *fairly* "unique" identifiers. <u>See</u>, <u>e.g.</u>, <u>United States v. Forrester</u>, 512 F.3d 500, 510 n.5 (9th Cir. 2008) (stating that "every computer or server connected to the Internet has a unique IP address"); <u>Perrine</u>, 518 F.3d at 1199 n.2 (noting that an IP address "is unique to a specific computer"); <u>Peterson v. Nat'l Telecomm. & Inform. Admin.</u>, 478 F.3d 626, 629 (4th Cir. 2007) (explaining that "[e]ach computer connected to the Internet is assigned a unique numerical [IP] address"); <u>White Buffalo Ventures, LLC v. Univ. of Texas at Austin</u>, 420 F.3d 366, 370 n.6 (5th Cir. 2005) (describing an IP address as "a unique 32-bit numeric address" that essentially "identifies a single computer")) (emphasis added: *fairly*).

Second allegation of bad faith is that Plaintiff is "using this Court as nothing more than an inexpensive means to gain John Doe 21's personal information to coerce payment." <u>Doe 21's Mot.</u> at 2.   Doe 21 alleges that individual doe defendants have not yet been named and served. <u>See id.</u> at 5.

First, individual defendants in other cases filed by Plaintiff are in the process of being named and served. Plaintiff recently started by naming and initiating service on some of the defendants in an early DC case. Although many more defendants remain to be named and served, this is due in large part to the fact that cases were filed fairly recently, mostly in the 4th quarter of 2011 and 1st quarter of 2012.[3]

Plaintiff is proceeding and plans on continuing in these litigations in the following manner: (1) Evidence of infringement is gathered and then grouped by locality and time; (2) Lawsuit is filed and early discovery is sought to obtain identity of the IP address subscribers, i.e. – probable infringers (particular concern is the limited amount

---

[3]  Plaintiff's counsel notes that Plaintiff Patrick Collins, Inc. is represented by various counsels across the country.   This particular case is being represented by Attorney Cable, based on evidence collected by CEG. Doe appears to lump all type of cases filed by Patrick Collins, Inc. regardless of the litigation conduct of Attorney Cable or other counsels working with CEG.

of time these account information is held by the ISPs. Too long a delay means evidence of IP address assignment may be lost forever); (3) Subscribers are notified of the subpoena and claim against them; (4) Some move to fight the subpoena, some concede liability and agree to settle, some explain why they are not the infringers, and some defendants even send notices of bankruptcy; (5) Plaintiff examines the various asserted defenses and determines their credibility and dismiss defendants who have credible explanations; (6) To those defendants who do not respond and defendants without credible explanations, Plaintiff will name and serve; (7) Defendants will likely put forth various defenses, many of which will overlap; (8) Once individual defendants are named and defenses are brought forth, judicial economy can be further served by grouping defendants with like-defenses. Even in the worst case scenario of each defendant requiring their own case, due to uniqueness of each defense, court is back to square one and is no worse off than severing all defendants at the very beginning and requiring Plaintiff to proceed individually. In fact, severing later in the case promotes judicial economy because in the early stages of these copyright litigations, all factual and legal issues with regards to early discovery, motion to quash, and motion to sever are substantially identical for all defendants.[4] Cf. In re Adult Film Copyright Infringement Litigation, 1:11-cv-07564 (S.D.N.Y. Mar. 13, 2012) (consolidating various copyright infringement cases together for discovery and other pre-trial purposes because actions involve common questions of law and fact).

    Plaintiff also notes that low rate of actual litigation in copyright or intellectual property litigations are not unusual. See Table C-4. U.S. District Courts – Civil Cases Terminated, by Nature of Suit and Action Taken, During the 12-Month Period Ending

---

[4] Grouping related cases together is in keeping with the spirit of local rule 40.1(G), requiring related civil cases to be assigned to the same judge.   See Local Rule 40.1 (G))

June 30, 2011, available at http://1.usa.gov/JbPvS4, at 40.[5]  Page 40 of the table shows

that *only* 1.8 percent of copyright cases reached trial. Id. Out of the 2,014 cases

terminated, 629 terminated with no court actions and 1,112 cases terminated before

pretrial. Id. That means 86.4 percent of those copyright cases ended prior to pretrial.

See id. It is also noteworthy that low rate of litigation and pretrial termination are true

for other intellectual property litigation, i.e. – patent and trademark. See id. 82.2 percent

of patent litigations ended before pretrial and only 3.2 percent reached trial. See id. 87.5

percent of trademark litigations ended before pretrial and only 1.3 percent reached trial.

See id. It then follows that most attorneys engage in some form of settlement

negotiations before trial.[6]

　　　Importantly, Doe 21's accusation that Plaintiff is only seeking to use this litigation

to coerce settlement is unfounded and based on speculation.   Cf. Liberty Media

Holdings, LLC, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 17 & n. 7 (holding

that allegation that Liberty Media Holdings was seeking identity merely to coerce

settlement was purely speculative and not grounds for proceeding anonymously). As

explained above, Plaintiff has started the process of naming and serving defendants and

will proceed against those defendants without credible explanations. The low rate of

litigation and early termination is a fact common to copyright and intellectual property

litigation. Therefore, Doe 21's allegations of bad faith against Plaintiff are false and

---

[5]  Plaintiff notes that these statistics are for cases ending prior to those cited by Doe as sign of bad faith on the part of the Plaintiff.    Therefore, these statistics are not affected by Plaintiff's cases.

[6]  In addition, FRCP 16 and virtually every set of local rules and every scheduling order require the parties to engage in some form of settlement negotiations. See FRCP 16(a)(5); FRCP 16(c)(2)(I); see, e.g., CR 16(a) (W.D.Wa.) ("Counsel should identify any appropriate ADR procedure, and suggest at what stage of the case it should be employed").    Also note that the Alternative Dispute Resolution Act of 1998, codified at 28 U.S.C. §651, authorized and required each United States district court to "devise and implement its own alternative dispute resolution program, by local rule . . ., to encourage and promote the use of alternative dispute resolution in its district." 28 U.S.C. §651(b). Congress found that ADR led to "greater satisfaction of the parties" and "greater efficiency in achieving settlements." Alternative Dispute Resolution Act of 1998 (Sec. 2).

unfounded.

## 3. Motion to Sever Should be Denied

Doe 21 raises issue of joinder as part of its argument for motion to quash[7]  and also moves in the alternative to sever. For reasons stated below, joinder is proper and Doe 21's motion to sever should be denied.

### 3.1 Requirements of Rule 20 have been satisfied.

Permissive joinder is governed by Federal Rule of Civil Procedure 20, which provides that: "Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Many courts have determined that all "logically related" events underlying a legal cause of action are generally considered as comprising a transaction or occurrence. See Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974). The Court may sever improperly joined parties at any time. However, "the impulse is toward the broadest possible scope of action consistent with fairness to the parties and joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). As one of the drafters of the Federal Rules of Civil Procedure, Professor and Judge Charles E. Clark, noted, "if there is any reason why bringing in another party or another claim might get matters settled faster, or more justly, then join them." 5 Charles A. Wright, Joinder of Claims and Parties Under Modern Pleading Rules, 36 Minn. L. Rev. 580, 632 (1952); see also James Wm. Moore et al., Moore's

---

[7]  As this court noted in Liberty Media Holdings, LLC, issue of joinder is irrelevant to motion to quash. 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), n. 5.

<u>Federal Practice</u>, § 20.02[1][a] (3d ed.) ("[J]oinder is based not on arcane historic formulations of legal relationships, but on common sense, fact-based considerations. . . . Many federal joinder rules permit addition of claims or parties based on transactional relatedness."); 6A Charles Alan Wright et al., <u>Federal Practice & Procedure: Civil 2d</u> § 1652 (1990) ("Like the compulsory counterclaim rule, the goal of the permissive joinder of parties rule–also centered on the 'transaction or occurrence'–is to prevent multiple lawsuits."); Robert G. Bone, <u>Mapping the Boundaries of a Dispute: Conceptions of Ideal Lawsuit Structure from the Field Code to the Federal Rules</u>, 89 Colum. L. Rev. 1, 80 (1989) ("The federal rules drafters . . . defined party structure primarily in terms of trial convenience, not in terms of right, and relied to a large extent on trial judge discretion to shape optimal lawsuit structure for each dispute.").

There is little question that there is a common question of law or fact among the defendant in this action. <u>See</u> <u>Complaint</u> ¶¶ 5-14. Plaintiff alleges that each defendant illegally used BitTorrent protocol to illegally upload and download Plaintiff's copyrighted work. <u>See id.</u> Plaintiff also alleges that each defendant's action constituted violation of copyright laws. <u>See id.</u> In fact, it appears that even Doe 21 does not contest the existence of common question of law or fact. <u>See Doe 21's Mot.</u> at 15-19 (focusing on transaction prong of the permissive joinder rule, efficient case management, and alleging fraudulent joinder).

The issue of joinder next turns to whether this case arises out of "same transaction, occurrence, or series of transactions or occurrences" <u>Fed. R. Civ. P.</u> 20(a)(2)(A). "This essentially requires claims asserted against joined parties to be 'logically related.'" <u>Call of the Wild Movie, LLC v. Does 1-1,062</u>, 770 F.Supp.2d 332, 342 (D.D.C. 2011) (citing <u>Disparte v. Corporate Exec. Bd.</u>, 223 F.R.D. 7, 12 (D.D.C. 2004); <u>see also</u> <u>Mosley v. Gen. Motors Corp.</u>, 497 F.2d at 1333.   Furthermore, Supreme Court has "held that 'transaction is a word of flexible meaning which may comprehend a

series of occurrences if they have logical connection." <u>Baker v. Gold Seal Liquors, Inc.</u>, 417 U.S. 467, 469 (1974) (citing <u>Moore v. New York Cotton Exch.</u>, 270 U.S. 593, 610 (1926)).

Here, Plaintiff alleged that defendants have entered the exact same swarm over a period of three months and reproduced and distributed Plaintiff's copyrighted work using the exact same file as identified by the hash mark of the reproduced and distributed files. <u>See</u> <u>Complaint</u> ¶¶ 1-14. Doe 21 argues that Plaintiff's allegations are insufficient to constitute series of related occurrences because Plaintiff cannot assert that defendants actually transferred pieces of the copyrighted work with each other, only that probability suggests that such is the case.

Doe 21's argument completely disregards the nature of BitTorrent protocol. As stated in paragraph 5 of the Complaint, the infringing activities of the doe defendants are logically related because:

> All Defendants identified in Exhibit A (i) have traded exactly the same file of the copyrighted work as shown by the identical hash mark; (ii) have traded (simultaneously uploaded and downloaded) the exact same file as is the nature of torrent software; and (iii) the alleged events occurred within a limited period of time.

<u>Complaint</u> ¶ 5; <u>see also</u> <u>Liberty Media Holdings, LLC</u>, U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 18 (holding that allegation of BitTorrent as a collective enterprise satisfies "same transaction or occurrence" requirement); <u>Voltage Pictures, LLC v. Does 1-5000</u>, 2011 U.S. Dist. LEXIS 50787, at *35-*39 (D.D.C. May 12, 2011) (distinguishing BitTorrent protocol from traditional peer to peer network); <u>Call of the Wild Movie, LLC</u>, 770 F.Supp.2d at 343 (holding that defendants using BitTorrent protocol were logically related and properly joined). <u>Digital Sin</u>, 2012 U.S. Dist. LEXIS 10803, 15 (S.D.N.Y. Jan. 30, 2012) (Court declining to sever the case at stage of litigation when discovery is underway to learn identifying facts necessary to permit service upon Doe defendants, "it is difficult to see how the sharing and downloading activity alleged in the Complaint -

- a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file – could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).")(emphasis added).

In determining whether the actions of doe defendants in a same swarm are logically related, the Court should look at the nature of the swarm. As the excerpt from BitTorrent, Inc.'s own website succinctly states, BitTorrent protocol's mentality is that of "Give and ye shall receive!" See Declaration of John Nicolini.   Every participant of the swarm downloading the movie presumably acts with the same motivation: to obtain a free copy of the copyrighted work. Every participant also understands that in order to make the BitTorrent system work and to have it be viable as a file sharing mechanism where free copies of various copyrighted works are available, they must do unto others as they would have others do to them, i.e. – redistribute copies of the movies they have downloaded. Even if there is not an actual exchange of files between initial participants of the swarm and later participants, they all commit the same infringing activity: they illegally download and then redistribute that download to others. This is done with the purpose of keeping the swarm alive, so that copies of copyrighted works continue to be available for free downloads.

Decentralized nature of BitTorrent protocol and vested interest of each member of the swarm in contributing in a concerted effort to illegally reproduce and distribute copyrighted work creates the logical relationship between the series of activities by the members of the swarm and these doe defendants. Coupled with Supreme Court's strong encouragement of permissive joinder, United Mine Workers of Am., 383 U.S. at 724, the concerted actions of these doe defendants constitute logically related series of transactions. See also Liberty Media Holdings, LLC, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 17-21.

### 3.2 Joinder would promote judicial economy.

Contrary to Doe 21's assertions, joinder, at this stage of the proceedings, promotes judicial economy. During the early stages of these types of copyright enforcement cases, the substantive issues to be dealt with are motions for early discovery, motions to quash, and motions to sever. These motions raise substantially the same issue for all these doe defendants. In fact, sometimes doe defendants file exactly the same motions using templates. It is obvious that judicial economy is served by consolidating these cases as much as possible so that the Court does not have to rehear the same motions over and over again.   Cf. In re Adult Film Copyright Infringement Litigation, 1:11-cv-07564 (S.D.N.Y. Mar. 13, 2012).

Doe 21 argues that joinder "creates more management problems than it promotes efficiency" because "[e]ach Defendant may have different factual and legal defenses that the Court would have to resolve within the context of one case." Doe 21's Mot. at 18. Doe 21's approach to joinder is too inflexible and narrow.   Joinder is not an all or nothing proposition throughout the litigation.   As long as joinder promotes judicial economy, as it does during early stages of litigation, it makes sense to maintain joinder of the doe defendants. Once individual doe defendants are named and bring forth various factual and legal defenses, judicial economy will be further served by grouping like-defenses together. Some defendants may pursue purely legal defenses and surely it would make sense to group defendants pursuing the same legal claim to promote economy and consistency. Even if every single named defendants end up pursuing different defenses and severance is required for all defendants, joinder during early stages of litigation promotes judicial economy over severing all defendants from the very beginning.

Also counseling in favor of joinder is the "interest of convenience" and "just, speedy, and inexpensive determination of the action." See Lane v. Tschetter, No. 05-

1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007). Severance in these types of copyright cases would become "significant obstacles in [Plaintiff's] efforts to protect [its] copyrights from illegal file-sharers and this would only needlessly delay [Plaintiff's] cases." Call of the Wild Movie, LLC, 770 F.Supp.2d at 344.   Plaintiff would be forced to file separate lawsuits, pay separate filing fees, and issue separate subpoenas to ISPs for each individual infringer, all of which would work as substantial obstacle in enforcement of Plaintiff's copyright and would not "be in the 'interest of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.'"   Id.   (citing Lane, 2007 WL 2007493, at *7). Therefore, judicial economy favors maintaining joinder of these doe defendants until individual defendant's defenses become distinct enough to favor severance.

### 3.3 Joinder would not prejudice or harm the defendants.

Joinder also does not prejudice or harm the defendants.   See Call of the Wild Movie, LLC, 770 F.Supp.2d at 344. "To the contrary, joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants."   Id. (citing London-Sire Records, Inc. v. Doe 1, 542 F.Supp.2d 153, 161 (D.Mass. 2008)). "Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised." London-Sire Records, Inc., 542 F.Supp.2d at 161.

Doe 21 continues to rail against joinder, raising concerns of coercive settlement and alleging improper motives on the part of the Plaintiff. See Doe 21's Mot. at 2, 18.

Doe 21's allegations of bad faith have already been discussed in detail above.[8]  See supra 2.3.

As for the purely speculative assertion that joinder may coerce unjust settlement from innocent defendants, see Doe 21's Mot. at 15, one must keep in mind Plaintiff's basis for the lawsuit. Plaintiff is suing owners of IP addresses from which infringing activities were found. After learning the identities of doe defendants, Plaintiff sends letters alerting them of Plaintiff's claims. When defendants settle after receiving these letters, a logical inference is that defendants are settling because they are guilty of copyright infringement and are now faced with evidence of their illegal activity. It is not as if Plaintiff plucked these defendants out of thin air. The complaint is based on evidence of infringement gathered by experts.[9]

## 4. Implications beyond this case.

Plaintiff's counsel hardly needs to educate the Court on the power of precedent, the binding nature that court decisions may have in future cases.   Plaintiff's counsel is compelled, however, to note that this case and cases like this involving unauthorized trading of digital files will have implications beyond well-formed speculations. For

---

[8]  Doe cites Arriaga v. New Eng. Gas Co., 483 F.Supp.2d 177 (D.R.I. 2007), for the proposition that absence of intention to litigate is grounds for finding fraudulent joinder. See Doe's Mot. at 18. Plaintiff has already explained that it does intend to litigate and has started the process of naming defendants. Still, it should be noted that Doe 41 takes the Arriaga case completely out of context.   Arriaga dealt with doctrine of fraudulent joinder, which is where Plaintiff joins non-diverse defendant in bad faith for the purposes of defeating removal jurisdiction. See 483 F.Supp.2d at 181.    t has no application to this case and is completely irrelevant.

[9]  Doe 41 also alleges that the nature of the copyrighted work infringed may coerce defendants into settlement. See Doe's Mot. at 5. First, contrary to Doe 41's assertion, it is unclear whether the nature of the infringed work would have any coercive settlement effect. It is not as if Plaintiff is seeking to brand the defendants with a scarlet letter (dubious effect of such letter would have in this day and age notwithstanding). Second, for the purposes of joinder analysis, even if being named as a defendant in a copyright infringement case involving pornographic film has coercive effect, such effect would not be lessened by being named as sole defendant in a lawsuit as opposed to being part of a class of defendants. If anything, the prospect of being a lone named defendant would be more attention getting.

example, with 3D printers, there is a likelihood that within a couple dozen years from now, many homes will have the technology with the ability to manufacture products *without* the need of going to the store nor ordering products online. Essentially, all that is needed is the hardware to manufacture the product, and a digital file(s) to instruct the hardware.[10]  The digital files will fall under copyright protections, and without securing protections now, many other industries and livelihoods will be harmed. This is one example of many that are being impacted by this type of litigation.

    Severely restricting the ability of this Copyright Holder and others to effectively enforce it's rights, to stave of diminution of works, has the consequence of having little to no copyright protections, leading to massive piracy of works not just owned by Plaintiff. Indeed, widespread piracy was the impetus to the Statute of Anne, mankind's first copyright statute.[11]

## Conclusion

    As stated above, Doe 21's motion to quash should be denied because Doe 21 does not have standing to challenge a subpoena to a third party.    Even if standing was proper, early discovery to ascertain the identities of doe defendants are necessary and reasonable. Furthermore, contrary to Doe 21's assertions, Plaintiff is not litigating in bad faith. Plaintiff has sufficient basis to allege copyright infringement against the doe defendants and is now in the process of naming and in fact has already named doe

---

[10]  See TED Talks, Lisa Harouni: A Primer on 3D printing (January, 2012), available at http://bit.ly/Kd0dtB (last visited May 9, 2012).

[11]  Prof. Walter J. Derenerg, Study No. 3. The Meaning of "Meaning of Writings in the Copyright Clause of the Constitution".    (November 1956).   George S. Grossman, Omnibus Copyright Revision Legislative History 61, 68 (2001). ("In 1694 the Licensing Act under which the Company then operated, expired and there ensued, from 1695 until 1709, a period in which no copyright protection existed. Pirating during this period became common and publishers joined with authors in petitioning Parliament for protection. Finally, in 1709, the Statute of Anne was passed. The first copyright statute anywhere to be found, its purpose clause explained that books and other writings had been published without the consent of authors or proprietors to their detriment and that of their families.")

defendants in these types of copyright litigations.

Doe 21's motion to sever should also be denied. Plaintiff's claim raises same questions of law and fact. Also, defendants' infringing activities arise out of a series of logically related transactions. Furthermore, judicial economy is served by joinder at early stages of these litigations and defendants are not prejudiced by the joinder.

Therefore, Plaintiff respectfully requests that the Court deny Doe 21's motion to quash and motion sever.

*       *       *

Respectfully submitted on June 20, 2012,

FOR THE PLAINTIFF:

Marvin Cable, Esq.
BBO#:   680968
LAW OFFICES OF MARVIN CABLE
P.O. Box 1630
Northampton, MA 01061
P: (413) 268-6500
F: (413) 268-6500
E: law@marvincable.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

Marvin Cable, Esq.