# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICK COLLINS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. A. No. 1:12-cv-10532-GAO |
| ) | |
| DOES 1 – 79, ) | |
| ) | |
| Defendants. ) | |

## DOE 69'S CONSOLIDATED MOTION TO QUASH SUBPOENA PURSUANT TO FED. R. CIV. P. 45 AND/OR TO SEVER PURSUANT TO FED. R. CIV. P. 21 AND MEMORANDUM IN SUPPORT OF MOTION

### MOTION

Plaintiff Patrick Collins, Inc. ("Plaintiff") uses pretextual, bad faith litigation to coerce settlement payments. To that end, it sought information identifying its latest targets, including Doe 69, through an *ex parte* motion for early discovery (Document No. 4), the memorandum offering insufficient support therefor (Document No. 7), and its Rule 45 subpoena served upon Internet Service Provider ("ISP") Verizon. For the reasons detailed in the memorandum below, Doe 69 respectfully moves the Court to revoke its order granting Plaintiff's motion (Document No. 8) and quash the subpoena Plaintiff served upon Verizon, and/or sever Doe 69 from the case.

### MEMORANDUM IN SUPPORT OF MOTION

### I. INTRODUCTION

The emperor has no clothes. In 2010, Plaintiff expanded its pornographic film empire into the domain of sham litigation. It initiates copyright lawsuits solely for their extortive effect, making no genuine attempt to have its claims adjudicated on their supposed merits. In case after case, including this one, Plaintiff has sought *ex parte* discovery to obtain the identities of alleged infringers of its pornographic films. Threatening to pursue those scandalous claims in earnest,

Plaintiff extracts lucrative settlements from its targets regardless of liability. It has filed at least 168 such bad faith suits against at least 11,570 Doe defendants in 26 different federal districts.[1] This action is only one of Plaintiff's six active Massachusetts cases against 261 defendants total.[2] But Plaintiff's threats are pure pretext; it has never served process upon any of its targets.[3]

Pre-conference discovery is exceptional, and granted only upon a showing of good cause. Fed. R. Civ. P. 26(d)(1) & 26(b)(1). Good cause is lacking when the prejudice that the requested discovery would impose outweighs Plaintiff's need. That prejudice, the likelihood of misidentification, and Plaintiff's evident disinterest in genuinely pursuing its claim, make such discovery less than reasonable "in light of all the surrounding circumstances." *Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.,* 765 F. Supp. 2d 87, 88-89 (D. Mass. 2011).

## II. TECHNICAL BACKGROUND

An Internet Service Provider ("ISP") assigns a numerical identification for devices within the network, called an Internet Protocol ("IP") address, to each ISP subscriber (such as Doe 69) whose computer the ISP connects to the Internet. *U.S. v. Heckenkamp*, 482 F.3d 1142, 1144 n.1 (9th Cir. 2007). Typically, ISPs assign subscribers a dynamic IP address that changes over time.

---

[1] In addition, Plaintiff has filed at least 11 pure bills of discovery in state court in Florida, seeking contact information for at least another 7,668 Doe defendants.

[2] The related cases (*Patrick Collins, Inc. v. Does 1-45*, 12-cv-10537-RWZ; *Patrick Collins, Inc. v. Does 1-38*, 12-cv-10756-NMG; *Patrick Collins, Inc. v. Does 1-33*, 12-cv-10757-DPW; *Patrick Collins, Inc. v. Does 1-36*, 12-cv-10758-GAO; and *Patrick Collins, Inc. v. Does 1-30*, 12-cv-10759-DPW) are part of a wave of 34 similar actions filed since March 23, 2012 by Plaintiff's counsel, Marvin Cable, Esq. of the Copyright Enforcement Group ("CEG"), in this District alleging copyright infringement of pornographic films by 1,498 Doe defendants total.

[3] See *On the Cheap, LLC v. Does 1-5011*, No. 10-cv-4472-BZ, 2011 U.S. Dist. LEXIS 99831, *12 n.6 (N.D. Cal. Sept. 6, 2011) (discussing similar BitTorrent copyright litigation: "[P]laintiffs in other BitTorrent cases, rather than prosecuting their lawsuits after learning the identities of Does, are demanding thousands of dollars from each Doe in settlement. ... Article 1, section 8 of the Constitution authorizes Congress to enact copyright laws 'to promote the Progress of Science and useful Arts.' If all the concerns about these mass Doe lawsuits are true, it appears that the copyright laws are being used as part of a massive collection scheme and not to promote useful arts."); *Raw Films, Ltd. v. Does 1-32*, No. 11-cv-00532-JAG, 2011 U.S. Dist. LEXIS 114996, *3-8 (E.D. Va. Oct. 5, 2011) ("The plaintiffs seemingly have no interest in actually litigating the case, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does."); see also *id.*, 2011 U.S. Dist. LEXIS 149215, *6-7 n.5 (E.D. Va. Dec. 29, 2011) ("The risk of inappropriate settlement leverage is enhanced in a case like this involving salacious and graphic sexual content where a defendant may be urged to resolve a matter at an inflated value to avoid disclosure of the content the defendant was accessing.").

*United States v. Kearney*, 672 F.3d 81, 89 (1st Cir. 2012). An IP address serves to route traffic efficiently through the network.[4] An IP address does not identify the computer being used or its user.[5]  Plaintiff has identified for the Court only routers or wireless access points for certain internet accounts it associates with infringement, not any actual infringers. Innocent subscribers are often falsely identified as infringers, for a wide variety of reasons. For example:

- some participants in online peer-to-peer networks serve only as relays, passing on routing information to other participants without ever possessing any of the movie file;[6]
- a peer-to-peer participant requesting a download can substitute another IP address for its own to a BitTorrent tracker;[7]
- a user can misreport its IP address when uploading a torrent file;[8]
- a user in the network path between a BitTorrent tracker and a user monitoring IP address traffic can redirect the tracker's response to implicate an innocent's IP address;[9]
- malware on a user's computer can host and distribute copyrighted content without the users knowledge or consent;[10]
- subscribers with dynamic IP addressing share an IP address with other subscribers;[11]
- mistimed BitTorrent tracker reports may yield false positives;[12] and

---

[4] *Poweroasis, Inc. v. Wayport, Inc.*, Civ. A. No. 04-12023-RWZ, 2007 U.S. Dist. LEXIS 34356, *35-38 (D. Mass. May 10, 2007), *vacated on other grounds*, 273 Fed. Appx. 964 (Fed. Cir. 2008).

[5] "IP addresses specify the locations of the source and destination nodes in the topology of the routing system." Wikipedia, *IP Address*, http://en.wikipedia.org/wiki/IP_address (as of April 18, 2012); see also Document No. 1-2 (Declaration of Jon Nicolini) ¶ 29 ("an Internet Protocol address ... identifies the internet connection").

[6] "A [P2P] user may be the source or a receiver, or a helper that serves *only as a relay*." Sudipta Sengupta et al., *Peer-to-Peer Streaming Capacity*, 57 IEEE Transactions on Information Theory 5072, 5073 (2011) (emphasis added) (available at http://research.microsoft.com/pubs/158024/05961847.pdf).

[7] Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks—or Why My Printer Received a DMCA Takedown Notice*, Proceedings of 3rd USENIX Workshop on Hot Topics in Security, at 3 (2008) (available at http://dmca.cs.washington.edu/uwcse_dmca_tr.pdf); *see also* Wikipedia, *IP address spoofing*, http://en.wikipedia.org/wiki/IP_address_spoofing (as of April 18, 2012) (the term IP address "spoofing" refers to creating a forged IP address with the purpose of concealing the user's identity or impersonating another computing system).

[8] "The most straightforward way to falsely implicate an IP address in infringement is for the coordinating tracker to simply return that IP address as a peer regardless of participation." Piatek at 3.

[9] "Because BitTorrent tracker responses are not encrypted, man-in-the-middle attacks are straightforward. Anyone on the path between tracker and a monitoring agent can alter the tracker's response, implicating arbitrary IPs." *Id.* at 4.

[10] *Id.*

[11] Wikipedia, *Web hosting service*, http://en.wikipedia.org/wiki/Web_hosting_service (as of April 18, 2012).

[12] When an infringing user's dynamic IP address is reassigned to an innocent user of the same wireless network, the infringer's behavior may be falsely attributed to the innocent user by a monitoring agent (in this case, CEG) who queries the BitTorrent tracker. Piatek, at 3-4 ("A tracker need not be malicious to falsely implicate users.").

- anyone with wireless capability can use a subscriber's wifi network to access the Internet, creating the false impression that the subscriber is infringing.[13]

Courts have recognized these issues in similar BitTorrent cases.[14]

> An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones. ... Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function -- here the purported illegal downloading of a single pornographic film - than to say an individual who pays the telephone bill made a specific telephone call.

> Indeed, due to the increasingly popularity of wireless routers, it much less likely. While a decade ago, home wireless networks were nearly non-existent, 61% of US homes now have wireless access.... [A] single IP address usually supports multiple computer devices — which unlike traditional telephones can be operated simultaneously by different individuals… Different family members, or even visitors, could have performed the alleged downloads. Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film.

*In re BitTorrent Adult Film Copyright Infringement Cases*, Civ. A. No. 11-3995 (DRH) (GRB) 2012 U.S. Dist. LEXIS 61447, *8-9 (E.D.N.Y. May 1, 2012) (citations omitted). As a result, "the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time." *Id.* at *3.

### III. PLAINTIFF'S RECORD OF BAD FAITH LITIGATION

Plaintiff's business model is to use mass copyright litigation to extract settlements from those it accuses, regardless of guilt. Plaintiff has filed suit against at least 11,570 individuals

---

[13] See *VPR Internationale v. Does 1-1017*, No. 11-cv-02068-HAB-DGB, 2011 U.S. Dist. LEXIS 64656, *3 (N.D. Ill. 2011) (discussing raid by federal agents on home of IP subscriber falsely linked to downloading child pornography based on information provided by ISP; "Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York)."

[14] See, e.g., *VPR Internationale*, 2011 U.S. Dist. LEXIS 64656, at *3 ("IP subscribers are not necessarily copyright infringers."); *Third Degree Films v. Does 1-3577*, No. C-11-02768 LB, 2011 U.S. Dist. LEXIS 128030, *10 (N.D. Cal. Dec. 15, 2011) ("the ISP subscribers may not be the individuals who infringed upon Plaintiff's copyright") (citations omitted).

without serving a complaint on *any* of them. Its methods are uniform: in each case, Plaintiff seeks expedited discovery allowing it to subpoena information from ISPs identifying subscribers. Using that information, Plaintiff sends each subscriber identified a demand letter indicating that a lawsuit for copyright infringement of a pornographic work has been filed against the subscriber psuedonymously, and that Plaintiff intends to name him as a defendant unless paid a four-figure settlement. Plaintiff accuses Doe 69, like its prior targets, of uploading and downloading pornography.[15] As a result, "the subject matter of the suit deals with personal and sensitive matters." *Third Degree Films v. Does 1-3577*, No. C 11-02768 LB, 2011 U.S. Dist. LEXIS 128030, *10 (N.D. Cal. Nov. 4, 2011).[16] Plaintiff's motion for discovery says nothing about using the discovery to demand defendants pay to avoid disclosure of sensitive matters.[17] Instead, Plaintiff claims the information "will permit Plaintiff" to name defendants in an amended complaint. (Document No. 1 ¶ 7.) But Plaintiff appears in this Court as a client of Copyright Enforcement Group ("CEG").[18] CEG disclaims any interest in full-scale litigation.[19]

## IV. LEGAL STANDARD

The majority of Courts, including within the First Circuit, have applied a "good cause" or "reasonableness" standard when considering request [*sic*] for expedited discovery. ... In a "good cause" analysis, a court must examine the discovery request on the entirety of the record and the "reasonableness" of the request in

---

[15] Plaintiff alleges Doe 69 traded files of its movie "Real Female Orgasms 13." (Document 1 ¶¶ 5 & 8.)

[16] *See also id.* at *12-13 (recognizing "the potential embarrassment associated with being publicly accused of having illegally downloaded adult entertainment").

[17] "[T]he practical reality of these types of cases – which, as noted, have proliferated across the country – is that almost all end in settlement and few, if any, are resolved on their merits. ... Against this backdrop, the risk of extortionate settlements is too great to ignore ..." *Third Degree Films, Inc. v. Does 1-108*, Civ. A. No. DKC 11-3007, 2012 U.S. Dist. LEXIS 59233, *11-12 (D. Md. Apr. 27, 2012) (citations omitted).

[18] While in the normal course of litigation, a plaintiff is a client of the filing attorney, "Plaintiff in this case is a client of CEG." (Document No. 1-2 at ¶ 3.) CEG, in turn, provides its services — including providing legal counsel — at no cost to the Plaintiff. (www.ceg-intl.com/monetization.html) ("Our fully customizable Monetization service solution is available at no cost to content owners.").

[19] To the contrary, CEG touts its "litigation" services to plaintiffs as "the best alternative to avoid lawsuits ... Simply put, subscribing to services from CEG … is the best way to deal with copyright infringements online *without the need for lawsuits*." CEG Blog, http://www.copyrightenforcementgroup.blogspot.com/2011/09/copyright-enforcement-group-how-to-deal.html (Sept. 5, 2011) (emphasis added).

light of all the surrounding circumstances. ... Good cause for expedited discovery
can be found when the need for the early discovery outweighs the prejudice to the
responding party.

*Macas v. Laureano (In re Macas)*, No. 07-05185 BKT, 2012 Bankr. LEXIS 2137, *5 (D.P.R.

Bankr. May 11, 2012) (*citing inter alia Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.,* 765

F. Supp. 2d 87, 88 (D. Mass. 2011)); accord *McMann v. Doe,* 460 F. Supp. 2d 259, 265 (D. Mass.

2006); *Wilcox Indus. Corp. v. Hansen*, 279 F.R.D. 64, 67-68 (D.N.H. Jan. 17, 2012). "Good

cause may be found where the need for expedited discovery, in consideration of the

administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v.*

*Tokyo Electron Am.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "The party seeking expedited

discovery has ... the burden of showing good cause." *Macas*, at *5; *Momenta*, 765 F. Supp. 2d at

88 (party seeking pre-conference discovery "must show good cause"); *McMann*, 460 F. Supp. 2d

at 270 (denying discovery where "Plaintiff has not met the evidentiary burden required to

remove John Doe's constitutional interest in his anonymity"). The *McMann* Court identified five

factors typically seen as bearing on the good cause analysis:

> The factors that courts typically weigh in this good cause inquiry include the
> purpose for the discovery, the ability of the discovery to preclude demonstrated
> irreparable harm, the plaintiff's likelihood of success on the merits, the burden of
> discovery on the defendant, and the degree of prematurity.

*McMann*, 460 F. Supp. 2d at 265; see also *Momenta*, 765 F. Supp. 2d at 88 (quoting *McMann*).

"The party requesting that the subpoena be quashed must show good cause for protection by

specifically demonstrating that disclosure will cause a clearly defined and serious harm."

*London-Sire Records, Inc. v. Doe 1,* 542 F. Supp. 2d 153, 162 (D. Mass. 2008).

## V. ARGUMENT

### A. Doe 69 Has Standing to Present this Motion.

Doe 69 has standing as a party to this action, though not yet designated as such. An

individual becomes a defendant when sufficiently identified in the complaint, whether by an

actual or fictitious name.[20] Even a fictitiously named defendant, who identifies himself as the unnamed party, is fully entitled to defend a claim against him. *Wilson v. Frakes*, 178 Cal. App. 2d 580, 581 (Cal. Ct. App. 1960) (answer filed by defendant "'sued herein as John Doe,' according to the answer's introductory paragraph"); accord *Millenium TGA, Inc. v. Doe*, No. 10-cv-05603, 2011 U.S. Dist. LEXIS 94746, *3-4 (N.D. Ill. Aug. 24, 2011) (noting "the inconsistency of the plaintiff's position that the Doe defendant lacks standing to pursue a motion ... because it has not been named or served, [while the complaint refers] to the 'Defendant' who the plaintiff expressly identifies in the … complaint as the person with [a particular] Internet Protocol address ...").

Doe 69 has standing to move to quash a third-party subpoena, as a defendant with an interest in not being subjected to bad faith demands. A party with "sufficient interest to warrant its intervention" has standing to file a motion to quash, "notwithstanding that it is not the party subpoenaed." *Taylor v. Litton Med. Products, Inc.*, 19 Fed. R. Serv. 2d 1190, 1975 WL 166114, *3 (D. Mass. Jan. 23, 1975). "[P]arties need only have some personal right or privilege in the information sought to have standing to challenge a subpoena to a third party." *Third Degree Films, Inc. v. Does 1-108*, No. 11-cv-03007, 2012 U.S. Dist. LEXIS 25400, *7-8 (D. Md. Feb. 28, 2012) (internal quotation omitted) (Doe defendants had standing to contest subpoenas to non-parties).[21] Moreover, Plaintiff essentially conceded the standing issue when it prepared a notice (distributed to Doe 69 and other defendants at the Court's order) inviting Doe defendants, including Doe 69, to "file a motion to quash or vacate the subpoena." (Doc. No. 7-1 p. 2.)

_____

[20] "'The status of parties, whether formal or otherwise, does not depend upon the names by which they are designated, but upon their relation to the controversy involved, its effect upon their interests, and whether judgment is sought against them. When, as here, the cause of action is against them, and substantial relief sought against them, they are real parties in interest.'" *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 30 n.3 (3rd Cir. 1985) (*quoting Grosso v. Butte Elec. Ry. Co.*, 217 F. 422, 423 (D. Mont. 1914)).

[21] See also *Arista Records LLC v. Doe*, No. 07-cv-01649-CKK, 2008 U.S. Dist. LEXIS 34407 (D.D.C. April 28, 2008)); *Del Campo v. Kennedy*, 236 F.R.D. 454, 459 (N.D. Cal. May 3, 2006) (party had standing to seek protective order regarding third-party subpoena), *rev'd on other grounds*, *Del Campo v. Am. Corrective Counseling Servs.*, 2007 U.S. Dist. LEXIS 12387 (N.D. Cal. Feb. 8, 2007); *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests.").

## B.  Doe 69 Is Entitled to Proceed Pseudonymously.

It is proper for Doe 69 to file this motion anonymously. Judicial proceedings are presumed open, to serve a public interest in disclosure. *Liberty Media Holdings, LLC v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7B5BC9C05*, 821 F. Supp. 2d 444, 452-53 (D. Mass. 2011) (citing *Roe v. Gen. Hosp. Corp.*, Civ. A. No. 11-991-BLS1, 2011 Mass. Super. LEXIS 82, 28 Mass. L. Rep. 364 (Mass. Super. Ct. May 19, 2011)).[22] "[F]ederal courts generally allow parties to proceed anonymously only under certain special circumstances when anonymity is necessary to protect a person from harassment, injury, ridicule, or personal embarrassment." *W. Coast Prods., Inc. v. John Does 1-5829*, 275 F.R.D. 9, 12 (D.D.C. 2011). But "the common law right of access is qualified by recognition of the privacy rights of the persons whose intimate relations may thereby be disclosed." *Gardner v. Newsday, Inc.*, 895 F. 2d 74, 79-80 (2d Cir. 1990). "Where the issues involved are matters of a sensitive and highly personal nature ... the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." *Plaintiff B v. Francis*, 631 F.3d 1310, 1316-17 (11th Cir. 2011) (internal quotation and citations omitted) (allowing plaintiff to proceed anonymously; vacating order which concluded that "casual and voluntary sexual activity is not the type of fundamentally personal issue that warrants the imposition of anonymity"). "Unquestionably, one's sexual practices are among the most intimate parts of one's life." *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 74 (D.R.I. 1992) (authorizing party to proceed by pseudonym). "[R]equests for pseudonymity have been granted when anonymity is necessary to preserve privacy in a matter of a sensitive and highly personal nature." *Third Degree Films v. Does 1-3577*, 2011 U.S. Dist. LEXIS 128030, at *11 (citing *Does I Thru XXIII v. Advanced Textile*

---

[22] *Roe*, which concerns a *plaintiff* seeking to proceed under a pseudonym, is distinguishable. "In the civil context, the plaintiff instigates the action, and, except in the most exceptional cases, must be prepared to proceed on the public record." *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 168 F.R.D. 418, 422 (D. Mass. 1995). "It would be fundamentally unfair to allow plaintiff to make such serious accusations against [defendants] without standing, as they must, in a public forum." *Id.* By contrast, it would be unfair to require an unnamed defendant, facing such serious accusations, to expose his or her identity in order to file a motion seeking to keep it concealed.

*Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000)). "An allegation that an individual illegally downloaded adult entertainment likely goes to [such] matters." *Id*.

Any disclosure of Doe 69's identity would cause more than mere embarrassment. In these pornography download cases, the combination of the "high risk of false positive identifications ... 'horror stories' of harassing and abusive litigation techniques ... and the nature of the copyrighted work in this case creates the possibility of undue embarrassment and harm were a Doe defendant's name to be publicly, but erroneously, linked to the illegal downloading of the plaintiff's copyrighted work." *Digital Sin., Inc. v. Does 1-27*, 12 Civ. 3873 (JMF), 2012 U.S. Dist. LEXIS 78832, *12-13 (S.D.N.Y. June 6, 2012).[23] Moreover, allowing Doe 69 anonymity avoids subverting the purpose of this motion, and does not cause Plaintiff harm. "Defendants' motions to quash subpoenas for the very purpose of protecting their identifying information ... should be allowed to proceed anonymously because assessing these preliminary matters without knowing defendants' identities causes plaintiffs no harm." *CineTel Films, Inc. v. Does 1-1,052*, Civil No. JFM 8:11-cv-02438, 2012 U.S. Dist. LEXIS 47701, *5 n.2 (D. Md. Apr. 4, 2012).[24]

## C. Plaintiff Has Not Shown Good Cause for Allowing Discovery of Information Identifying Doe 69.

Plaintiff has not satisfied its burden of showing good cause for expedited discovery.

In evaluating whether a plaintiff establishes good cause to learn the identity of Doe defendants through early discovery, courts examine whether the plaintiff (1) identifies the Doe defendant with sufficient specificity that the court can

---

[23] See also Robert G. Larson and Paul A. Godfread, Bringing John Doe to Court: Procedural Issues in Unmasking Anonymous Internet Defendants, 38 Wm. Mitchell L. Rev. 328, 345-46 (2011) ("Another abuse visited upon anonymous defendants is the threat of identification and association with potentially embarrassing or shameful practices. ... the plaintiff uses the potentially embarrassing nature of the material downloaded to coerce settlement from the putative defendants who are at risk of being unmasked. In situations like these, the plaintiff takes advantage of the considerable leverage afforded by the shame and humiliation that would be inflicted upon the defendant were he or she to be associated with the allegedly infringed content. The defendant has a strong incentive to settle in order to retain anonymity—often accepting an otherwise disadvantageous offer— even when he or she may have otherwise emerged victorious from litigation.").

[24] See also *id.* ("This is by no means a substantive finding that defendants have a cognizable right of privacy in their identifying subscriber information. Rather, it is a procedural decision allowing these early motions to proceed anonymously when there is little if any harm to the plaintiffs.").

determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates that the action can withstand a motion to dismiss, and (4) proves that the discovery is likely to lead to identifying information that will permit service of process.

*Third Degree Films v. Does 1-3577*, 2011 U.S. Dist. LEXIS 128030, at *4 (citing *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)).

The third element is not satisfied. Plaintiff has not shown that its uncertain identification of defendants would survive a motion to dismiss. An IP address alone is not a reasonable basis to believe that a subscriber has infringed, as discussed in the Technical Background Section above. Plaintiff's counsel, Copyright Entertainment Group, has conceded as much. Pursuing similar discovery in a similar case, "Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material." *Digital Sin, Inc. v. Does 1-176*, 12-cv-00126, 2012 U.S. Dist. LEXIS 10803, *8 (S.D.N.Y. Jan. 30, 2012). As such, Plaintiff's proffered evidence lacks sufficient indicia of credibility to justify its subpoena request by demonstrating that it could withstand a motion to dismiss by Doe 69.

The fourth element is also not satisfied: Plaintiff cannot show that discovery of Doe 69's identity will lead to service of process. As discussed in the Plaintiff's Record of Bad Faith Litigation section above, Plaintiff seeks discovery in order to avoid, not commence, litigation.

**1.     The Discovery Sought Will Not Make Plaintiff Likely to Serve Process.**

The discovery requested by the subpoena is not intended to lead to admissible evidence. Plaintiff has not filed a certificate of service for any of its 11,570 defendants. Plaintiff claims to have "started the process of naming and serving defendants" in only *one* case. (Document 21 pp. 7-9, 16 n. 8.) The excuse that its cases are too recent does not bear scrutiny. (*Id.* p. 7.) Plaintiff sued and sought to identify 8,646 defendants more than a year ago, at least 5,259 of them in 2010. Plaintiff offers no reason to believe it will begin litigating in good faith now, with Doe 69.

> [A] subpoena duces tecum is limited to use in conjunction with a deposition and trial. One reason for the restrictive interpretation is the potential for abuse of the subpoena. ... A procedure which allowed parties to send out subpoenas *duces tecum* at will could result in a form of one-sided discovery.

*Bowers v. Buchanan*, 110 F.R.D. 405, 406 (S.D. W. Va. 1985) (citing cases).[25] To justify a Rule 45 subpoena Plaintiff must have a "genuine intent to take" discovery for use in conjunction with deposition and trial. *Greenberg v. United States*, Civ. A. No. 89-2390-MC, 1990 U.S. Dist. LEXIS 12091, *5 (D. Mass. Sept. 7, 1990) (citing, inter alia, *Bowers*). Plaintiff must show "a central need for the subpoenaed information to advance the claim." *London-Sire Records*, 542 F. Supp. 2d at 164. With no genuine defendants against whom a claim will be advanced, there is no basis for discovery. See *Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 454 (D.R.I. 2002) ("This Court cannot sanction the further progression of an adversarial proceeding where there is no opposing party."); *Tillson v. Odyssey Cruises*, No. 8-cv-10997-DPW, 2011 U.S. Dist. LEXIS 7911, *1 n.1 (D. Mass. Jan. 27, 2011) (dismissing claims against unidentified Doe defendants).

A nonparty cannot be required to produce documents under Rule 45(b) when there is no legal proceeding contemplated. *Taylor v. Litton Med. Prods., Inc.*, 19 Fed. R. Serv. 2d 1190, 1191-92 (D. Mass. 1975). To have anonymous defendants identified, Plaintiff "must demonstrate that the specific information sought by subpoena is necessary to identify the defendant and that the defendant's identity is relevant to the plaintiff's case." *Salehoo Grp., Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210, 1216 (W.D. Wash. 2010). Where Plaintiff anticipates no proceedings beyond the *ex parte* motion, the information is not necessary or relevant to the case, because there is no case.

## 2.      Plaintiff's Request for Expedited Discovery Does Not Satisfy the *McMann* Factors.

When determining whether to permit expedited discovery, courts consider factors such as "the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable

---

[25] See also *Theofel v. Farley-Jones*, 359 F. 3d 1066, 1074 (9th Cir. 2004) ("The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused.").

harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." *McMann*, 460 F. Supp. 2d at 265. Those five factors do not support the discovery Plaintiff has requested.

### a.     The Purpose for the Discovery Is Improper.

Plaintiff's extortive purpose, betrayed by its track record in similar cases, cannot justify any further recourse to the Court's aid.[26] Moreover, Plaintiff's filings betray its contention that the discovery "will" identify an actual infringer. It seeks to determine "whether or not [Doe 69] is a proper defendant in this action." (Document No. 4 p. 3; Document 7 p. 1.) The proper time for Plaintiff to consider whether it has a legitimate claim against Doe 69 was before filing suit. In practice, the discovery would help Plaintiff force another settlement, without a need to prosecute its illusory claims, but would be unnecessary for securing injunctive relief.[27]

### b.     Plaintiff's Claim Is Fully Compensable So It Has Not Shown Irreparable Injury.

According to Plaintiff, Doe 69 is currently subjecting it to irreparable harm by engaging in the unlawful distribution of Plaintiff's copyrighted film. Plaintiff cannot demonstrate irreparable harm because any actual infringement by Doe 69 is compensable by money damages and Plaintiff has not filed a motion for preliminary injunctive relief. See *Momenta*, 765 F. Supp. 2d at 88-89 ("The majority of courts have held ... that the fact that there was no pending preliminary injunction motion weighed against allowing [a] plaintiff's motion for expedited

---

[26] Accord *Hard Drive Productions, Inc. v. Does 1-90*, No. C11-03825 HRL, 2012 U.S. Dist. LEXIS 45509, *11 n.4 (N.D. Cal. Mar. 30, 2012) (denying similar early discovery to pornography copyright plaintiff who had "obtained early discovery in 57 cases and issued subpoenas to obtain subscriber information for more than 18,000 IP addresses [.] No defendant has been served in any of these cases."); *Righthaven LLC v. Hill*, Civ. A. No. 11-cv-00211-JLK, slip op. at 1-2 (D. Col. Apr. 4, 2011) ("Although Plaintiff's business model relies in large part upon reaching settlement agreements with a minimal investment of time and effort, the purpose of the courts is to provide a forum for the orderly, just, and timely resolution of controversies and disputes. Plaintiff's wishes to the contrary, the courts are not merely tools for encouraging and exacting settlements from Defendants cowed by the potential costs of litigation and liability.").

[27] See generally *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006) (denying motion for expedited discovery where "plaintiffs are not seeking expedited discovery to gain evidence to get the court to preserve the status quo. They want to gather all the evidence they would need to radically transform the status quo, on an expedited basis.")

discovery."). Likewise, Plaintiff's discovery request will not protect its ability to litigate its claims. Plaintiff acknowledges that it does not know the proper party to bring its claims against or that the requested discovery will provide that information.

> [T]he Internet Subscriber is not always the proper defendant in actions such as this. Plaintiff therefore seeks to depose and/or issue interrogatories to the Internet Subscriber identified by each ISP in order to determine whether or not he or she are [sic] the proper defendant in this action.

(Document No. 7 p. 6.) Accordingly, the Court has no basis for ruling that absent expedited discovery, Plaintiff faces irreparable harm or can bring a claim against Doe 69.

**c.     Plaintiff Would Not Be Likely to Succeed on the Merits if Discovery Were Allowed.**

By acknowledging the subscriber is not always the proper defendant and requesting additional pre-suit discovery, Plaintiff concedes that it may have no claim at all against Doe 69, let alone one with merit. Plaintiff cannot in good faith claim the requested discovery will identify an actual infringer. Without a showing that early discovery is "very likely" to positively identify infringers, it must be denied. *Hard Drive Prods., Inc. v. Does 1-90*, No. C11-03825 HRL, 2012 U.S. Dist. LEXIS 45509, *6-8 (citing *Gillespie v. Civiletti*, 629 F.2d 637, 643 (9th Cir. 1980)). Claims must be dismissed against John Doe defendants when "the plaintiff has not identified the unnamed parties not is there any prospect it will do so in this litigation." *Kemper Ins. Cos., Inc. v. Fed. Express Corp.*, 115 F. Supp. 2d 116, 125 (D. Mass. 2000) (citation omitted). The odds against Plaintiff naming Doe 69, or any other Defendant in this case, are approximately 11,570 to 0.[28] Without any realistic prospects, the requested discovery would serve not the administration of justice but extrajudicial self-help, and should be denied.

Plaintiff tried to support its *ex parte* motion by claiming that "the information obtained by Plaintiff's investigator is specific enough to identify the particular individuals responsible for

---

[28] Plaintiff's statistical comparison to all copyright litigants is therefore inapt. (See Document 21 pp. 8-9.) For good faith litigants, full-blown copyright trials are infrequent, but for Plaintiff, they are speculative fiction.

infringing Plaintiff's copyright." (Document No. 7 p. 5.) But Plaintiff has no such certitude about

CEG's investigation, as evidenced by its simultaneous request for further discovery:

- "Additionally, Plaintiff requests permission to propound limited discovery in the form of interrogatories and depositions on any individual identified by these ISPs in order to determine whether the actual Internet Subscriber is a proper defendant in this action." (*Id.* p. 1.)

- "Additionally, Plaintiff requests permission to conduct early discovery on each user identified by these ISPs in order to determine [] whether the actual subscriber performed the acts so complained of, or whether it was some other individual with access to the subscriber's Internet connection." *Id.* at 3.

- "Additionally, *the Internet Subscriber is not always the proper defendant* in actions such as this. Plaintiff therefore seeks to depose and/or issue interrogatories to the Internet Subscriber identified by each ISP in order to determine *whether or not he or she are [sic] the proper defendant* in this action." *Id.* at 6 (emphasis added).

Plaintiff's stated purpose for expedited discovery is to uncover the identity of an alleged

infringer, but it concedes that it has not determined *whether a cause of action exists against Doe*

*69 at all.* Discovery that Plaintiff concedes will not yield the desired result cannot be allowed.

[T]he only information known to petitioner is the identified IP addresses. [Petitioner] seeks the identities of the subscribers associated with the identified IP addresses. However, that information alone would not reveal who actually downloaded petitioner's work, since the subscriber's Internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's Internet connection without authorization.

*In re Ingenuity 13 LLC*, No. 11-mc-0084-JAM-DAD, 2012 U.S. Dist. LEXIS 38647, *17-18

(E.D. Cal. Mar. 21, 2012).

The papers submitted by plaintiff and the statements by plaintiffs counsel at the hearing on plaintiffs application for early discovery make it **clear** that granting the sought-after discovery **would not uncover the identities** of the infringers. Instead, it would reveal a list of names and addresses of ISP subscribers. Some these subscribers (wherever they may be located) are probably infringers, but others surely are not (because, in addition to the named subscriber, roommates,

> guests, family members, friends, dormitory mates or acquaintances, unauthorized
> users of unprotected wireless signals and others may "share" an ISP subscription).

*Hard Drive Prods.*, 2012 U.S. Dist. LEXIS 78705, at *2 (emphasis in original). As in *Hard Drive*, Plaintiff has admitted that the requested expedited discovery will not uncover the identity of an actual infringer.[29] A plaintiff must determine that it has identified proper defendants *before* fishing for such discovery, and must "adduce evidence showing that [its] complaint and subpoena are more than a mere fishing expedition." *London-Sire Records*, 542 F. Supp. 2d at 175. Where the Plaintiff concedes that its discovery request

> has the potential to draw numerous innocent internet users into the litigation, [it places] a burden upon them that outweighs Plaintiff's need for discovery. … Granting Plaintiff the form of relief that it seeks in this motion thus would impermissibly allow Plaintiff to subpoena ISPs to obtain the detailed personal information of unknown numbers of innocent individuals that Plaintiff could never make party to this suit and potentially subject them to onerous, invasive discovery and/or unfair settlement tactics.

*Pac. Century Int'l, Ltd. v. Does 1-101*, No. C-11-02533 (DMR), 2011 U.S. Dist. LEXIS 124518, *5-9 (N.D. Cal. Oct. 27, 2011) (denying motion for expedited discovery).

"As an 'extraordinary remedy,' expedited discovery may not be granted where the requested discovery clearly would not uncover the identities sought." *Boy Racer, Inc. v. Does 1-52*, Case No. 11-CV-2329-PSG, 2011 U.S. Dist. LEXIS 103550, *8-9 (N.D. Cal. Sept. 13, 2011) (quoting *Gillespie*, 629 F.2d at 642) (withdrawing order granting early discovery). Plaintiff's arguments for discovery reveal that it would not yield sufficient probative information to name the actual infringers in this case. Indeed, the fact that none of Plaintiff's 11,570 copyright defendants have ever been served belies any claim by Plaintiff that the discovery *will* lead it to identify the actual infringer or make service upon Doe 69. Its pleadings, taken in

---

[29] See *id.* at *3 ("Plaintiff admitted this when it told the court it would contact every name on the subscriber list and give each one a chance to 'prove' his or her innocence and/or agree to a settlement before it decided whether to name each subscriber as a defendant in this lawsuit. Plaintiff also said that additional early discovery might then be necessary to locate infringers other than the ISP subscribers.").

tandem, fail to state a claim against Doe 69, and would not survive a motion to dismiss.[30]
Because Plaintiff is unlikely to succeed on the merits, this factor weighs against early discovery.

**d.      The Proposed Discovery Would Subject Doe 69 to Undue Burden.**

Pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iv), this Court must quash a subpoena when it
appears that the subpoena would subject "a person" to undue burden. Though the subpoena is
directed to and burdens a third party ISP, it also imposes undue burdens on Doe 69. Because
plaintiff seeks information about "ISP subscribers who were assigned certain IP addresses,
instead of the actual Internet users who allegedly engaged in infringing activity, 'Plaintiff's
sought-after discovery has the potential to draw numerous innocent internet users into the
litigation, placing a burden upon them that weighs against allowing the discovery as designed.'"
*SBO Pictures, Inc. v. Does 1-3036*, Case No. 11-4220 SC, 2011 U.S. Dist. LEXIS 137361, *9 (N.
D. Cal. Nov. 30, 2011) (quoting *Hard Drive Prods., Inc. v. Does 1-130*, No. C-11-3826 DMR,
2011 U.S. Dist. LEXIS 132449, *6 (N.D. Cal. Nov. 16, 2011)).

Plaintiff's counsel concedes that 30% of those it identifies as infringers are false
positives. "There is a real risk that defendants might be falsely identified and forced to defend
themselves against unwarranted allegations." *Patrick Collins, Inc. v. Does 1-4*, 12 Civ. 2962
(HB), 2012 U.S. Dist. LEXIS 82253, *3 (S.D.N.Y. June 12, 2012) (collecting cases). The likely
innocence of a significant share of the defendants warrants protection from such an invasion of
their privacy. *See London-Sire Records*, 542 F. Supp. 2d at 158 ("the plaintiffs' subpoena may
invade the anonymity of many non-infringing internet users — anonymity that deserves
protection by the Court") (reviewing John Doe defendant's motion to quash third-party subpoena
to ISP). Doe 69's privacy rights are not minimized by any wrongful acts by others. See *United
States v. D'Andrea*, 648 F.3d 1, 8 (1st Cir. 2011) ("it is difficult to understand how petitioners'

---

[30] On a Rule 12(b)(6) motion to dismiss, a plaintiff's "summary legal conclusions that are contradicted or 'belied by the facts alleged' may be disregarded." *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 26 236, 240-41 (D. Mass. 1999) (quoting *in re Lane*, 937 F. 2d 694, 698 n. 7 (1st Cir. 1991)).

subjective expectation of privacy could have been altered in any way by subsequent events of which they were obviously unaware") (quoting *Walter v. United States*, 447 U.S. 649, 658 n. 12 (1980)). Plaintiff's contention that *someone* infringed its copyright using a given IP address does not sufficiently show that ISP subscriber Doe 69 is liable, and does not warrant burdening innocent parties. That burden is magnified in light of Plaintiff's evident intent, seen in its record of illusory litigation, to gain Doe 69's personal information solely to coerce another payment. As the Court in another pornography copyright case asked, "Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether [Plaintiff] has competent evidence to prove its case." *VPR Internationale v. Does 1-1017*, No. 11-cv-02068-HAB-DGB, 2011 U.S. Dist. LEXIS 64656, *5-6 (C.D. Ill. Apr. 29, 2011). As noted, "[a]n allegation that an individual illegally downloaded adult entertainment likely goes to matters of a sensitive and highly personal nature, including one's sexuality." *Third Degree Films v. Does 1-3577*, 2011 U.S. Dist. LEXIS 128030, at *11. *See also Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 73 (D.R.I. 1992) ("Matters of sexual identity and sexual preference are exceedingly personal.") The privacy interests of innocent third parties, as well as the salacious nature of the accusation, weighs against Plaintiff's requested discovery absent a showing that Doe 69 is the actual infringer sought. See *id.*; see also *United States v. Sampson*, 297 F. Supp. 2d 342, 345 (D. Mass. 2003).

Plaintiff argues that its request is not unduly burdensome because it is narrowly focused. But it has not yet filed a motion for preliminary injunctive relief, so the proposed discovery's propriety cannot be assessed. *Cf. Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc., No.* 98-cv-02782, 1998 U.S. Dist. LEXIS 10511 (E.D. Pa. July 15, 1998) (evaluating relevance of discovery in terms of "the issues to be addressed at the preliminary injunction hearing").

Plaintiff argues that Internet subscribers like Doe 69 "'do not have a reasonable expectation of privacy in their subscriber information ... as they have already conveyed such information to theirs [*sic*] ISPs.'" (Document No. 7 pp. 7-8 (quoting *Third Degree Films, Inc. v. Does 1-2010*, 276 F.R.D. 241, 247 (N.D. Ill. 2011))). Courts have found a reduced expectation of privacy in child pornography search-and-seizure cases because of the public's interest in public safety.[31]   But that interest is not at issue here. The Supreme Court has rejected the "cramped notion of personal privacy" that people lose their interest in avoiding disclosure of personal matters that have been previously disclosed. *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762-63 (1989) (holding common law right to privacy protects rap sheet contained in public record). "[T]he fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information." *Id.* at 773 (quotation omitted). A decision holding that, in the context of a Fourth Amendment search, "internet users have no reasonable expectation of privacy in their subscriber information," *United States v. D'Andrea*, 497 F. Supp. 2d 117, 120 (D. Mass. 2007), was vacated on other grounds by the First Circuit. 648 F. 3d 1 (1st Cir. 2011). Doe 69 has a privacy interest in his ISP subscriber information.[32] That privacy interest is implicitly recognized when courts hold that copyright owners may not use the DMCA takedown notice/subpoena provisions to discover subscriber identities. *See Recording Indus. Ass'n of Am. v. Verizon Internet Servs., Inc.*, 351 F.3d 1299 (D.C. Cir 2003); *In re Charter Commc'ns, Inc.*, 393 F.3d 771 (8th Cir. 2005). Privacy includes a right to control disclosure, even of public information. See *Cook v. WHDH-TV, Inc.*,

---

[31] See generally *Citizen Media Law Project Blog*, John Sharkey, The Curious Case of the D.C. District's Anonymity Orders (Feb. 3, 2012) (available at http://www.citmedialaw.org/blog/2012/curious-case-dc-districts-anonymity-orders) ("Mindlessly importing a standard for child-porn search-and-seizure cases flattens the problem entirely, removing from view the very real concern with frivolous (or even extortionate) litigation.").

[32] Doe 69 made his expectation of privacy manifest by filing the instant motion pseudonymously. Courts have found a party's efforts to maintain privacy relevant to whether a privacy interest should be recognized. See *Patrick Collins, Inc. v. Does 1-7*, Civ. No. JFM 8:12-cv-00095, 2012 U.S. Dist. LEXIS 48420, *3-4 n.2 (citing, inter alia, *Third Degree Films*, 276 F.R.D. at 247 n.7).

Super. Ct. Civ. A. No. 94-1269, 1998 Mass. Super. LEXIS 739 (Mass. Super. Ct. Feb. 27, 1998)
(plaintiff stated a claim for invasion of privacy, though the invasion occurred while plaintiff was
in line at a Burger King drive-through). Doe 69 reasonably expects that his agreement to use the
Internet should not subject him to a private party shakedown on the basis of unreliable data.

**e.      The Request for Discovery Is Premature.**

The prematurity factor involves "an evaluation of 'how far in advance of the typical
discovery process the request was made.'" *Wilcox Indus. Corp.*, 279 F.R.D. at 71 (quoting
*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6
(D.D.C. 2006)). Plaintiff's motion for expedited discovery was filed within two days of the
complaint, which could not have been much further in advance of the typical discovery process.
Accordingly, the prematurity factor cannot be said to favor Plaintiff. *See id.* (denying motion
filed simultaneously with complaint) (citations omitted).

Because the *McMann* factors do not weigh in favor of Plaintiff, the subpoena for
expedited discovery should be quashed.

**D.      Doe 69 Should Be Severed from this Action.**

Joinder is improper and severance is warranted for reasons well explained in Doe 21's
motion (Document 17 pp. 14-19), which are incorporated by reference as if fully stated herein.

**VI. CONCLUSION**

Plaintiff masquerades as a good faith litigant, pursuing its claims in court just long
enough to attain an authoritative patina that serves its true goal: settlement windfalls unmediated
by judicial scrutiny. Courts have grown increasingly reluctant to play any role in Plaintiff's ruse.
Where the discovery requested does not satisfy the *McMann* factors, this court should likewise
refuse to play along. The discovery sought would draw numerous innocent Internet users into the
litigation, and the burden it imposes on ISP subscribers such as Doe 69 outweighs Plaintiff's
putative need for discovery. Further, Plaintiff acknowledges this first round of discovery will

only lead to additional rounds of discovery if the owner of the IP addresses was not the infringer, which cuts against finding good cause for allowing this expedited first round of discovery, which can and will enable abusive settlement practices. Accordingly, because Plaintiff has not shown that the requested discovery is at all likely to uncover the identity of the actual infringer, nor that it has any genuine intention of litigating the matter, such pre-hearing discovery is not warranted. But severance is warranted, because Plaintiff has not pleaded a sufficient basis for joinder.

Wherefore, Doe 69 respectfully requests that the Court's order granting Plaintiff's motion for leave to take expedited discovery concerning Doe 69 be revoked and the subpoena issued thereunder by Plaintiff to Verizon be quashed, and/or that Doe 69 be severed from the action.

Respectfully submitted by counsel for Defendant Doe 69 on June 29, 2012.

Daniel G. Booth (BBO# 672090)
BOOTH SWEET LLP
32R Essex Street, Suite 1
Cambridge, MA 02139
Telephone: (617) 250-8602
Facsimile: (617) 250-8883
dbooth@boothsweet.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to any identified non-registered participants for whom a mailing address is provided.

/s/ Daniel G. Booth