# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

PATRICK COLLINS, INC.,

*Plaintiff,*

v.

DOES 1 – 79,

*Defendants.*

Civil Action No.: 1:12-cv-10532

**Opposition to (ECF. 26) Doe's Motion to Quash or Sever**

Plaintiff hereby opposes the Doe's Motion to Quash or Modify Subpoena. For reasons stated below, Plaintiff respectfully requests that the Court deny Doe's Motion.

## 1. The assertions Doe makes about the short-falls of identification using IP addresses are trivial, at best.

Because the technological declaration accompanying the Complaint already describes the BitTorrent protocol in detail, Plaintiff will not restate what is already stated. Instead, Plaintiff will list assertions by Doe (as seen in block quotes) and provide a response (as seen below each block quote).

> The purpose of an IP address is to route traffic efficiently through the network. It does not identify the computer being used nor the user.

True, it does not identify the computer being used nor the user. However, CEG collects additional information, which assists in identifying the computer, including the port number and the BitTorrent client used.

> An IP address does not identify the computer being used or its user.

In situations where a computer is connected to a router and not directly to a modem this statement is true, hence the need for discovery. For a more detailed discussion, see

the section below entitled, *The IP address is relevant to the infringer's identity.*

> Plaintiff has identified for the Court only routers or wireless access points for certain internet accounts it associates with infringement, not any actual infringers.

Plaintiff has identified for the Court the IP addresses assigned to subscribers through which a successful transfer of the copyrighted content took place. Again, discovery is necessary to find the actual infringer.

> Some participants in online peer-to-peer networks serve only as relays, passing on routing information to other participants without ever possessing any of the movie file.

Doe has committed a major oversight with this example in that he has applied P2P streaming methodology to P2P file sharing methodology, which are two completely different things. Streaming media is multimedia that is constantly received by and presented to an end-user while being delivered by a provider. Its verb form, 'to stream,' refers to the process of delivering media in this manner; the term refers to the delivery method of the medium rather than the medium itself. In contrast, CEG is monitoring P2P networks, specifically BitTorrent, for instances of file sharing infringement. The scope of the cited study is purely focused on streaming, not file sharing, thus his argument is inaccurate.

> A peer-to-peer participant requesting a download can substitute another IP address for its own to a BitTorrent tracker.

CEG uses direct detection to find each IP address, meaning CEG connects to every single peer identified in the complaint and downloads at least a portion of the copyrighted content file directly from them. There is also a filter in place whereby peers are only identified in a complaint if they have uploaded content to CEG and they have at least a portion of the file available for download.

> A user can misreport its IP address when uploading a torrent file.

*See supra*, but also note that CEG is in no way litigating against a user who uploads a

torrent file.  For one, CEG doesn't have access to that information; the web site where the torrent file is uploaded would.  Plaintiff believes Doe is confused about the process of uploading a torrent file rather than portions of a content file, which is explained in depth in the technology declaration.

> [A] user in the network path between the user monitoring IP address traffic and the Bittorrent tracker can implicate another IP address[.]

If such an event occurred whereby an arbitrary IP address was implicated via a man-in-the-middle attack, it would be futile since CEG practices direct detection.  Each IP address monitored is connected to and an exchange of data takes place.  An arbitrary IP address collected would be ignored.

> [M]alware on a user's computer can host and distribute copyrighted content without the users knowledge or consent[.]

If evidence reasonably links malware as the cause, a dismissal may be prudent, however, such situations are rare.

> [S]ubscribers with dynamic IP addressing share IP address with other subscribers[.]

If a person has a shared web hosting account, they would rarely (if ever) have super user access to the server, thus preventing them from executing a BitTorrent client. Shared web site hosts are stringent with their access controls. If the author is referring to a home web server with dynamic DNS enabled, the ISP would still be able to see when the subscriber was allocated a specific IP address.

> [A]nyone with wireless capability can use a subscriber's wifi network to access the Internet, giving the impression that it is the subscriber who is infringing[.]

Many subscribers' wifi networks are protected by a shared security key, password, and/or encryption to halt unauthorized access. Doe fails to recognize such a situation is really only relevant if the subscriber's wifi network is open or, in the rare case, security was breached.

## 2. Plaintiff's record of litigation is moot.

Importantly, Counsel for the Plaintiff in this district is proceeding differently from of attorneys in other districts. In this next week, Plaintiff's Counsel will be amending a complaint, and filing 8 – 12 lawsuits in this district on behalf of Patrick Collins, Inc. These new lawsuits will be filed against individuals and not multiple Does. These individuals were discovered and investigated using the subpoenaed information (like the information sought here), in *Patrick Collins, Inc. v. Does 1 – 45*, 1:12-cv-10537 (D. Mass.).  Counsel will be doing the same in all other cases for Patrick Collins, Inc.

## 3. Plaintiffs request for expedited discovery does satisfy the *McMann* Factors.

Doe's argument is that there is no good cause for early discovery. Doe cites in support, *Momenta Pharms., Inc. v. Teva Pharms. Indus.*, 765 F. Supp. 2d 87 (D. Mass. 2011), which applied the factors examined by this Court in *McMann v. Doe*, 460 F.Supp.2d 259 (D.Mass. 2006). *McMann* case involved allegation of defamation against a doe defendant.  *See McMann*, 460 F.Supp.2d at 263. Although *McMann* court ultimately dismissed the case based on subject matter jurisdiction, or in the alternative, failure to state a claim for which relief can be granted, *see id.* at 270, applying the same factors discussed by Doe, *McMann* court held that early discovery would have been proper, *see id.* at 265. *McMann* court noted that "[i]n this case, the discovery [of doe defendant's identity] is essential. Without the ability to issue a subpoena, John Doe's true name would remain unknown, this suit could not proceed, and Plaintiff McMann could receive no remedy." *Id.* The same principle applies in this case. Without being able to ascertain the identity of the infringer, Plaintiff's suit could not proceed. Although Doe argues that there is no irreparable harm because monetary damages are available, if denied discovery of doe

defendants' identity, there will be no monetary damages because suit could not proceed, *see McMann*, 460 F.Supp.2d at 265.

## 4. Doe lacks standing to challenge subpoena.

Doe lacks standing to challenge subpoena to third parties for reasons well explained in (Document 28 pp 1 - 2), which are incorporated by reference as if fully stated herein.

In addition, Doe cites *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F.Supp. 72 (D.R.I. 1992), in support of the position that the subpoenaed information should be denied from the Plaintiffs and Doe should be permitted to proceed anonymously. *See* There are several problems with this analogy.  First, in *Blue Cross & Blue Shield of Rhode Island*, it was the plaintiff who sought to proceed anonymously. There, the court found no significant harm to the defendant to permit the plaintiff to proceed anonymously. Here, Doe is seeking to bar the Plaintiff from finding out Doe's identity. Without that information, litigation could not proceed. In essence, Doe is asking this court to dismiss Plaintiff's case. This is in stark contrast to *Blue Cross & Blue Shield of Rhode Island*, where court found no significant harm to the opposing party. *See* 794 F.Supp. at 75.

Furthermore, the nature of the interest involved is different. *See id.* at 72-73 (discussing right to proceed anonymously by transsexual litigants). *Blue Cross & Blue Shield of Rhode Island* involved request of a transsexual plaintiff to proceed anonymously. *See id.* Court granted the request, reasoning that "[w]hen those sexual practices fall outside the realm of 'conventional' practices which are generally accepted without controversy, ridicule or derision, that interest is enhanced exponentially." *Id.* at 74.

Such reasoning does not extend to pornographic films. *See generally* Jason Mick, *Study: One Third of Internet is Crammed with Porn* (June 17, 2010), available at http://bit.ly/IVcBhs (last visited May 9, 2012) ("Recent studies have shown that nearly all

young men and a significant percentage of young women indulge in porn [ . . . ] A new study found "approximately 37 percent of the pages online to contain pornographic content.") It can hardly be said that pornographic films are outside the realm of conventional practices.

## 5.  There is no exception or waiver that applies to quash subpoena.

Assuming Doe has standing, there is no exception nor wavier that applies to quash subpoena for reasons well explained in (Document 28 pp 2 - 3), which are incorporated by reference as if fully stated herein.

## 6.  The IP address is relevant to the infringer's identity.

The IP address is relevant to the infringer's identity, for reasons well explained in (Document 28 pp 4 - 5), which are incorporated by reference as if fully stated herein.

Further, while Doe suggests throughout the motion that the subpoena focuses on the subscriber's identity rather than directly upon the identity of the infringer, this is permissible. In civil cases, parties may take discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense–including the . . . location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).  As owner of the IP address through which the alleged infringement occurred, Plaintiff may reasonably assert that John Doe 69 will, at least, have knowledge of the identity or location of persons who know of any discoverable matter, e.g., the names and related information of the other users, if any, of the IP address during the relevant time period. Thus, whether or not Plaintiff has sufficient information to connect subscriber John Doe 69 to the alleged infringer using this Doe's IP address should not preclude the discovery sought.  Plaintiff may also choose to sever Does once

information is gathered, or choose to add causes of action, like vicarious liability. The subpoenaed information is the beginning of and necessary to the litigation process.

## 7. There is no undue burden.

Doe further argues that the subpoena places an undue burden on the defendants in violation of Federal Rule of Civil Procedure 45(c)(3)(A)(iv). Doe specifically argues that he is subjected to an undue burden in being the target of this action, an action in which Doe asserts there is a substantial likelihood that Plaintiff will not be able to establish liability against him.

Doe's argument misconstrues the protective reach of Federal Rule of Civil Procedure 45(c)(3)(A)(iv). Rule 45 protects those persons subject to a subpoena from any resulting undue burden or expense, Fed. R. Civ. P. 45(c)(3)(A)(iv), and imposes sanctions on serving parties who fail to take the reasonable steps to avoid such a burden, Fed. R. Civ. P.45(c)(1).  The subpoenas at issue compel the various ISPs to produce subscriber information for the IP addresses of Does; this imposes no burden on either the moving defendants or any of Does. *See United States Bank Nat'l Ass'n*, 264 F.R.D. at 19 ("The defendant's argument based on 'undue burden' is also not an appropriate basis for granting a motion to quash a subpoena.  In addition, the [third party's] production of [requested documents] imposes no burden on [the defendant] at all, let alone one that is undue.") (footnote omitted).  Therefore, Doe's undue burden argument is unavailing. See *Liberty Media Holdings, LLC*, at 11.

Doe claims that there is an undue burden because there is the potential to draw numerous innocent internet users into the litigation.  Doe cites Plaintiff's counsel concession that 30% of those identified as infringers are false positives.  However, this quote is out of context. *See* **Exhibit A**, Digital Sin, Inc. v. Does 1 - 176, 12-cv-00126, (Jan

30, 2012) (Order where quote is taken from).[1]

The part to which Doe refers to:

> Importantly, the Court stated that Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often the "teenaged son ... or the boyfriend if it's a lady." (1/17/12 Tr. at 16).

> Thus, it still means that the offender is within the household. Note that Plaintiff has no other way of identifying the perpetrator. Bottom line is that the IP address leads to the correct Internet connection.

> Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks.

Again, the subpoenaed information is the beginning of the discovery process, and there's a good faith basis to start discovery with the subpoenaed information.

## 8. Plaintiff needs information to proceed.

For reasons well explained in (Document 28 p 15), which are incorporated by reference as if fully stated herein, the case cannot proceed without identifying the defendants, and the defendants cannot be identified until the requested information is subpoenaed from the defendants' ISPs.

## 9. Conclusion

Based on the above-stated reasons, Plaintiff respectfully requests this Court to deny or strike the Motion to Quash or Sever submitted by Doe.

\*          \*          \*

---

[1] Note (regarding joinder) that while that order from that Court selectively quoted from the hearing, Court granted the Discovery Motion and also stated that "how could these transactions not be related."

Respectfully submitted on July 13, 2012,

FOR THE PLAINTIFF:

Marvin Cable, Esq.
BBO#: 680968
LAW OFFICES OF MARVIN CABLE
P.O. Box 1630
Northampton, MA 01061
P: +1 (413) 268-6500
F: +1 (413) 268-6500
E: law@marvincable.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

Marvin Cable, Esq.

## Table of Contents

1.    THE ASSERTIONS DOES MAKES ABOUT THE SHORT-FALLS OF IDENTIFICATION USING IP ADDRESSES ARE TRIVIAL, AT BEST. ........................................................................................1

2.    PLAINTIFF'S RECORD OF LITIGATION IS MOOT. ......................................................4

3.    PLAINTIFFS REQUEST FOR EXPEDITED DISCOVERY DOES SATISFY THE *MCMANN* FACTORS. ..................................................................................................................................4

4.    DOE LACKS STANDING TO CHALLENGE SUBPOENA. ..............................................5

5.    THERE IS NO EXCEPTION OR WAIVER THAT APPLIES TO QUASH SUBPOENA.......................6

6.    THE IP ADDRESS IS RELEVANT TO THE INFRINGER'S IDENTITY. ...............................6

7.    PLAINTIFF NEEDS INFORMATION TO PROCEED. .......................................................8

8.    CONCLUSION...............................................................................................................8