UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PATRICK COLLINS, INC. ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Action No. 12-10532-GAO | |
| ) | | |
| JOHN DOES 1-79, ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |
| PATRICK COLLINS, INC. ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Action No. 12-10758-GAO | |
| ) | | |
| JOHN DOES 1-36, ) | | |
| ) | | |
| Defendants. ) | | |

MEMORANDUM AND ORDER ON MOTIONS TO QUASH

August 22, 2012

SOROKIN, C.M.J.

At issue in the motions to quash filed in these two cases is not the right of a copyright holder to enforce its copyright, but rather the proper application of the rules governing early ex parte discovery from persons who are not (at least at this time) parties to the pending lawsuit.[1]

---

[1] On August 10, 2012, the Court quashed the subpoenas at issue, indicating that this memorandum would issue at a subsequent date. See, 12-cv-10532, Docket # 36; 12-cv-10758, Docket # 30.

1

The issues are of particular importance because to some extent, Congress has protected the privacy of these third parties. In addition, there is a substantial likelihood that as to some number of these third parties, the Plaintiff will never allege that the third party has violated the Plaintiff's copyright.

Although the Court recites the procedural history for the two cases separately, there is nevertheless substantial factual overlap between the cases (and in fact, in its two Complaints, Patrick Collins has alleged violation of its copyright with respect to the same motion picture, using identical language).

I.      FACTUAL AND PROCEDURAL HISTORY PERTAINING TO 12-cv-10532

On March 23, 2012, the Plaintiff, Patrick Collins, Inc., filed its Complaint against seventy-nine John Doe Defendants alleging that each Doe Defendant committed copyright infringement and contributory copyright infringement with respect to one of its copyrighted works, a motion picture entitled, "Real Female Orgasms 13." Docket # 1. The Complaint alleged that Patrick Collins' investigation had revealed that each Doe Defendant had downloaded at least a substantial portion of the Plaintiff's copyrighted work and had also made that copy available to others on the Internet. Id. at ¶¶ 11-13. Patrick Collins asserted that the Doe Defendants had "engaged in a series of related transactions" because each Doe Defendant "downloaded the exact same file (not just the same copyrighted work), within a limited period of time." Id. at ¶ 13. Additionally, it alleged that "in order to download a movie (or parts of it), one must permit other users to download and/or upload the file from one's own computer. Thus, the Defendants were simultaneously trading (downloading and/or uploading) the

exact same file during a limited period of time."  Id.[2]

On March 26, 2012, Patrick Collins filed an Emergency Ex-Parte Motion for Discovery. Docket # 4.  Because Patrick Collins had not yet completed service of process (and could not do so, because the identity of the infringers was as of yet unknown to it), the motion necessarily was unopposed.  Patrick Collins requested early discovery "for the sole purpose of identifying all Doe defendants ("Defendants") named in the Complaint by subpoenaing the Defendants' respective Internet Service Providers ('ISPs')."  Id.  Patrick Collins sought a court order pursuant to the Cable Privacy Act, 47 U.S.C. § 551(c)(2)(B), directing the ISPs to disclose the subscriber's personally identifiable information (subject to an opportunity for the subscribers to object prior to the disclosure occurring).  Id.; Docket # 7 at 7-8.  On May 8, 2012, the Court granted the motion.  Docket # 7.

On May 17, 2012, Doe Defendant No. 13 filed a Motion to Quash or Modify Subpoena. Docket # 9.  Subsequently, John Doe Nos. 25, 58, 12, 21, 18, 3-9, 39-41, 51, 52, 66-73 and 69 filed similar motions.  Docket #s 10, 12, 15, 17, 24, 26.[3]  Patrick Collins has opposed these

---

[2] According to the Complaint, "torrent protocol makes home computers with low bandwidth capable of participating in large data transfers across so-called "Peer-to-Peer" (P2P) networks. The first file-provider decides to share a file ("seed") with a torrent network. Then other users ("peers") within the network connect to the seed file for downloading. As additional peers request the same file, they become part of the same network. Unlike a traditional P2P network, each new peer receives a different piece of the data from each peer who has already downloaded the file. This system of multiple pieces of data coming from peers is called a "swarm." As a result, every downloader is also an uploader of the illegally transferred file and is simultaneously taking copyrighted material through many ISPs in numerous jurisdictions around the country."  Docket # 1 at ¶ 9; See also Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 448 (D. Mass. 2011) (Young, J.).

[3] Several of these motions included motions to sever.  Docket #s 15, 17, 24, 29.  With respect to this issue, see infra at 14-16.  Doe Defendant No. 12 moved to sever, quash and/or dismiss.  Docket # 15.  To the extent that any of the Doe Defendants have moved to dismiss the Complaints in these two cases, those motions are the subject of a separate Report and

motions and has made a separate filing at the direction of the Court in order to address a specific issue raised by the motions. Docket #s 14, 19- 21, 23, 28, 29, 30-1, 35.

II. FACTUAL AND PROCEDURAL HISTORY PERTAINING TO 12-cv-10758

On April 28, 2012, Patrick Collins filed a second Complaint against thirty-six Doe Defendants, alleging that each had committed copyright infringement and contributory copyright infringement with respect to same copyrighted work described supra, i.e., the motion picture entitled, "Real Female Orgasms 13." Docket # 1. The Complaint alleged that Patrick Collins' investigation had revealed that each Doe Defendant had downloaded at least a substantial portion of the Plaintiff's copyrighted work and had also made that copy available to others on the Internet. Id. at ¶¶ 11-13. Patrick Collins asserted that the Doe Defendants had "engaged in a series of related transactions" because each Doe Defendant "downloaded the exact same file (not just the same copyrighted work), within a limited period of time." Id. at ¶ 13. Additionally, it alleged that "in order to download a movie (or parts of it), one must permit other users to download and/or upload the file from one's own computer. Thus, the Defendants were simultaneously trading (downloading and/or uploading) the exact same file during a limited period of time." Id.

On April 30, 2012, Patrick Collins filed an Emergency Ex-Parte Motion for Discovery. Docket # 4. Again, because Patrick Collins had not yet completed service of process (and could not do so, because the identity of the infringers was as of yet unknown to it), the motion necessarily was unopposed. Patrick Collins requested early discovery "for the sole purpose of identifying all Doe defendants ("Defendants") named in the Complaint by subpoenaing the

---

Recommendation issued on this date.

Defendants' respective Internet Service Providers ('ISPs')." Id. It sought a court order pursuant to the Cable Privacy Act, 47 U.S.C. § 551(c)(2)(B), directing the ISPs to disclose the subscribers' personally identifiable information (subject to an opportunity for the subscribers to object prior to the disclosure occurring). Id.; Docket # 5 at 6-7. On May 8, 2012, the Court allowed the motion. Docket # 8.

On July 9, 2012, Doe Defendant No. 21 filed a Motion to Dismiss/Sever and For a Protective Order And/Or to Quash Subpoena. Docket # 10. Subsequently, Doe Defendants Nos. 18, 9, 19, and 26 filed similar motions. Docket #s 11, 14, 16, 17.[4] Patrick Collins has opposed these motions and has made a separate filing at the direction of the Court in order to address a specific issue raised by the motions. Docket #s 19, 22, 23, 29.

On July 30, 2012, counsel of record for Patrick Collins appeared (representing a separate plaintiff) at motion hearing concerning motions to quash presenting nearly identical factual and legal issues in a similar case (namely, Discount Video Center, Inc. v. Does 1-29, Civil Action No. 12-10805-NMG). The Court had an opportunity at that time to question counsel concerning the issues presented by the pending motions in all three cases.

II.   DISCUSSION

Pursuant to Fed. R. Civ. P. 45, a court must quash or modify a subpoena that:

(I) fails to allow a reasonable time to comply; (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regular transacts business in person . . . ; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(c)(3).

---

[4] See, note 3, supra.

As a preliminary matter, I find that good cause supports early <u>proper</u> discovery under Rule 26(d) (largely for reasons explained by other judges in similar cases) for the sole and limited purpose of identifying the Doe defendants sufficiently to name them as defendants and to serve the Complaint upon them. <u>See</u>, <u>e</u>.g. <u>Digital Sin v. Does 1-176</u>, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). Fed. R. Civ. P. 26(d) provides that "[e]xcept . . . when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." In order for a party to obtain expedited discovery before the Rule 26(f) Conference, it must show good cause. Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). The First Circuit has not addressed the proper standard for determining whether good cause exists for expedited discovery; Judges of this Court have allowed it in a variety of circumstances. <u>See</u> <u>Momenta Pharmaceuticals, Inc. v. Teva Pharmaceuticals Industries Ltd.</u>, 765 F.Supp.2d 87, 88-89 (D.Mass.2011) (Gorton, J.) (finding expedited discovery for purpose of determining need for injunctive relief in patent case to be unwarranted absent showing of irreparable harm); <u>McMann v. Doe</u>, 460 F.Supp.2d 259, 265-66 (D.Mass.2006) (Tauro, J.) (permitting ex parte expedited discovery for purpose of determining the identity of a John Doe defendant).

Here, there is good cause for expedited discovery because the Plaintiff has no other means of determining the identity of its defendants. Nonetheless, several material issues require consideration. Each is discussed below, in turn.

<u>The Identity of the Party Sued and Whether the Complaint Is Adequately Supported</u>

Much of the Doe Defendants' opposition to the discovery is premised upon the

assumption that the Plaintiff has sued the subscriber to the internet service through which the alleged infringement occurred ("the subscriber") rather than the person committing the infringement via that internet service address ("the infringer").  A careful examination of the pleadings and the record as it stands now supports the conclusion that in its Complaints, Patrick Collins has sued the infringers only, although the basis for the subscribers' confusion is plain.

The Complaints filed by Patrick Collins describe the Doe Defendants in numerous instances as infringers.  For example, the Plaintiff refers in the Complaint to "the infringing activity of each Defendant."  12-cv-10532, Docket # 1 at ¶ 7;[5] See also Id. at ¶ 11 ("all Defendants have not only swapped the same copyrighted work, they have swapped the exact same file") (emphasis in original); Id. at ¶ 12 ("While Defendants engaged in this downloading and/or uploading . . ."); Id. at ¶ 19 ("Exhibit A identifies each Defendant . . . that has, without the permission or consent of the Plaintiff, reproduced and distributed to the public at least a substantial portion of the Motion Picture").

Other passages in the Complaints, however, seemingly indicate that the Plaintiff has sued the subscribers.  For example, the Complaints refer to "the Internet Protocol ("IP") address assigned to that Defendant by his, her or its Internet Service Provider."  Id. at ¶ 7.  Throughout the Complaint, there are references to the Defendants as being identified in Exhibit A to the Complaint (which is itself a chart listing the IP addresses through which the infringement occurred).  See, e.g., Docket # 1 at ¶ 19.  These references equating the IP addresses with the Defendants may be interpreted as identifying the subscribers, or, they may be read as merely referring to the only identifying information which Patrick Collins possesses regarding the

---

[5] Each citation to the Complaint filed in 12-cv-10532 is mirrored by an identical passage (at the same location cited) in the Complaint filed in 12-cv-10758.

infringers – i.e., the IP address through which the infringer accessed the internet. The specific allegation in the Complaint that "each Defendant **contracted** with an Internet Service Provider (ISP)" (see Docket #1 at ¶ 3) (emphasis added) is commonly understood, especially in the context of a legal document such as a Complaint filed in a court of law, to mean that each Defendant is in a contractual relationship with the ISP – i.e., that each Defendant is the subscriber to the service provided at the internet address.[6] The Plaintiff's memoranda in support of its motions for discovery further muddied the question of whom the Plaintiff sued by explaining that with the subpoenas it "seeks the identities of all Doe defendants from their respective Internet Service Providers." See 12-cv-10532, Docket # 7 at 1; 12-cv-10758, Docket # 5 at 1. The only names possessed by the ISPs are the names of the subscribers. While ultimately the Plaintiff may determine that a meaningful number of the subscribers are also the infringing Defendants, the Plaintiff does not now know that to be the case, as to any individual subscriber, nor will it know that simply as a result of having received the names and addresses of the subscribers.

Finally, the Notice attached to the subpoena seeking the name of the subscriber from the ISP (a document submitted to the Court by the Plaintiff) states unequivocally that the subscriber is the defendant in the lawsuit:

> The subpoena has been issued because **you have been sued** in the United States District Court . . . as a "John Doe" by the movie studio DISCOUNT VIDEO CENTER, INC. **You have been sued for infringing** copyrights on the Internet . . .
>
> . . .

---

[6] If the language was intended to refer to the "contract" established between two computers communicating with each other (as the Plaintiff's counsel suggested at the hearing), this is at best surprisingly inartful drafting.

**OTHER ISSUES REGARDING THE LAWSUIT AGAINST YOU**

To maintain a lawsuit against you . .

12-cv-10532, Docket #4-1 at 4 (emphasis added in first paragraph of quotation); 12-cv-10758, Docket # 4-1 at 4.

A Motion to Quash from a defendant in the Discount Video case highlighted for the Court the significance of the question of whom the Plaintiffs in these cases had sued as well as the Plaintiff's varying descriptions of the Defendants in the Complaints (which are identical). To put to rest the question of the identity of the John Doe Defendants (i.e., whether subscribers or infringers), the Court ordered the Plaintiff to state in writing which group it had named as Defendants.  See Electronic Orders of August 7, 2012.  In response, the Plaintiff stated, "[t]he simple answer: the Plaintiff is suing the infringers. The rye: the subscribers are frequently the infringers."  12-cv-10532, Docket # 35; 12-cv-10758, Docket # 29.  At the July 30, 2012 hearing on the motions to quash, Patrick Collins' counsel reaffirmed this assertion.  The Court accepts this characterization of the Complaint for two reasons: it is the Plaintiff's binding stated intention; and, it conforms with the better reading of the Complaints when read in isolation from the other documents filed in this case.

Given that the Plaintiff has sued the infringers, certain of the Doe Defendants' complaints (such as abuse of process or lack of a good faith basis to support the Complaints) fall away as these complaints are all predicated upon the understanding that the Plaintiff has sued the subscribers rather than the infringers.  Nonetheless, these concerns are relevant to the Motions to Quash, especially in light of both the Plaintiff's failure to attend to the infringer/subscriber distinction and the plainly incorrect assertions in the Notice delivered to all of the John Does as

part of the subpoena process.[7]  At the Discount Video hearing, counsel who also represents Patrick Collins asserted that in these cases, the Plaintiffs have sued only the infringers, yet he simultaneously resisted conceding that the Notice (used in the pending cases as well) incorrectly told the subscribers that they had already been sued.  That the Plaintiff resists conceding the obvious is cause for concern.  Two arguments seem to underlie the Plaintiff's resistance.

The Plaintiff argues that the fact that an infringement occurred at particular IP address permits an inference that the subscriber was the infringer, which would provide a good faith basis for naming the subscriber as a defendant.  See 12-cv-10532-GAO, Docket # 19 at 7 (citing United States v. Perez, 484 F.3d 735, 740 & fn. 2 (5th Cir.2007); and 12-cv-10532-GAO, Docket # 35 at 2.  Neither in the Discount Video case nor in either of the pending cases has either plaintiff pleaded any claim against a subscriber.  Thus, resolution of the question is premature.

Insofar as the Plaintiff advances the theory in order to justify the Notice attached to the subpoenas, the argument is without merit.  In the criminal search warrant context, the focus is ordinarily on the subscriber's location rather than the individual subscriber.  In light of the frequent sharing of IP addresses by family members, roommates, and co-workers (as well as the possible access by outsiders to wireless networks),  the subscriber and the alleged Doe infringer are not interchangeable, at least for purposes of the pending motions.  In Perez the Fifth Circuit did state that "even discounting for the possibility that an individual other than [defendant] may have been using his account, there was a fair probability that [defendant] was the user and that evidence of the user's illegal activities would be found in [defendant's] home." Perez, 484 F.3d at

---

[7]  The Court recognizes that the Plaintiff submitted the Notice as part of its motion for emergency discovery which motion the Court allowed.  With the benefit of the adversary process, the Court has appreciated material problems with the Notice.  This only highlights the risks attendant to such ex parte proceedings.


740 (quoting United States v. Grant, 218 F.3d 72, 73 (1st Cir.2000)). The statement cited was made in the course of rejecting a defendant's claim for suppression of evidence which agents acquired from the subscriber's residence in the course of executing a facially-valid warrant to search a subscriber's residence because the agents learned during execution of the warrant that the address of the subscriber actually contained three separate residences with internet wires running from the subscriber's target residence to the other two units. That statement, made in such a wholly different context, hardly supports informing subscribers that they have been sued in a Complaint which unquestionably names as defendants only the persons infringing via the subscriber's internet service and not the subscribers on the sole basis of their status as subscribers.

Accordingly, the subscribers should not have been told that they already were defendants.[8] Plaintiff's counsel's concession at the hearing that the subscribers were not being sued and are not parties merely confirms the point. Moreover, the improper assertion in the Notice that subscribers are Defendants is significant in that it might well cause innocent subscribers (understandably concerned about the prospect of the threatened public identification as a copyright infringer of "Real Female Orgasms 13") to accede to unreasonable settlement demands.

---

[8] While it is possible, indeed likely, that some, perhaps many, of the subscribers are infringers and as such will become defendants in these cases, they would become defendants on the basis of their allegedly infringing activity, not due to their status as subscribers of the IP address utilized. See Digital Sin, 279 F.R.D. at 242 (discussing the distinction between subscribers and infringers); Next Phase Distribution, Inc. v. John Does 1-27, 2012 WL 3117182 (S.D.N.Y. July 31, 2012) ("the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time"). Since the Plaintiff does not know which, if any, of the subscribers infringed their copyright, to tell them that they have been sued in federal court as part of a notice given to them as subscribers, when the Plaintiff has not sued them, is incorrect. Plaintiff's counsel has also suggested in some pleadings that he may assert liability against subscribers on a theory of secondary liability. At present, the complaints do not assert such a theory and subscribers are not now defendants based upon such a theory.

See Digital Sin, 279 F.R.D. at 242 (the "risk of false positives gives rise to 'the potential for coercing unjust settlements from innocent defendants' such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading" pornography). That the subscribers have a privacy interest created by Congress heightens this concern. See 47 U.S.C. § 551 (establishing, with limits, the privacy of certain personally identifiable information held by cable providers).

      The Motions to Quash the Discovery

In light of the erroneous notice sent to the subscribers and the attendant risks and burdens imposed upon the innocent subscribers, the Court has previously quashed all of the subpoenas in these two cases. See 12-cv-10532, Docket # 36; 12-cv-10758, Docket # 30.

Insofar as the Doe Defendants challenge the Plaintiff's right to take reasonable discovery properly at this stage of the case, the Court disagrees. While the discovery request focuses on the subscriber's identity rather than directly upon the identity of the infringer, that is appropriate in this case, as it is the first step in the Plaintiff's effort to determine the identity of the infringer. In civil cases, parties may take discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense–including the . . . location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Plaintiff may reasonably assert that the subscribers will, at least, have discoverable information concerning the identity or location of persons accessing the internet via the subscriber's internet address at time of the alleged infringements as well as the secured or unsecured nature of the internet access.

Accordingly, proper discovery of the identities of the subscribers is permissible and the

quashing of the subpoenas is without prejudice to a renewed request for subpoenas proposing a proper notice and procedures. The Plaintiff may, by September 10, 2012, file a renewed request for early discovery. Any such request shall, at a minimum: (1) explain how the proposed discovery pursuant to the rules of civil procedure will establish the identity of the Doe infringers or lead to sufficient information for the Plaintiff to identify the Doe infringers such that the Plaintiff can seek leave to amend the Complaint to insert the names of the Doe defendants; (2) propose a Protective Order ensuring the confidentiality of the subscribers' identifying information unless or until the Plaintiff has a good faith basis to seek leave to amend the Complaint to name individual subscriber(s) as Defendants (at which point it may file a motion for leave to amend the Complaint which motion it shall serve on the proposed Defendant) and (3) submit to the Court any notice(s) it seeks leave to serve with the subpoena.[9]

The Court may issue a Protective Order for good cause to spare parties or persons from whom discovery is sought "annoyance, embarrassment, oppression or undue burden." Fed. R. Civ. P. 26(c)(1). Several considerations support the finding of good cause in this case. Plainly, some, perhaps many, of the subscribers are <u>not</u> infringers. At present, the subscribers are not parties, but merely third parties from whom discovery is sought. Congress has enacted privacy protections for cable subscribers' personally identifiable information. 47 U.S.C. § 551. In these circumstances, a protective order is warranted.

---

[9] The proposed Protective Order shall include a provision that each such person receiving access to the protected information shall agree to abide by the terms of the Protective Order and shall sign a copy of the Court's Protective Order (acknowledging receipt of the Order and understanding of its terms). It shall also provide that use of the information is limited to purposes related to this litigation.

The Doe Defendants' Assertions of Bad Faith

The claims of extortionate, unfair and deceptive or bad faith settlement practices are beyond the scope of the pending motions and it is not necessary to resolve them at this time, in light of the Court's rulings supra. The Court notes that the Plaintiff has responded to each motion to quash on the merits and asserts it is willing to litigate this case to its conclusion.

At this time, the Court declines to make a finding regarding the bad faith issue in this case arising from the Plaintiff's assertion in the Notice that the subscriber has been sued in federal court. However, the Court would evaluate differently any claims arising from future assertions that subscribers are Defendants and further cautions the Plaintiff to distinguish carefully between the allegations it has made at any given time and the allegations it believes it will be able to make in the future.

Joinder

The Does also challenge the Plaintiff's decision to join numerous defendants in one action. Pursuant to Fed. R. Civ. Pro. 20, persons may be joined in one action as defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "The impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966).

The Plaintiff has alleged that the Doe Defendants in each case were part of a BitTorrent swarm that infringed upon the Plaintiff's rights by collectively downloading and distributing the

same exact file of its copyrighted work.  At the July 30, 2012 hearing, the Plaintiff's counsel clarified and explained its allegations in two respects.  The twenty-nine Doe Defendants in the Discount Video case[10] were part of a much larger BitTorrent swarm – however, they are the only members of the swarm whom the Plaintiff believes to be located in Massachusetts, at least as of the time it prepared the Complaint.  In addition, the infringing activity observed by the Plaintiff was the act of each <u>uploading</u> via BitTorrent the Plaintiff's copyrighted work to the Plaintiff's investigators (which uploading establishes, according to the submissions, that the defendant possesses all or a substantial portion of the Plaintiff's work within BitTorrent, a form of distribution not authorized by the Plaintiff).

      While a person downloading a file via BitTorrent (in this case the Plaintiff's movie) will obtain pieces of the file from multiple members of the BitTorrent swarm, the Plaintiff does not know at this time from which members of the swarm any particular Doe Defendant obtained its copy of the file, or to which members of the swarm any particular Doe Defendant gave portions of its file.  Thus, for example, as to Doe Defendant No. 1, the Plaintiff has not alleged that Doe No. 1 uploaded or downloaded any portion of the copyrighted work to or from any of the other Doe Defendants named in the Complaint.  Because the swarm may well contain many members from other parts of the United States or from other countries, the possibility exists that each Doe Defendant's only connection to the other Doe Defendants is his or her possession of the same copyrighted work obtained by the same mechanism, BitTorrent, via the same swarm.

      The proper remedy for improper joinder is a motion for severance by a party, rather than a motion to quash subpoenas by a third party.  Fed. R. Civ. P. 21.  In Liberty Media Holdings, LLC

---

[10] The reasonable inference is that the explanation applies as well to the facts of these two cases, which have been factually indistinguishable in most respects.

v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 451 (D. Mass. 2011), Judge Young found that the existence of membership in the collective swarm sufficed to authorize joinder. Thus, while "certain defendants may later present different factual circumstances to support individual legal defenses, at this stage in the litigation, joinder is proper based on the common questions of law and fact identified." Id. Many courts, like Judge Young, have found this joinder permissible while many others have rejected it. See Next Phase, 2012 WL 3117182 at *3-4 (surveying recent "inconsistent [district court] holdings regarding whether defendants who participated in the same swarm on BitTorrent and downloaded the same file satisfy the transaction-or-occurrence standard and can be properly joined"). The analysis depends to some extent upon factors (such as the defenses asserted by the eventual defendants and the number of defendants identified and appearing) not yet known. On the present state of the pleadings in this case, without any Defendant to this lawsuit having yet appeared (see supra), the Court declines to reach the assertions of improper joinder.

Subscribers Proceeding Anonymously

I find that the subscribers seeking to object anonymously in this case may do so, largely for the reasons already explained that warrant a protective order. Whether additional procedures in this regard are required can be addressed, as necessary, regarding future filings.

III.     CONCLUSION

To the extent that the Plaintiff wishes to file renewed motions for early discovery, it shall do so as described herein by the close of business on September 10, 2012.

SO ORDERED,

/s / Leo T. Sorokin
Leo T. Sorokin
Chief United States Magistrate Judge