# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICK COLLINS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. A. No. 1:12-cv-10532-GAO |
| ) | |
| DOES 1 – 79, ) | |
| ) | |
| Defendants. ) | |

### DOE 21 AND DOE 69'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR EARLY DISCOVERY, AND DOE 21 AND DOE 69'S MOTION FOR SANCTIONS

The chronic bad-faith litigant Patrick Collins, Inc. ("Plaintiff") sought pre-hearing discovery concerning Internet subscribers pursuant to Rule 26. While discovery was initially approved, it was later quashed upon motions by the subscribers, including Does 21 and 69 (the "moving Does"). The moving Does oppose the newly expanded and more burdensome scope of discovery Plaintiff now seeks from and concerning them and other Internet subscribers.[1] The discovery Plaintiff seeks is not likely to lead to admissible evidence, both because it is admittedly remote from any genuine basis to connect the moving Does and other Internet subscribers (the discovery's targets) with any alleged infringement, and because Plaintiff has demonstrated that it has no intention of prosecuting any infringement claim. Instead, allowing the putative discovery would give Plaintiff another opportunity to coerce settlements by making oppressive demands on private individuals. Two hundred days after filing its complaint, it has not served process on any defendant. The moving Does have previously explained the impropriety of the discovery Plaintiff seeks (Dkt. 17, 26, 30 & 30-1), and hereby incorporate those prior explanations as if fully stated herein. Therefore, and for the reasons further stated hereunder, the moving Does respectfully request that the Court deny Plaintiff's Renewed Motion for Early Discovery (Dkt. 43 ("Renewed Motion")). Moreover, in light of Plaintiff's

---

[1] Plaintiff has recently sought to distinguish Doe defendants from the ISP subscribers (including the moving Does) about whom it seeks discovery. *See* Dkt. 35. However, Plaintiff has repeatedly referred to those ISP subscribers (again, including the moving Does) as Doe defendants. *See* Plaintiff's Oppositions to the moving Does' Motions to Quash or Sever (Dkt. 21 & 29). In other cases, Plaintiff continues to treat defendants and subscribers interchangeably. Accordingly, this motion continues to refer to the moving Does by the numbers to which Plaintiff alleges their IP addresses correspond.

unannounced absence at the hearing on its own Renewed Motion, the moving Does request sanctions against Plaintiff in the form of attorney's fees and whatever other remedy this Court deems proper.

## STATEMENT OF FACTS

Since 2010, Plaintiff has filed at least 168 lawsuits against at least 11,570 Doe defendants in 26 different federal districts, including six filed in this district against 261 Doe defendants. *See* Dkt. 26 pp. 2 & 4-5. As of July 31, 2012, Plaintiff had served process on only one of those defendants. *See* Dkt. 30-1 p. 12 & n. 15.

In this case, Plaintiff filed its Complaint (Dkt. 1) on March 23, 2012, alleging copyright infringement by Defendants Doe 1 through Doe 79. Plaintiff alleged that each infringing Defendant had been identified "by the Internet Protocol ('IP') address assigned to that Defendant by his, her or its Internet Service Provider." *Id.* ¶ 7. In the Complaint and its Exhibit A (Dkt. 1-1), Plaintiff identified 79 Internet subscribers as infringing Doe Defendants. Plaintiff filed its first Emergency Ex-Parte Motion for Discovery (Dkt. 4) ("Motion") on March 26, 2012, seeking leave of court to subpoena the subscribers' Internet Service Providers ("ISPs") to obtain contact information for the subscribers, and providing a notice for the ISPs to forward to the subscribers. Dkt. 4-1 pp. 4-5. Plaintiff's notice informed the subscribers, among other things, that they had been sued for "uploading and/or downloading the motion picture 'Real Female Orgasms 13,'" and that Plaintiff might be willing to settle the claims, offering several means to contact Plaintiff's lead counsel, Attorney Marvin Cable. *Id.* p. 4.

At first blanch, this Court granted the Motion, on April 12, 2012. Dkt. 8. Soon after, Plaintiff served its subpoenas and Doe Defendants were notified of Plaintiff's claims against them. Plaintiff settled its claims against six Doe Defendants by July 5, 2012 and dismissed them with prejudice. Dkt. 22 & 27. Eight other Doe Defendants, including the moving Does, filed motions seeking to quash the subpoenas.[2] Plaintiff filed oppositions to each of those motions (Dkt. 14, 19, 20, 21, 23, 28 & 29), describing, in each opposition, the moving subscribers as one and the same with the John Does

---

[2] More specifically, Does 58 and 18 moved to quash (Dkt. 12 & 18); Does 13, 25, 21, "3-9, 39-41, 51, 52, 66-73," and Doe 69 moved to quash and/or sever (Dkt. Nos. 9, 10, 17, 24 & 26); and John Doe 12 moved to quash, sever, and/or dismiss (Dkt. No. 15).

whom Plaintiff alleged had infringed its copyright. *See, e.g.,* Dkt. 14 p. 12 ("Plaintiff is suing owners of IP addresses from which infringing activities were found"). Plaintiff further claimed that "[t]o those defendants who do not respond and defendants without credible explanations, Plaintiff will name and serve." *Id.* p. 4. Doe 69, one of the moving Does, sought leave to file a reply to Plaintiff's opposition on July 31, 2012. Dkt. 30 & 30-1.

On August 5, 2012, one hundred and thirty four days after filing its Complaint, Plaintiff filed a motion seeking an additional 120 days to serve defendants with summons pursuant to Fed. R. Civ. P. 4(m). Dkt. 31. Plaintiff conceded that it had received identifying information for eight ISP subscribers and notified them of the lawsuit. Dkt. 32 p. 2. Plaintiff has yet to name or file proof of service for any Defendant in this case, though it has informed the Court of only six settlements.

Plaintiff claims to no longer equate subscribers with infringers, but has not amended its complaint to say so. On August 9, 2012, at the Court's direction, Plaintiff for the first time stated that the subscribers, who had received Plaintiff's notice describing them as defendants being sued in this case, might not be the defendants being sued for infringement. Dkt. 35. Plaintiff purported to disavow its original position that the subscribers and the infringers being sued are identical. Plaintiff stated they "frequently" might be one and the same, and argued, "common sense frequently supports plausible claims against subscribers, for secondary liability." *Id.* p. 2. Plaintiff has not amended its complaint to address such claims against subscribers, but states that it still may. *Id.*

Finding "plainly incorrect assertions in the Notice delivered to all of the" subscribers, in which Plaintiff described them as defendants (Dkt. 41 p. 9), on August 10, 2012, Chief Magistrate Judge Sorokin ordered all subpoenas theretofore issued in the case quashed without prejudice and prohibited Plaintiff from using the previously received identities. Dkt. 36. Plaintiff was permitted to file a renewed request for early discovery by September 10, 2012, if the request would "explain how the proposed discovery … will establish the identity of the Doe infringers or lead to sufficient information for the Plaintiff to identify the Doe infringers such that the Plaintiff can seek leave to amend the complaint to insert the names of the Doe defendants." Dkt. 41 p. 13. The Court also required Plaintiff to "submit to the Court any notice(s) it seeks leave to serve with the subpoena." *Id.*

Having emphasized the distinction between subscribers and infringers, the Court cautioned Plaintiff to thereafter distinguish carefully between allegations that it had made and those it might someday be able to. *Id.* p. 14.

In the *mea culpa* that followed, Plaintiff recognized that the "Court's decision [to quash the subpoenas Plaintiff issued to the ISPs] was based on an erroneous notice sent to the subscribers and the attendant risks and burdens imposed upon innocent subscribers, especially issues of privacy." Dkt. 44 p. 2. Plaintiff wants another bite at the apple, asking for authority to require the ISPs to send the same subscribers a second notice. Though Plaintiff expressly disavows having any current claims against the subscribers, the notice would once again invite the subscribers to arrange to settle Plaintiff's claims. (Dkt. 43-1 p. 5: "The movie studio Plaintiff may be willing to discuss the possible settlement of its claims against those persons who would like to resolve the matter by settlement. ... You may contact the movie studio Plaintiff's representatives by phone at (413) 268-6500, by fax at (413) 268-6500, or by e-mail at contact@marvincable.com.") The notice would be sent to subscribers along with a questionnaire whose content Plaintiff has not disclosed, and a blank affidavit whose instructions Plaintiff has not described. Dkt. 44 pp. 3-4. Plaintiff *has* described certain informal discovery it plans to conduct for subscribers, which Plaintiff claimed "will establish the identity of the Doe infringers," including Google Maps, residential land records, and "generic Internet searches." *Id.* p. 5. Plaintiff described these three discovery methods, respectively, as "inconclusive to absolutely prove who the infringer is," a source for "deductions or assumptions … [by which] Plaintiff may find evidence leading to the infringer," and "not conclusive." *Id.* Plaintiff concluded not that this evidence *would* establish an infringer's identity or give Plaintiff a good faith basis to amend, but that it *might*: "The evidence when viewed cumulatively may, however, give the Plaintiff a good faith basis to seek leave to amend the complaint, naming the infringer." *Id.*

In its memorandum in support of the Renewed Motion, Plaintiff stated, "If this Court requires more information justifying good cause for early discovery, the Plaintiff will happily submit a response or appear before the Court." Dkt. 44 p. 3 n.1. When the Court ordered a hearing on Plaintiff's motion, neither Plaintiff nor its counsel attended. The Court sent notice of the hearing to

three separate email addresses for Plaintiff's counsel at approximately 10:00 AM on Tuesday, October 2, 2012, more than three days before the 4:00 PM hearing on Friday, October 5, 2012. See Attachment A. Attorneys Jason Sweet and Dan Booth, as counsel for Does 29 and 69, attended the hearing and provided the Court's clerk with Attorney Cable's cellphone number, but the clerk was unable to reach Mr. Cable on either his cell phone or his office line during the scheduled hearing. The Court announced it intends to reschedule.

## ARGUMENT

Plaintiff now seeks another bite at the apple. It wants another chance to badger subscribers with coercive settlement demands, intimidation, and fear of reprisals and public humiliation. A review of Plaintiff's business model, its failure to genuinely pursue its claims, and the burdensome requests in its Renewed Motion, reveals that its request is not justified.

**A.      Plaintiff's copyright troll business does not justify discovery aimed at trial.**

Plaintiff is at the forefront of a national plague of copyright troll lawsuits. "A copyright troll is an owner of a valid copyright who brings an infringement action 'not to be made whole, but rather as a primary or supplemental revenue stream.'" Mem. & Order, *Third Degree Films v. Does 1-47*, 12-cv-10761-WGY, slip op. at 1 n. 1 (D. Mass. Oct. 2, 2012). In Plaintiff's business model, a lawsuit is effectively over during the *ex parte* discovery stage, before most lawsuits truly begin. Once Plaintiff is given subscribers' contact information, the Court no longer serves Plaintiff's extortive purposes. Predictably, Plaintiff has never proceeded to litigate its claims to trial. Doe 69's motion to quash and/ or sever described Plaintiff's long history of putative litigation filed with no genuine intent to pursue recourse in court. *See* Dkt. 26 pp. 4-5 & 12.

In response, Plaintiff did not deny its bad faith, but claimed that "Plaintiff's record of litigation is moot." Dkt. 29 p. 4. Plaintiff made the following representations:

> In this next week, Plaintiff's Counsel will be amending a complaint, and filing 8-12 lawsuits in this district on behalf of Patrick Collins, Inc. These new lawsuits will be filed against individuals and not multiple Does. These individuals were discovered and investigated using the subpoenaed information (like the information sought here), in *Patrick Collins, Inc. v. Does 1-45*, 1:12-cv-10537 (D. Mass.). Counsel will be doing the same in all other cases for Patrick Collins, Inc.

> *Id.* (filed July 13, 2012).

That false statement by Plaintiff does nothing to "moot" its bad faith. As Doe 69's proposed reply noted, Plaintiff had not made any such new filings. Dkt. 30-1 p. 13 (filed July 31, 2012). In Massachusetts, Plaintiff has still not filed any claims against any named defendants or any individual suits, whether based on allegations in this case or in any other, nearly three months after claiming it would do so within a week.

Plaintiff has been admonished to stop blurring the distinction between subscribers and infringers. In its Memorandum and Order on Motions to Quash, the Court "cautions the Plaintiff to distinguish carefully between the allegations it has made at any given time and the allegations it believes it will be able to make in the future." Dkt. 41 p. 14. As defendant counsel noted at the October 5 hearing which Plaintiff did not attend, Plaintiff's counsel has disregarded this precaution. *See* Memorandum in Support of Plaintiff's Emergency Motion for Early Discovery, *New Sensations v. Does 1-201*, 1:12-cv-11720-RGS, at 1 (D. Mass. filed Sept. 18, 2012) (filed by Attorney Cable) ("Plaintiff seeks the identities of all Doe defendants from their respective Internet Service Providers ..."). Similarly, Attorney Cable's website continues to advise subscribers who receive subpoena notices from their ISPs that "this Law Firm has filed a lawsuit against copyright infringers that were identified by tracking software through their IP addresses." See Exhibit B. This Court should not reward Plaintiff by granting further discovery that will allow Plaintiff to do more of the same.

**B.      Plaintiff has directed false statements to the ISP subscribers whom it now seeks permission to burden with even more onerous discovery.**

Plaintiff admits that it prepared notices to the Doe subscribers that were "erroneous," or, less generously, false. Those false notices led to the quashing of its initial subpoenas. This time around, the burdens imposed on subscribers would be even more onerous than under the now-quashed subpoenas. Plaintiff asks the Court to authorize sending subscribers a "questionnaire [that] will identify the infringer, if the subscriber is not the infringer." Dkt. 44 p. 4. Plaintiff seeks leave to send subscribers this "questionnaire" along with the subpoena, but has not submitted a copy to the Court, directly contravening the Court's order. While that flaw alone should condemn Plaintiff's current

proposal to the same fate as its first stab at discovery, what little Plaintiff does describe about the questionnaire gives ample additional basis to deny leave under Rule 26.

The proposed discovery is riddled with shortcuts around the legitimate means for discovery provided by the Federal Rules of Civil Procedure. The questionnaire's answers would be admissible in court, if Plaintiff later showed "good faith." Dkt. 44 p. 4. This would turn Plaintiff's counsel into private prosecutors with the power to elicit direct testimonial evidence from potential defendants. Plaintiff has done nothing to justify permitting it to secure such potentially damning information outside the hallowed processes of depositions and Rule 45 subpoenas. Plaintiff's proposed order granting its motion would burden any subscriber who opposes the subpoena by requiring the subscriber to "notify all ISPs" of its opposition – not just the individual subscriber's ISP – without providing any information as to how a subscriber would give such notice. Dkt. 43-1 ¶ 4.

Additionally, Plaintiff continues to give no explanation for why it requires the MAC address or email address of ISP subscribers to establish any claims. See Dkt. 17 p. 12. That information would greatly help Plaintiff pursue settlements from subscribers. But Plaintiff now contends subscribers are not defendants, so that purpose cannot justify discovery.

Plaintiff's motion for a Rule 4(m) extension of time to serve is still pending. Dkt. 31. Plaintiff Renewed Motion seeks to achieve an extension by other means, requesting an order under which it would be allowed to develop, at some unforeseen point in the future, "a good faith basis" to either "amend the Complaint to name [a] subscriber as [a] Doe defendant," or to raise "other claims or actions against a subscriber." (Dkt. 43-1 ¶¶ 7 & 8.) Plaintiff should not be permitted to delay its decision as to whether it has a good faith basis to sue until nearly a year after filing suit, and after multiple rounds of harassing, settlement-oriented "discovery."

At its heart, Plaintiff seeks pre-suit discovery to determine whether other causes of action exist and, if so, against whom. As such, its proposed discovery is not "reasonably calculated to lead to the discovery of admissible evidence" in this case. Fed.R. Civ. P. 26(b)(1). Plaintiff's proposed discovery, if sought with an eye toward generating new claims in other litigation, would not serve any proper purpose in *this* suit. "[W]hen the purpose of a discovery request is to gather information

for use in proceedings other than the pending suit, discovery properly is denied." *Oppenheimer Fund,*
*Inc. v. Sanders*, 437 U.S. 340, 353 (1978).  "[T]he defendant cannot subpoena documents for the
purpose of inspection and investigation with the view to eventually subpoenaing them to a trial or
deposition or other legal proceeding." *Taylor v. Litton Med. Prods., Inc.*, 19 Fed. R. Serv. 2d 1190,
1975 WL 166114, *3 (D. Mass. Jan. 23, 1975). Precisely that situation exists when "the plaintiffs are
not seeking [the requested information] for the purpose of litigating their current claims. Instead, the
plaintiffs intend to either sue the individuals whose identity they uncover or, more likely, to negotiate
a settlement with those individuals." *Pac. Century Int'l, Ltd. v. Does 1-37*, No. 12-C-1057, 102
U.S.P.Q. 2d (BNA) 1201, 2012 U.S. Dist. LEXIS 44368, *17 (N.D. Ill. Mar. 30, 2012) (quoting
*Oppenheimer*).

**C.     Plaintiff's claimed "emergency" requiring pre-hearing discovery under Rule 26(d) is
belied by Plaintiff's failure to diligently pursue any claims.**

To justify deviation from the normal course of discovery under Rule 26(d), Plaintiff must
show the "good cause" required by Rule 26(b) by "demonstrat[ing] an urgent and compelling need
for the requested discovery." *Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.,* 765 F. Supp. 2d 87,
90 (D. Mass. 2011). Plaintiff's lack of diligence in pursuing its claims demonstrates the opposite.

Plaintiff failed to show up for the hearing on its Renewed Motion. Since missing the hearing,
Plaintiff's lead attorney, Marvin Cable, has explained to Doe 21's counsel that he only checks the
docket on his cases on a weekly basis. Such a lackadaisical attitude toward litigation, by lead counsel
for nearly forty different cases on the federal docket in Massachusetts, evidences bad faith. A litigant
who genuinely seeks to pursue something other than strong-arm settlements would not blithely
disregard the daily progress of its cases. It is inexplicable as a mere mistake. Less than a month
before, Attorney Cable missed a motion hearing in another client's copyright case, despite two weeks
advance notice. *See New Sensations, Inc. v. Does 1-83*, 12-cv-10944, Notice of Hearing on Motion
(D. Mass. Aug. 28, 2012) & Clerk's Notes on Motion Hearing (Sept. 13, 2012) ("Plaintiff fails to
appear, hearing rescheduled.").

In this case, Plaintiff has received contact information for at least eight Doe defendants and
dismissed claims against six, but gives no reason (much less a good faith basis) as to why it requires

more time to serve process on the others.[3] Plaintiff has ample opportunity to serve defendants once it receives their information, but somehow never quite gets around to it. For example, Plaintiff received contact information for all but two of the forty-five Does in another Massachusetts copyright case more than four months ago. Status Report, *Patrick Collins, Inc. v. Does 1-45*, Civ. A. No. 1:12-cv-10537-RWZ (D. Mass. filed May 22, 2012). Plaintiff has still not served any of those Doe defendants, though (as here) it has asked for an extra 120 days to do so.  *See* Motion for Extension of Time, *Patrick Collins, Inc. v. Does 1-45* (filed Aug. 5, 2012). "[T]he fact that no defendant has ever been served in one of these mass copyright cases belies any effort by plaintiff to allege that the discovery *will* lead to identification of and service on the Doe defendant." *Hard Drive Prods. v. Does 1-90*, No. C11-03825 HRL, 2012 U.S. Dist. LEXIS 45509, *22 (N.D. Cal. Mar. 30, 2012). Extending time or granting leave to again reach out to  ISP subscribers would only further extend Plaintiff's opportunities for extortive, extrajudicial self-help.

Discovery "shall be limited by the Court if … the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought." Fed. R. Civ. P. 26(b)(2)(ii). Plaintiff was granted full leave to obtain subscriber information pertinent to each of the 79 subscribers. But discovery was stymied as a direct result of Plaintiff's willful distortion of any valid claims it may have. Plaintiff made its bed, and now must lie in it. No pre-hearing discovery is appropriate.

**D.      Plaintiff's failure to attend the hearing on its Renewed Motion warrants sanctions.**

Plaintiff did not attend, nor seek to reschedule, the 4:00 pm hearing on October 5, 2012, scheduled by the Court on Plaintiff's Renewed Motion, despite three days advance notice to its counsel. See Exhibit A. Counsel for Does 21 and 69 were both in attendance for the hearing, fully prepared to argue against the Renewed Motion. Plaintiff's counsel could not be located, causing the hearing to be rescheduled. As a result, Plaintiff should be assessed the reasonable costs imposed on

---

[3] Plaintiff filed its Complaint in this case on March 23, 2012. Pursuant to Federal Rule 4(m), Plaintiff was required to serve any defendant against whom it genuinely intended to proceed, absent a showing of good cause, within 120 days. October 8 marks the 200th day since the complaint was filed, and Plaintiff has not served any defendant.

Counsel for Doe 21 and Doe 69 by Plaintiff's unavailability. See Exhibits C & D (affidavits of counsel) and Exhibit E (reconciliation of costs).

## CONCLUSION

Wherefore, Doe 21 and Doe 69 respectfully request that the Court deny Plaintiff's Renewed Motion for Early Discovery, and that Plaintiff be assessed sanctions in the form of the moving Does' costs related to the hearing on Plaintiff's Renewed Motion, and the moving Does be granted any other relief that this Court deems appropriate.

Respectfully submitted by counsel for Doe 21 and Doe 69 on October 9, 2012.

Daniel G. Booth (BBO# 672090)
BOOTH SWEET LLP
32R Essex Street, Suite 1
Cambridge, MA 02139
Telephone: (617) 250-8602
Facsimile: (617) 250-8883
dbooth@boothsweet.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to any identified non-registered participants for whom a mailing address is provided.

/s/ Daniel G. Booth

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that prior to filing the foregoing document, I conferred with counsel for Plaintiff in a good faith effort to resolve or narrow the issues presented in the Motion for Sanctions. The parties were unable to resolve the issue presented for the Court's determination in this Motion.

/s/ Daniel G. Booth